# EXHIBIT A

**IN THE STATE COURT OF DEKALB COUNTY**
**STATE OF GEORGIA**

ANOSHVI HOSPITALITY, LLC D/B/A
FAIRFIELD INN & SUITES ATLANTA
STONECREST,

      **Plaintiff,**

vs.

WESCO INSURANCE COMPANY,

      **Defendant.**

Civil Action No.: _22A00200_____

## SUMMONS

**TO THE ABOVE-NAMED DEFENDANT:**

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff(s) attorney, whose name and address is:

**WILLIAM L. FLOURNOY, ESQ.**
Attorney for Plaintiff
**THE BUSH LAW GROUP, P.A.**
6622 Southpoint Dr. S., Ste. 190
Jacksonville, Florida 32216
(904) 552-1006
wlflournoy@bushlawgroup.net
krdupries@bushlawgroup.net
justin@bushlawgroup.net

an answer to the complaint, which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

1/18/2022

This _____ day of _____, 2022.

      Debra E. DeBerry
      Clerk of Court

            MBGAY
      BY: _____
      Deputy Clerk

# This Page Intentionally Left Blank to Separate Documents

**IN THE STATE COURT OF DEKALB COUNTY**
**STATE OF GEORGIA**

ANOSHVI HOSPITALITY, LLC D/B/A
FAIRFIELD INN & SUITES ATLANTA
STONECREST,

       **Plaintiff,**

vs.

WESCO INSURANCE COMPANY,

       **Defendant.**

Civil Action No.: __22A00200__

## COMPLAINT & DEMAND FOR JURY TRIAL

**COMES NOW** the Plaintiff, ANOSHVI HOSPITALITY, LLC D/B/A FARIFIELD INN

& SUITES ATLANTA STONECREST (hereinafter "Plaintiff" or "Fairfield Inn"), by and through

the undersigned counsel, and hereby files this Complaint for breach of first-party property

insurance contract and bad faith denial of insurance coverage against Defendant, WESCO

INSURANCE COMPANY (hereinafter "Defendant"), and in support thereof states as follows:

### PARTIES

1.

Plaintiff is a Georgia limited liability company registered to transact business in the State

of Georgia.

2.

Upon information and belief, Defendant is a foreign insurance company registered to

transact business in, and in fact, transacts business in the State of Georgia. Defendant is in the

business of insuring risks and properties located throughout the United States, including

Georgia. Defendant maintains an office at where it may be served with process through its

STATE COURT OF
DEKALB COUNTY, GA.
1/18/2022 2:24 PM
E-FILED

registered agent, Corporation Service Company at 2 Sun Court, Ste. 400, Peachtree Corners, GA 30092, as identified by the state of Georgia Secretary of State registry.

## JURISDICTION AND VENUE

3.

This Court has subject matter jurisdiction over this action for breach of contract and bad faith denial of insurance claim and the Court has personal jurisdiction over Defendant because Defendant is transacting business and insuring properties in the State of Georgia and has appointed a registered agent for service of process in Georgia pursuant to O.C.G.A. § 33-4-1 and O.C.G.A. § 33-4-4.

4.

Venue is proper in this Court because Defendant has issued a policy of insurance and actively insures Plaintiff's property located in DeKalb County pursuant O.C.G.A. § 33-4-1, O.C.G.A. § 33-4-4.

5.

In addition, by virtue of the express terms of the insurance policy at issue, Defendant has consented to jurisdiction and venue of this Court.

## THE POLICY

6.

In consideration of the premiums paid to Defendant by the Plaintiff, Defendant issued its Policy No. WPP1839065 (the "Policy"). The Policy insures against property damage caused by wind and/or hail to Plaintiff's property located at 7850 Stonecrest Sq., Lithonia, GA 30038 (the "Insured Property").

7.

A formal certified copy of the Policy is not currently in possession of the Plaintiff but is well known to the Defendant and has been requested by Plaintiff multiple times prior to this lawsuit. A non-certified copy of the Policy is attached hereto as **Exhibit "A"**.

## STORM DAMAGE TO THE INSURED PROPERTY

8.

On or about May 28, 2020, a severe storm caused direct physical loss, or damage, to the Plaintiff's Insured Property.

9.

The Policy was in effect at the time of the above-referenced storm on May 28, 2020.

10.

Plaintiff promptly and timely notified Defendant of the storm damage to the Insured Property as a result of the wind and/or hailstorm and made a claim pursuant to the Policy. Defendant acknowledged receipt of the loss and assigned claim number 3241685-1 to the loss (the "Claim").

11.

At all times, Plaintiff made itself and the Insured Property available to, and fully cooperated with the Defendant, and its representatives, to inspect and investigate the damages caused by the storm.

12.

On or around August 31, 2020, Defendant, through its authorized representative, performed a site inspection of the Insured Property.

13.

Defendant, and its representatives and agents, incurred the duty of acting with due diligence in achieving a proper disposition of the Plaintiff's claim when it undertook the handling of the disposition of the claim.

14.

Defendant failed to properly investigate Plaintiff's damages and wholly denied Plaintiff's Claim by letter dated October 23, 2020, 2020 on the basis that the storm damage did not exceed the applicable deductible. A true and accurate copy of the Defendant's denial letter is attached hereto as **Exhibit "B"**.

15.

Plaintiff, through its representatives, requested multiple times that Defendant reconsider its position. Defendant refused to comply with the Plaintiff's requests and continued to frivolously and baselessly deny Plaintiff's Claim.

16.

Plaintiff made repeated requests for payment of the Claim, including written demand sent to Defendant on April 8, 2021. A true and accurate copy of the written demand is attached hereto as **Exhibit "C"**. Despite this demand for $622,753.27, Defendant has continued to frivolously deny Plaintiff's Claim without just cause when the obligation to settle the claim has become reasonably clear, under one or more portions of the insurance policy coverage.

17.

The Plaintiff's letter dated April 8, 2021 (Exhibit "C") to Defendant was a letter of representation from Plaintiff's counsel and a formal 60-Day demand, pursuant to O.C.G.A. §33-4-6 guidelines. After putting Defendant on notice of a potential lawsuit, through the formal 60-

Day demand, the Defendant continued to frivolously and baselessly deny Plaintiff's Claim without just cause. A copy of Defendant's response letter dated April 19, 2021 which reaffirms its initial coverage decision is attached hereto as **Exhibit "D"**.

18.

Defendant did not act fairly and honestly toward the Plaintiff with due regard for Plaintiff's Claim when the Defendant failed to compensate the Plaintiff for its damages in direct breach of the terms and conditions of the Policy when under all of the circumstances, it could and should have done so, had it acted fairly and honestly toward the Plaintiff, and with due regard for its interests.

19.

Plaintiff has fulfilled all conditions precedent and contractual obligations under the Policy prior to this lawsuit, or the same were waived.

20.

Plaintiff has exhausted every reasonable means possible to resolve this dispute with the Defendant. With no other option, Plaintiff was constrained to hire legal counsel, incurring additional expenses, and file this lawsuit.

21.

Plaintiff has suffered physical damage to the Insured Property in the amount of $622,753.27, or in an amount to be determined at trial.

**COUNT I – BREACH OF CONTRACT**

22.

Plaintiff adopts, re-alleges, and incorporates its allegations set forth in Paragraphs 1-21 of this Complaint as if fully set forth herein.

23.

Plaintiff has performed all conditions precedent to the Defendant's obligation to perform under the Policy, including without limitation, the timely payment of premiums, timely notice of the claim, mitigated the property, and or the Defendant has waived any and all other conditions.

24.

Defendant is required to compensate the Plaintiff for all direct physical losses under the terms of the Policy.

25.

Despite Plaintiff's timely written demand that Defendant pay the covered losses, Defendant has frivolously and baselessly failed, and refused to pay Plaintiff's claim under the terms of the Policy, causing further delay in restoring Plaintiff's property to its pre-loss condition.

26.

Defendant has failed to act in good faith and fair dealing under the terms of the Policy by refusing to properly investigate and pay Plaintiff's Claim according to the terms of the Policy.

27.

Defendant has used the tactic of denying compensation to the Plaintiff for its covered losses that were sustained due to the wind and/or hailstorm. Further, Defendant has used the tactic of delaying payment to the Plaintiff in an effort to misrepresent the language of the Policy.

28.

As a result of the Defendant's tactic of denying and delaying Plaintiff's claim, the Plaintiff has sustained covered losses from direct physical damage to the Insured Property in an amount to be determined at trial. In addition, Plaintiff has further covered losses from mitigation and temporary repairs in an amount to be determined at trial.

29.

As a direct result of Defendant's breaches of its respective insurance contract, Plaintiff has been damaged and continues to suffer significant damages.

30.

All of the foregoing conduct constitutes a breach of contract that has resulted in damages to the Plaintiff.

31.

**WHEREFORE,** Plaintiff prays for this Court to enter an award, in Plaintiff's favor, of breach of contract damages, compensatory damages, attorneys' fees, pre- and post-judgment interest, and such other and further relief as the Court may deem just and proper.

## COUNT II – BAD FAITH

32.

Plaintiff adopts, re-alleges, and incorporates its allegations set forth in Paragraphs 1-31 of this Complaint as if fully set forth herein.

33.

Defendant has acted frivolously and without a reasonable basis or justification in contravention of its duty of good faith and faith dealing to achieve a proper disposition of the Plaintiff's Claim.

34.

Defendant has not attempted in good faith to settle the Plaintiff's Claim when, under all the circumstances it could and should have done so had it acted fairly and honestly toward the Plaintiff and with due regard for its interests, namely, but not limited to:

(1) Knowingly misrepresenting to claimants and insureds relevant facts or policy provisions relating to coverages at issue.  See O.C.G.A. § 33-6-34(1);

(2) Failing to acknowledge with reasonable promptness pertinent communications with respect to claims arising under its policies.  See O.C.G.A. § 33-6-34(2);

(3) Failing to adopt and implement procedures for the prompt investigation and settlement of claims arising under its policies.  See O.C.G.A. § 33-6-34(3);

(4) Not attempting in good faith to effectuate prompt, fair, and equitable settlement of claims submitted in which liability has become reasonable clear.  See O.C.G.A. § 33-6-34(4);

(5) Compelling insureds or beneficiaries to institute suits to recover amounts due under its policies by offering substantially less than the amounts ultimately recovered in suits brought by them.  See O.C.G.A. § 33-6-34(5);

(6) Refusing to pay claims without conducting a reasonable investigation.  See O.C.G.A. § 33-6-34(6);

(7) When requested by the insured in writing, failing to affirm or deny coverage of claims within a reasonable time after having completed its investigation related to such claim or claims.  See O.C.G.A. § 33-6-34(7); and

(8) When requested by the insured in writing, failing in the case of claim denial or offers of compromise settlement to provide promptly a reasonable and accurate explanation of the basis for such action.  In the case of claims denials, such denials shall be in writing.  See O.C.G.A. § 33-6-34(10).

35.

The above and foregoing actions of Defendant give rise to a cause of action for bad faith as the Defendant has frivolously and without a reasonable basis refused to pay Plaintiff's covered

loss within sixty (60) days after Plaintiff's timely written demand (Exhibit "C") for payment according to O.C.G.A § 33-4-6.

36.

Defendant has frivolously and without a reasonable basis used the tactic of denying compensation to the Plaintiff for its covered loss that was sustained due to the wind and/or hailstorm event. Further, Defendant has frivolously and without a reasonable basis used the tactic of delaying payment to pay the Plaintiff in an effort to misrepresent the language of the Policy.

37.

Defendant's refusal to pay Plaintiff's covered losses was done frivolously, without a reasonable basis, and otherwise, in bad faith.

38.

Defendant's breach of the Policy it sold to the Plaintiff is in bad faith, and, pursuant to O.C.G.A. § 33-4-6, Defendant is obligated in bad faith, and, as such, Plaintiff is entitled to all damages, whether foreseeable or not, that are a direct result of Defendant's intentional failure to perform, including a penalty of an additional fifty percent (50%) of the value of the claim, attorneys' fees, and Plaintiff's consultant and expert fees.

39.

Pursuant to O.C.G.A. § 33-4-6, Defendant is obligated to pay any amounts owed to the Plaintiff within sixty (60) days of receipt of formal demand and have failed to do so. As a result of that frivolous failure – which was arbitrary, capricious, and without a reasonable basis – Defendant is liable for all amounts due under its respective policy plus fifty percent (50%), pursuant to O.C.G.A. § 33-4-6.

40.

Pursuant to O.C.G.A. § 33-6-34, Defendant owed Plaintiff a duty of good faith and fair dealing and had an affirmative duty to adjust Plaintiff's claim fairly and promptly and to make a reasonable effort to settle claims with the insured when, under all the circumstances it could and should have done so had it acted fairly and honestly. Because Defendant has breached these duties, it is liable to Plaintiff for all damages as a result of the breach, including but not limited to those specified in O.C.G.A. § 33-4-6.

41.

Pursuant to O.C.G.A. § 33-6-34, Defendant breached its duty of good faith and fair dealing and its affirmative duty to adjust claims fairly and promptly when it failed to pay the Plaintiff when it refused to conduct a reasonable investigation of Plaintiff's Claim. Moreover, such failure was arbitrary, capricious, and without probable cause.

42.

As a result, pursuant to O.C.G.A. § 33-4-6, Defendant is liable for penalties in the amount of "not more than fifty percent (50%) of the liability of the insurer for the loss, or $5000, whichever is greater, and all reasonable attorneys' fees for the prosecution of the action against the Insurer." Plaintiff is entitled, in addition to its covered losses set forth herein, to a statutory award of reasonable attorneys' fees in prosecuting this action, along with a statutory award in an amount of fifty percent (50%) of the total compensatory damages awarded or $5,000, whichever is greater, under O.C.G.A. § 33-4-6 for Defendant's unfair claims settlement practices and bad faith refusal to pay Plaintiff's Claim when it could and should have done so, had it acted fairly and reasonably toward the insured.

## COUNT III – ATTORNEY'S FEES

43.

Plaintiff incorporates and re-alleges paragraphs 1 through 42 as if set out fully herein.

44.

Defendant has acted in bad faith and has been stubbornly and maliciously litigious and has caused Plaintiff unnecessary trouble and expense.

45.

Under the circumstances, Defendant is liable to Plaintiff for all of Plaintiff's costs and expenses of litigation, including reasonable attorney's fees, pursuant to O.C.G.A. § 9-15-14, O.C.G.A. § 13-6-11.

## DEMAND FOR JURY TRIAL

46.

Plaintiff requests a trial by Jury on all counts of the Complaint.

## PRAYER FOR RELIEF

47.

**WHEREFORE**, the Plaintiff requests that after due proceedings are had, all appropriate penalties be assessed against the Defendant and that the Plaintiff receives any and all damages at law to which it is justly entitled, and thus prays for judgment against the Defendant, as follows:

a. That this Court grant judgment in favor of the Plaintiff and against Defendant in an amount of $622,753.27, or in an amount to be determined at trial for breach of insurance contract.

b. Breach of contract damages, compensatory damages, including all damages to the Plaintiff by the Defendant and any resulting expenses and temporary repairs.

c.  Bad faith damages in an amount of fifty percent (50%) of the total damages awarded or
    $5,000, whichever is greater, for Defendant's bad faith delay, denial, and its intentional,
    frivolous failure to conduct a reasonable investigation of the Plaintiff's Claim without a
    reasonable basis;

d.  Plaintiff's attorneys' fees and costs of suit in this action;

e.  Plaintiff's consultant and expert fees;

f.  Pre- and post-judgment interest in the maximum amount allowed by law;

g.  All statutory penalties;

h.  Any and all applicable multipliers; and,

i.  Any and all other relief that the Court may deem just and proper, whether such relief sounds
    in law or equity.

Respectfully submitted this 18th day of January, 2022.


**THE BUSH LAW GROUP, P.A.**

/s/ William L. Flournoy
**William L. Flournoy, Esq.**
GA Bar No.: 755135
6622 Southpoint Dr. S., Ste. 190
Jacksonville, Florida 32216
(904) 552-1006
*E-mail for Electronic Service:*
wlflournoy@bushlawgroup.net
krdupries@bushlawgroup.net
justin@bushlawgroup.net


STATE COURT OF
DEKALB COUNTY, GA.
1/18/2022 2:24 PM
E-FILED
BY: Kelly Flack

MBGAY



**AmTrust North America**
An AmTrust Financial Company

April 19, 2021

The Bush Law Group LLC
Attn: William L. Flournoy, Esq.
6622 Southpoint Drive, S.
Suite 190
Jacksonville, FL  32216

Re:   Insurance Co.:       Wesco Insurance Company
        File No.:               3241685
        Policyholders:       Anoshvi Hospitality, LLC
        Policy No.:            WPP1839065
        Policy Period:       11/1/19-11/1/20
        Date of Loss:        5/28/20
        Location of Loss:   7850 Stonecrest Square, Lithonia, GA  30038

Dear Mr. Flournoy:

Please allow this to serve as confirmation of receipt of your correspondence dated April 8, 2021 regarding the above noted claim. At your request, we are attaching a certified copy of the policy. We are also providing you with a copy of the previously issued partial disclaimer, along with the engineer's reports and our field adjuster's estimate for the wind damaged shingles.

We disagree with your assertion that we have not completed a full, good-faith investigation into the details of the claim and available coverages under the applicable policy. As stated in the attached letter, which was previously provided to the insured and their public adjuster on October 23, 2020, we did confirm covered wind damage to the roof shingles. However, the roof was repairable using an insert replacement technique, which had been utilized on multiple other areas of the roof, and the cost to repair the 10 wind damaged shingles did not exceed the applicable policy deductible of $5,000. We advised the insured that, if they obtained an estimate to repair these shingles, and that estimate exceeded their deductible, to submit it to us for consideration. We have not received any estimate that solely addresses the covered wind damage repairs to date.

With regard to the claimed hail damages, we assigned an engineer to inspect the property and confirm any hail damages and the likely date of occurrence. The engineer was advised by the public adjuster that the roof was approximately 15 years old, though the shingles on the ridge of the building had been replaced in 2019. The engineer noted that these ridge shingles did not show any signs of hail damage, even though they are less

supported and more vulnerable to hail damage than other shingles. Test squares of the slopes of the roof found no damage on the South or East slopes, and one or two hail bruises per square on the North and West slopes. The edges of these hail marks were weathered, with some of the exposed shingle fibers being tattered, indicating the damage was older, which is supported by the findings that the ridge shingles were replaced in 2019.

In order for hail to bruise a laminated asphalt shingle, the hail must be 1-1/4" in diameter and frozen solid. The engineer found hail spatter marks of 1/4" or less on the surfaces facing north and west, and advised that spatter marks generally would stay visible for one to two years after a storm, indicating there was a more recent storm, but it did not have hail of a size to damage roof shingles. They also found dents in metal surfaces at the property; however, the dents were substantially larger than the hail spatter marks, indicating they were from a separate, older occurrence. He researched hail storm occurrences in the area through the Storm Events Database maintained by NOAA, as well as through CoreLogic, a private company that provides hail data, and found that hail of up to 1-1/2" was reported less than one mile from the property on July 21, 2018.

Based on this information, we advised the insured that it appeared the hail damage had occurred prior to our policy period, which began on November 1, 2019. We suggested that they submit a claim to the prior insurance carrier, and provided our engineering report to assist them in establishing the date of loss.

The engineer also noted a piece of missing parapet coping on the South end of the roof; however, a review of historical images indicated this coping was missing at least as far back as January 2018, which is also prior to our applicable policy period, and is not covered under our policy.

The insured's public adjuster also submitted an image to us from an app called Hail Recon, which shows areas of potential hail damage. The image showed a map of the area with the insured's location pinpointed, and a list of four dates. Two of the dates were prior to our applicable policy period, including the date of July 21, 2018. Two of the dates were within our policy period, but indicated a lower "overall impact" score than the July 21, 2018 storm. The image we were provided did not list any sizes of the hailstones that were reported to have fallen on those dates, even though a review of Hail Recon's website indicates that a subscriber is able to generate a full "Hail Impact Report" for a specific address, detailing the date, time, duration and direction of a hail storm, and listing the size of the hail that fell at the specific location, as well as 1 mile, 3 mile and 10 miles away, along with other information. We were not provided with a copy of this "Hail Impact Report", and therefore, cannot confirm any details regarding the dates their public adjuster provided.

3241685
April 19, 2021

Page 3

Our engineer also reviewed this image and noted that it correlates with his findings that the hail that damaged the roof fell on July 21, 2018. The hail spatter that was seen at the location during his inspection was not of a size that would damage shingles, and hail spatter from the July 2018 storm would have faded by the time he inspected. We advised the insured that, if the public adjuster would like to provide us with a full "Hail Impact Report" from Hail Recon, we would be happy to review that information. We have not received any further documentation to review from either the insured or their public adjuster.

Please be advised that we reaffirm our previously stated position, per the attached coverage letter provided to the insured and the public adjuster on October 23, 2020, that the wind damaged shingles, which occurred during the applicable policy period, did not exceed the policy deductible. Furthermore, the hail damage that was found to the roof did not occur during the policy period, and should be reported to the prior insurance carrier. If additional documentation is available to support your position that the hail damage occurred during our policy period of November 1, 2019 through November 1, 2020, please submit a copy of that documentation for our consideration.

This letter and our actions to date in investigating this matter do not constitute a waiver of any policy provisions or defenses available to us. We reserve our rights to amend, alter or supplement this letter should information become known in the future that would affect the content of this letter.

Very truly yours,

Christine A. Rozzelle
General Adjuster
Property Claims
(267)751-4013
Christine.Rozzelle@amtrustgroup.com



April 8, 2021

Wesco Insurance Company
c/o Christine A. Rozzelle, Adjuster
AM Trust North America
P.O. Box 6935
Cleveland, OH 44101

SENT VIA CERTIFIED MAIL,
RETURN RECEIPT REQUESTED
(70160910000070849330) & E-MAIL
(christine.rozzelle@amtrustgroup.com)

RE:   **Our Client:** Anoshvi Hospitality, LLC d/b/a Fairfield Inn & Suites Atlanta Stonecrest
       **D/B/A:** Fairfield Inn & Suites Atlanta Stronecrest
       **Loss Address:** 7850 Stonecrest Square, Lithonia, GA 30038
       **Policy No.:** WPP1835065
       **Claim No.:** 3241685-1
       **D.O.L.:** May 28, 2020

Dear Ms. Rozzelle:

The Bush Law Group, LLC has been retained by Anoshvi Hospitality, LLC d/b/a Fairfield Inn & Suites Atlanta Stonecrest (hereinafter "Fairfield Inn" or "our client") to represent its interests regarding the above referenced property insurance claim. All further communication regarding this claim should be directed to this office and to my attention.

Please also accept this letter as a formal demand for a <u>certified copy of the relevant insurance policy, to include the original policy, any renewals, endorsements, and any written or verbal statements taken from our clients or their representatives.</u>

I am enclosing the property estimate for the damages that occurred Fairfield Inn's property, as a result of a wind and hail event. We reserve the right to amend this estimate should further information impacting it become available. Our clients have complied with all conditions contained in the insurance policy. Additionally, Wesco Insurance Company ("Wesco") has not provided any evidence that would support a justifiable denial or limitation of Fairfield Inn's claim. This constitutes prima facie evidence of Wesco's bad faith.

This lack of good faith has forced Fairfield Inn to retain our law firm in order to fairly settle its claim. Accordingly, it is our contention that your conduct constitutes an unfair claim settlement pursuant to O.C.G.A. § 33-6-34, and is a breach of the insurance policy. The violations under the Georgia Insurance Code may include, but not be limited to:

Page 2

Wesco Insurance Company c/o Christine A. Rozzelle of AM Trust North America
Client: Anoshvi Hospitality, LLC d/b/a Fairfield Inn & Suites Atlanta Stonecrest
April 8, 2021

(1) Knowingly misrepresenting to claimants and insureds relevant facts or policy provisions relating to coverages at issue.  See O.C.G.A. § 33-6-34(1);

(2) Failing to acknowledge with reasonable promptness pertinent communications with respect to claims arising under its policies.  See O.C.G.A. § 33-6-34(2);

(3) Failing to adopt and implement procedures for the prompt investigation and settlement of claims arising under its policies.  See O.C.G.A. § 33-6-34(3);

(4) Not attempting in good faith to effectuate prompt, fair, and equitable settlement of claims submitted in which liability has become reasonable clear.  See O.C.G.A. § 33-6-34(4);

(5) Compelling insureds or beneficiaries to institute suits to recover amounts due under its policies by offering substantially less than the amounts ultimately recovered in suits brought by them.  See O.C.G.A. § 33-6-34(5);

(6) Refusing to pay claims without conducting a reasonable investigation.  See O.C.G.A. § 33-6-34(6);

(7) When requested by the insured in writing, failing to affirm or deny coverage of claims within a reasonable time after having completed its investigation related to such claim or claims.  See O.C.G.A. § 33-6-34(7); and

(8) When requested by the insured in writing, failing in the case of claim denial or offers of compromise settlement to provide promptly a reasonable and accurate explanation of the basis for such action.  In the case of claims denials, such denials shall be in writing.  See O.C.G.A. § 33-6-34(10);

Bad faith claims handling violation of O.C.G.A. § 33-6-34 triggers additional liability on your part under O.C.G.A. § 33-4-6 that includes the amount of the claim, plus a penalty of an additional fifty percent (50%) of the value of the claim and reasonable attorneys' fees and costs.

Therefore, as per the enclosed estimate of damages to our client, we are hereby making formal demand that you settle the above claim for the sum of **$622,753.27** less any prior payments made by you.  This demand is being made pursuant to O.C.G.A. § 33-4-6, and you have sixty (60) days in which to make payment on this claim or be subject to a lawsuit containing a claim for breach of contract and bad faith seeking all compensation allowed by law, including attorneys' fees and penalty of fifty percent (50%) of the loss amount.

This letter constitutes a "proper demand" for payment under O.C.G.A. § 33-4-6.  If you contend that a proper demand has not been made, you must immediately notify us of the reasons for such allegation.  Otherwise, it will be assumed that you agree that a proper demand was made.

This correspondence will also serve as notification that you may also be required to pay reasonable attorneys' fees due to your failure to perform as per the terms of the insurance contract

Page 3

Wesco Insurance Company c/o Christine A. Rozzelle of AM Trust North America
Client: Anoshvi Hospitality, LLC d/b/a Fairfield Inn & Suites Atlanta Stonecrest
April 8, 2021

entered into with Fairfield Inn.  Such payment is necessitated as a result of our client having to retain this firm for legal services to pursue its claim for damages and should be paid in addition to the amount of any valid claim for contractual benefits and costs.  The purpose of this letter is to encourage you to resolve our client's claim in a fair and equitable manner without the need for further legal action.  In the event that you fail to respond to this letter with an offer of settlement that is acceptable Fairfield Inn, we will have no alternative but to recommend that a lawsuit be filed against you.

This offer is made in the spirit of compromise pursuant to Southern General Ins. Co. v. Holt, 226 Ga. 267, 416 S.E.2d 274 (1992).  Failure to settle my client's claim after this notice of our willingness to accept this amount (which is within your policy limits) may result in you being liable for the full amount of any judgment obtained, even if it is in excess of the limits of the policy. See GEICO v. Gingold, 249 Ga. 159 (1982); Shaw v. Caldwell, 229 Ga. 87 (1972); and Smoot v. State Farm Mutual Auto Insurance Co., 229 F.2d 525 (5th Cir. 1962).

In order to avoid a suit for bad faith penalties and attorney's fees, payment must be received in my office within sixty (60) days of your receipt of this letter.  Any check issued should list The Bush Law Group LLC.

I look forward to working with you to resolve this matter quickly and amicably.  Please feel free to contact me should you have any questions pertaining to this correspondence.

Sincerely,

William L. Flournoy, Esq.

Enclosure as stated.

cc: Anoshvi Hospitality, LLC d/b/a Fairfield Inn & Suites Atlanta Stonecrest

 **Iron Ladder Contractors, LLC**

| | | | |
|---|---|---|---|
| Insured: | Anoshvi Hospitality, LLC | Home: | (908) 397-2403 |
| Property: | 7850 StoneCrest Square | E-mail: | manish.r.jariwala@gmail.com |
| | Lithonia, GA 30038 | | |

| | | | |
|---|---|---|---|
| Estimator: | Ben Brown | Business: | (678) 294-9835 |
| Company: | Iron Ladder Contractors | E-mail: | info@ironladderctrs.com |
| Business: | 115 E Main Street, Suite 100 | | |
| | Buford, GA 30518 | | |

**Claim Number:** 3241685-1          **Policy Number:** WPP1839065 00          **Type of Loss:** hail and wind damage

| | | | | |
|---|---|---|---|---|
| Date of Loss: | 5/28/2020 12:00 AM | | Date Received: | 6/15/2020 12:00 AM |
| Date Inspected: | 8/31/2020 12:00 AM | | Date Entered: | 9/15/2020 12:00 AM |

| | |
|---|---|
| Price List: | GAAT8X_APR21 |
| | Restoration/Service/Remodel |
| Estimate: | MANISH_JARIWALA |

**O&P has been added to total of estimate, including roofing work. O&P is not something given based on the number of trades involved, but as a part of standard operating costs that need to be accounted for when a properly licensed and insured operator is performing the work.**
  **As per informational releases from Xactware in 2007 and 2011, Xactimate only includes for the actual cost of performing each task individually, and not for the overhead and profit that a business incurs to perform the total work. This must be allowed for as the customer has the right to have a properly licensed and insured contractor perform the work on their home based on reasonable costs of performing such work, and a contractor has the right to earn a reasonable profit for their time and work invested. As per the policy, insurance companies are bound to paying the reasonable price standard, as set by those in the industry directly. Insurance companies cannot and should not step outside of their professional bounds by attempting to set what the standard of "reasonable pricing" is within an industry.**


  **All removal labor codes have been changed from DMO to their appropriate labor grouping. A separate demolition crew is not called in specifically for removal any components, nor would it be proper to do so. The work inherently requires the skilled labor of the related crew trained in specific techniques and OSHA guidelines, not a general demolition crew.**

  **All code items as written into GA law per the DCA have been accounted for. These code items are enforced regardless of the local building official performing an inspection or not, per GA law. More information can be found on the DCA website, here:**
**https://www.dca.ga.gov/local-government-assistance/construction-codes-industrialized-buildings/construction-codes**

  **This estimate as prepared should be considered a work in progress, and is not to be considered as inclusive of all damages, finalized, or complete.**

 **Iron Ladder Contractors, LLC**

### MANISH_JARIWALA

**Roof**

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| **SHINGLE ROOFING** | | | | | | |
| 1.  Dumpster load - Approx. 40 yards, 7-8 tons of debris | 5.00 EA | 730.00 | 0.00 | 0.00 | 1,642.50 | 5,292.50 |

The size of the dumpsters needed for roof replacement are based on following calculation:
  10 SQ = 15 tons = 15 CY
  20 SQ = 3 tons = 15 to 20 CY
  30 SQ = 4.5 Tons = 20 to 30 CY
  40 SQ = 6 tons = 30 CY

  Asphalt portion of roof is 15,329SF = 153.29SQ.

  Waste calculation on put back is 15%, or 22.99~23SQ. Total 176.29SQ.
  Allowance for (5) 40SQ dumpsters

| | | | | | | |
|---|---|---|---|---|---|---|
| 2.  Tear off, haul and dispose of comp. shingles - Laminated | 153.29 SQ | 56.21 | 0.00 | 0.00 | 3,877.40 | 12,493.83 |
| 3.  Laminated - comp. shingle rfg. - w/ felt | 176.33 SQ | 0.00 | 224.74 | 1,412.62 | 18,468.46 | 59,509.48 |

Allowance for 15% waste based on style of shingle, length of partition walls, valleys, rake, and multiple sections of roof with multiple protrusions into roofing surface to be worked around.

Due to two market price increases of 6% that have occurred since the beginning of the year, but have not yet been accounted for within Xactimate, we have made a 12.36% adjustment to material pricing only on all felt, shingle, ridge cap shingles, IWS, and starter strip material components.

  Ridge vent, nails, cap nails, flashings, and other material components have not been affected.

| | | | | | | |
|---|---|---|---|---|---|---|
| 4.  Roofing felt - synthetic underlayment | 170.00 SQ | 0.00 | 38.63 | 232.56 | 3,059.85 | 9,859.51 |

5% waste + roundup to next 10 SQ. Synthetic felt comes in rolls of 10 SQ, much like shingles only come in bundles of .33SQ at a time. It is not possible to purchase less than 10 SQ of felt at a time.

  As well, all materials per code and manufacturer requirements must arrive at the job site unopened and in manufacturer-approved packaging. So reusing materials from one roof to another is prohibited by both code and industry standard.

| | | | | | | |
|---|---|---|---|---|---|---|
| 5.  Ice & water barrier | 900.00 SF | 0.00 | 1.29 | 23.76 | 533.14 | 1,717.90 |

IWS applied at full length in all valleys and pitch changes on roof. Also applied in half-width strips at all flashing joints as required. This calculation is:  [(VAL + PTCH Change)*3 + (Flashings)*1.5] =  (124)*3+(430)*1.5 = 893SF

  IWS is available only in 150SF rolls. Thus nearest available SF is 900SF, as allowed.

| | | | | | | |
|---|---|---|---|---|---|---|
| 6.  R&R Valley metal | 150.00 LF | 0.57 | 5.04 | 24.36 | 389.64 | 1,255.50 |

Replacement of valley metal that was already present. 124LF of valley, but rolls only available in 100LF and 50LF segments. Allowing for 150LF.

| | | | | | | |
|---|---|---|---|---|---|---|
| 7.  Drip edge/gutter apron | 610.00 LF | 0.00 | 2.25 | 43.92 | 637.39 | 2,053.81 |



**Iron Ladder Contractors, LLC**

**CONTINUED - Roof**

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| **Drip edge calculation is as follows:** | | | | | | |
| **(Eave + Rake)*5% waste = 607LF** | | | | | | |
| **Drip edge is available only in 10LF strips. Rounding to 610LF to account for proper waste.** | | | | | | |
| 8.  R&R Flash parapet wall only | 180.00 LF | 1.93 | 9.96 | 23.90 | 973.85 | 3,137.95 |
| 9.  R&R Cap flashing - large | 180.00 LF | 0.57 | 24.24 | 245.66 | 2,120.16 | 6,831.62 |
| **R/R of cap flashing on parapet walls, and flashing on those parapet walls with asphalt shingle installation.** | | | | | | |
| 10.  Roofer - per hour | 40.00 HR | 0.00 | 106.79 | 0.00 | 1,922.22 | 6,193.82 |
| **Labor allowance for removal of at least 12" of stucco on all parapet and partition walls where asphalt roofing is being replaced. Must remove this stucco in order to allow for proper replacement of flashing.** | | | | | | |
| **Allowance based on (10) man crew removing stucco over (2) hour period. allowing double charge due to height risks associated with work at these areas.** | | | | | | |
| 11.  Step flashing | 650.00 LF | 0.00 | 8.39 | 80.08 | 2,490.12 | 8,023.70 |
| **Step flashing has 8" exposure length. In order to cover 430LF then 645LF will be needed. Available in boxes of 50ct each. Allowing for 650LF.** | | | | | | |
| 12.  R&R Chimney flashing - large (32" x 60") | 3.00 EA | 24.10 | 456.36 | 27.29 | 660.91 | 2,129.58 |
| **Replacement of flashing around external exhaust releases on roof.** | | | | | | |
| 13.  R&R Flashing - pipe jack | 5.00 EA | 6.79 | 38.12 | 4.41 | 103.03 | 331.99 |
| 14.  Remove Fireplace - chimney chase cover - sheet metal | 3.00 EA | 18.08 | 0.00 | 0.00 | 24.41 | 78.65 |
| 15.  Install Fireplace - chimney chase cover - sheet metal | 3.00 EA | 0.00 | 193.69 | 0.00 | 261.48 | 842.55 |
| 16.  Remove Flue cap - oversized | 3.00 EA | 18.08 | 0.00 | 0.00 | 24.41 | 78.65 |
| 17.  Install Flue cap - oversized | 3.00 EA | 0.00 | 27.12 | 0.00 | 36.61 | 117.97 |
| **D/R of flue caps and chase covers over exhaust systems to allow for stucco repairs.** | | | | | | |
| 18.  Asphalt starter - peel and stick | 720.00 LF | 0.00 | 2.01 | 39.74 | 669.13 | 2,156.07 |
| **Ridge cap and starter strip have been accounted for separately as embedded field waste is not enough to account for the cost of these items. RFG RIDGCS has been used in place of RFG RIDGC as RIDGC only allows component pricing of 3-tab shingles for the ridge cap, which is not appropriate as code requires that items be compatible for their use . Standard shingles cannot and should not be used as either starter strip or ridge cap. As previously notated, field shingle waste has been calculated to exact amounts needed.** | | | | | | |
| **Ridge Cap: 266LF of ridge/hip * 5% waste = 14 bundles @ 20LF/bundle = 4.67SQ = 280LF** | | | | | | |
| **Starter Strip: 576LF of rake/eave + 5% waste = 604LF = 6 rolls of peel/stick starter @ 120LF/roll = 6SQ = 720LF** | | | | | | |
| **If ridge cap and starter strip are accounted for within field waste then field waste must be increased to 21.96% = 33.67 SQ (10.67 SQ of ridge cap and starter strip, with 23 SQ of field shingle waste)** | | | | | | |
| 19.  R&R Ridge cap - Standard profile - composition shingles | 280.00 LF | 2.32 | 4.46 | 44.13 | 874.14 | 2,816.67 |

MANISH JARIWALA

4/7/2021          Page: 3



**Iron Ladder Contractors, LLC**

**CONTINUED - Roof**

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|

Ridge cap and starter strip have been accounted for separately as embedded field waste is not enough to account for the cost of these items. RFG RIDGCS has been used in place of RFG RIDGC as RIDGC only allows component pricing of 3-tab shingles for the ridge cap, which is not appropriate as code requires that items be compatible for their use. Standard shingles cannot and should not be used as either starter strip or ridge cap. As previously notated, field shingle waste has been calculated to exact amounts needed.

Ridge Cap: 266LF of ridge/hip * 5% waste = 14 bundles @ 20LF/bundle = 4.67SQ = 280LF
Starter Strip: 576LF of rake/eave + 5% waste = 604LF = 6 rolls of peel/stick starter @ 120LF/roll = 6SQ = 720LF

If ridge cap and starter strip are accounted for within field waste then field waste must be increased to 21.96% = 33.67 SQ (10.67 SQ of ridge cap and starter strip, with 23 SQ of field shingle waste)

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 20. R&R Continuous ridge vent - shingle-over style | 260.00 LF | 0.81 | 7.87 | 69.89 | 1,047.01 | 3,373.70 |
| 21. Remove Additional charge for high roof (2 stories or greater) | 306.58 SQ | 5.09 | 0.00 | 0.00 | 702.22 | 2,262.71 |
| Allowing double charge for height due to height of structure. | | | | | | |
| 22. Additional charge for high roof (2 stories or greater) | 352.57 SQ | 0.00 | 16.75 | 0.00 | 2,657.50 | 8,563.05 |
| 23. Remove Additional charge for steep roof - 7/12 to 9/12 slope | 153.29 SQ | 13.47 | 0.00 | 0.00 | 929.17 | 2,993.99 |
| 24. Additional charge for steep roof - 7/12 to 9/12 slope | 176.28 SQ | 0.00 | 37.93 | 0.00 | 3,008.84 | 9,695.14 |
| **METAL ROOFING** | | | | | | |
| 25. Remove Metal roofing - High grade | 2,709.00 SF | 0.49 | 0.00 | 0.00 | 597.33 | 1,924.74 |
| 26. Metal roofing - High grade | 2,979.90 SF | 0.00 | 8.22 | 522.08 | 11,257.60 | 36,274.46 |
| 27. R&R Eave trim for metal roofing - 26 gauge | 271.00 LF | 0.79 | 5.05 | 46.83 | 733.27 | 2,362.74 |
| 28. R&R Endwall flashing for metal roofing - 26 gauge | 324.00 LF | 0.91 | 5.95 | 71.02 | 1,032.15 | 3,325.81 |
| 29. R&R Ridge cap - metal roofing | 141.00 LF | 2.74 | 5.12 | 25.15 | 510.04 | 1,643.45 |
| 30. R&R Ridge end cap for metal roofing | 8.00 EA | 5.17 | 24.92 | 8.23 | 112.03 | 360.98 |
| 31. R&R Ridge vent - Metal roofing - floating ventilator | 30.00 LF | 4.02 | 24.01 | 39.53 | 396.20 | 1,276.63 |
| 32. R&R Sidewall flashing for metal roofing - 26 gauge | 104.00 LF | 0.57 | 5.01 | 17.64 | 269.09 | 867.05 |
| 33. Remove Additional charge for high roof (2 stories or greater) | 35.94 SQ | 5.09 | 0.00 | 0.00 | 82.32 | 265.25 |
| 34. Additional charge for high roof (2 stories or greater) | 39.53 SQ | 0.00 | 16.75 | 0.00 | 297.96 | 960.09 |
| 35. Remove Additional charge for steep roof - 10/12 - 12/12 slope | 1.56 SQ | 21.17 | 0.00 | 0.00 | 14.87 | 47.90 |
| 36. Additional charge for steep roof - 10/12 - 12/12 slope | 1.72 SQ | 0.00 | 59.62 | 0.00 | 46.15 | 148.70 |
| 37. Dumpster load - Approx. 30 yards, 5-7 tons of debris | 1.00 EA | 560.00 | 0.00 | 0.00 | 252.00 | 812.00 |

 **Iron Ladder Contractors, LLC**

### CONTINUED - Roof

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| **EQUIPMENT NEEDS** | | | | | | |
| 38. Boom lift - 50'-60' reach (per day) | 18.00 DA | 0.00 | 494.63 | 0.00 | 4,006.51 | 12,909.85 |

30 squares per day tear off @ 5 days
30 squares replacement per day @ 6 days
Install drip edge, valley metal, and replace metal roofing @ 3 days
Repair stucco around roof assembly areas @ 3 days
Set up and break down for pickup @1 day

**Total: 18 days**

| | | | | | | |
|---|---|---|---|---|---|---|
| 39. Boom truck and operator - 20 ton | 144.00 HR | 0.00 | 106.00 | 0.00 | 6,868.80 | 22,132.80 |

**(18) days expected use with (8) hours each day of use.**

| | | | | | | |
|---|---|---|---|---|---|---|
| 40. Crane and operator - 30 ton capacity | 144.00 HR | 0.00 | 167.80 | 0.00 | 10,873.44 | 35,036.64 |

**Crane will be needed for lifting of materials in sections to areas of the roof being worked.**

**Capacity is based on estimated 75lbs/bundle * 3 bundles/SQ * 176.29SQ installed
This requires nearly 20 ton minimum limit for crane capacity on materials.**

| | | | | | | |
|---|---|---|---|---|---|---|
| 41. Debris chute hopper - per week - 30" x 4' section | 48.00 WK | 30.05 | 0.00 | 0.00 | 649.08 | 2,091.48 |
| 42. Debris chute - per week - 30" x 4' section | 624.00 WK | 16.51 | 0.00 | 0.00 | 4,636.01 | 14,938.25 |

**Chute hopper is based on (12) hoppers being used across roofing surface and approximate 4 week work time frame.**

**Chute allowance is based on 52' average eave height, which will require (13) 4' sections of chute for each debris chute to reach dumpster at ground level. (12) chutes total in use. (4) week work period.
4*12*13 = 624.**

| | | | | | | |
|---|---|---|---|---|---|---|
| 43. Roofer - per hour | 48.00 HR | 0.00 | 106.79 | 0.00 | 2,306.66 | 7,432.58 |

**Additional labor hours allowed for roofing crew to hand carry materials across roofing surface to debris chutes into dumpsters below.**

| | | | | | | |
|---|---|---|---|---|---|---|
| 44. Fall protection harness and lanyard - per day | 280.00 DA | 0.00 | 8.00 | 0.00 | 1,008.00 | 3,248.00 |

**Harness fall protection as required by OSHA.**

**(20) man crew expected, (14) days expected time frame.**

| | | | | | | |
|---|---|---|---|---|---|---|
| 45. Porta Potty | 28.00 EA | 0.00 | 82.50 | 0.00 | 1,039.50 | 3,349.50 |

**The cost to rent a Porta Potty is between $65 to $100 per day. This is the cost on per day basis for Renting a Portable Toilet.**

**This price and verbiage was extracted from the internet for compatible pricing reasons. The average per day cost is 82.50. Need one for men and one for women for 14 days.**

| | | | | | | |
|---|---|---|---|---|---|---|
| 46. R&R Eye wash fountain | 1.00 EA | 80.31 | 1,095.10 | 42.66 | 548.14 | 1,766.21 |
| 47. Commercial Supervision / Project Management - per hour | 144.00 HR | 0.00 | 70.27 | 0.00 | 4,553.50 | 14,672.38 |

**Safety supervisor for roofing work as required by OSHA.**

| | | | | | | |
|---|---|---|---|---|---|---|
| Totals: Roof | | | | 3,045.46 | 99,204.24 | 319,657.83 |

 **Iron Ladder Contractors, LLC**

### Exterior Elevation

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| **GENERAL EXTERIOR** | | | | | | |
| 48. Clean with pressure/chemical spray - Very heavy | 7,793.60 SF | 0.00 | 0.73 | 12.47 | 2,565.81 | 8,267.61 |

Heavy clean of affected stucco areas on structure.

As per EV report, these are the following wall faces broken down by directional. Primary entrance is considered "Front" elevation.

South/Left Elevation:     Total 2107.9SF
BP    911.9SF
BP    1003.9SF
AE    77.2SF
AB    63.9SF
L     18.8SF
O     23.7SF
D     8.5SF
There are also two areas at the top of BJ and BG facets which are stucco and not separately shown on the EV report. These run the perimeter of these facts at their upmost section, at a height of approximate 6'. Adds another 180SF.

East/Front Elevation:     Total 1653.1SF
M     18.8SF
E     11.7SF
I     17SF
F     13.6SF
H     16.9SF
BS    1342.9SF
AS    232.2SF
There are also two areas at top of facets BL and BM that are not accounted for. These add 192SF.

North/Right Elevation:     Total 2344.2SF

AM    164.7SF
AA    63.8SF
AF    77.4SF
BR    1077.5SF
BO    911.2SF
C     8.5SF
P     23.7SF
K     17.4SF

There are also two areas at top of facets BI and BH that are not accounted for. These add 180SF.

West/Rear Elevation: Total 1688.4SF
N     20.9SF
G     13.6SF
B     8.1SF
A     7.7SF
J     17.3SF
BT    1428.8SF

There are also sections at the top perimeter of facets BN and BK which are stucco but not accounted for within diagram. These add 192SF.

Total Stucco Area: 7793.6SF



**Iron Ladder Contractors, LLC**

**CONTINUED - Exterior Elevation**

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 49. Scaffolding Setup & Take down - per hour | 216.00 HR | 0.00 | 36.82 | 0.00 | 3,578.90 | 11,532.02 |

Includes allowance for (4) man crew working (27) hours, with allowance for both setup and take down.

**4*27*2 = 216**

| | | | | | | |
|---|---|---|---|---|---|---|
| 50. Scaffold - per section (per month) | 156.00 MO | 0.00 | 111.31 | 0.00 | 7,813.96 | 25,178.32 |

Approximately 50SF coverage for scaffolding section. Based on SF of work area for stucco work will require 156 sections. Allowing one month for work period on stucco faces for pressure wash, repair, and redashing.

| 51. Add for personal protective equipment - Heavy duty | 10.00 EA | 0.00 | 39.14 | 30.39 | 189.81 | 611.60 |
|---|---|---|---|---|---|---|

Based on standard (10) man work crew. Work requires use of PPE equipment.

| 52. R&R Eye wash fountain | 1.00 EA | 80.31 | 1,095.10 | 42.66 | 548.14 | 1,766.21 |
|---|---|---|---|---|---|---|

Required at commercial job site. Job specific cost.

| 53. Telehandler/forklift and operator | 320.00 HR | 0.00 | 112.39 | 0.00 | 16,184.16 | 52,148.96 |
|---|---|---|---|---|---|---|

Equipment use during redash, cleaning, repair, and painting of exterior stucco. Allowance based on (1) month expected time frame, or (4) weeks. (2) operators and pieces of equipment, (4) weeks, (8) hour work days, (5) days per week.

| 54. Porta Potty | 40.00 EA | 0.00 | 82.50 | 0.00 | 1,485.00 | 4,785.00 |
|---|---|---|---|---|---|---|

The cost to rent a Porta Potty is between $65 to $100 per day. This is the cost on per day basis for Renting a Portable Toilet.

This price and verbiage was extracted from the internet for compatible pricing reasons. The average per day cost is 82.50. Need one for men and one for women for 20 days.

| 55. Stucco repair around doors, windows, etc - 2nd floor | 1,002.00 LF | 0.00 | 23.05 | 145.89 | 10,458.90 | 33,700.89 |
|---|---|---|---|---|---|---|

Allowance for repair of stucco along perimeter parapet walls due to roof replacement. Will need to cut back stucco at all areas in which roof is being replaced to allow for proper flashing removal, replacement, and roof installation. this LF accounts for all parapet wall locations and all partition wall locations.

Allowing a double charge for 2nd story due to 4 story height working level.

| 56. Stucco color coat (Redash) - sand texture | 7,793.60 SF | 0.00 | 3.26 | 224.46 | 11,534.23 | 37,165.83 |
|---|---|---|---|---|---|---|

Current stucco is a pre-mixed color set, so painting or sealing is not appropriate. Need to allow for color redash for reasonably uniform appearance from necessary stucco repairs.

| 57. Additional cost for high wall or ceiling - Over 14' | 7,793.60 SF | 0.00 | 0.09 | 0.00 | 315.64 | 1,017.06 |
|---|---|---|---|---|---|---|
| 58. Detach/Reset of Hotel Sign | 2.00 EA | 0.00 | 5,000.00 | 0.00 | 4,500.00 | 14,500.00 |

Approximate bid cost acquired for D/R of large neon signs located on upper facets of South and North elevations for stucco repair and redash. This pricing was acquired based on an average of quotes received from multiple different potential vendors.

It is inclusive of any lifting equipment, handling costs, storage costs, and other items necessary to completely detach and reset these large fixtures during work.

| 59. R&R Gutter - aluminum - up to 5" | 389.00 LF | 0.49 | 6.27 | 93.98 | 1,225.64 | 3,949.26 |
|---|---|---|---|---|---|---|
| 60. R&R Downspout - aluminum - up to 5" | 504.00 LF | 0.49 | 6.27 | 121.77 | 1,587.96 | 5,116.77 |
| 61. Prime & paint gutter / downspout | 893.00 LF | 0.00 | 1.56 | 17.86 | 634.93 | 2,045.87 |



**Iron Ladder Contractors, LLC**

## CONTINUED - Exterior Elevation

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 62. Commercial Supervision / Project Management - per hour | 160.00 HR | 0.00 | 70.27 | 0.00 | 5,059.44 | 16,302.64 |

Safety supervision hours for stucco and other exterior elevation work as required by OSHA.

| Totals: Exterior Elevation | | | | 689.48 | 67,682.52 | 218,088.04 |
|---|---|---|---|---|---|---|

### Logistical Support Costs

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 63. Temporary construction office - portable (trailer) | 2.00 MO | 0.00 | 279.08 | 0.00 | 251.17 | 809.33 |
| 64. Temporary power usage (per month) - Commercial | 2.00 MO | 0.00 | 273.20 | 43.71 | 265.55 | 855.66 |
| 65. R&R Temporary power - hookup | 1.00 EA | 54.62 | 307.65 | 0.00 | 163.02 | 525.29 |
| 66. Temporary heat - usage - per month - Commercial | 2.00 MO | 0.00 | 866.13 | 65.62 | 809.05 | 2,606.93 |
| 67. Power distribution box (per week) | 8.00 WK | 0.00 | 170.09 | 0.00 | 612.32 | 1,973.04 |

Temporary distribution box for power on property, based on (38) day time frame for repairs. (18) days for roofing work, and (20) day time frame for exterior stucco and gutter work. (5) days per week, or (8) weeks.

Lesser charge than (38) day time frame for use.

| 68. Barricade/warning sign/traffic cone - Min. equip. charge | 10.00 EA | 0.00 | 52.50 | 0.00 | 236.25 | 761.25 |
|---|---|---|---|---|---|---|

Estimating use of at least (10) barricade equipment pieces during work to control traffic, flow of customers, and prevention of customers and vehicles into work areas.

| 69. Traffic cones (per unit, per day) | 1,520.00 DA | 0.00 | 0.83 | 0.00 | 567.72 | 1,829.32 |
|---|---|---|---|---|---|---|

Use of (40) cone around property over (38) estimated total days for repair work

| 70. Commercial Supervision / Project Management - per hour | 304.00 HR | 0.00 | 70.27 | 0.00 | 9,612.94 | 30,975.02 |
|---|---|---|---|---|---|---|

Overall project management cost over (38) days of project. (8) hour days estimated.

| 71. General Laborer - per hour | 304.00 HR | 0.00 | 36.82 | 0.00 | 5,036.98 | 16,230.26 |
|---|---|---|---|---|---|---|

Allowance for general laborer to control traffic and direct customers during job work.

| 72. Job-site cargo/storage container - 40' long - per month | 2.00 MO | 0.00 | 140.00 | 22.40 | 136.08 | 438.48 |
|---|---|---|---|---|---|---|
| 73. Job-site cargo container - pick up/del. (each way) 16'-40' | 2.00 EA | 0.00 | 150.00 | 0.00 | 135.00 | 435.00 |

Job site storage container for tools and other equipment during work.

| 74. Padlock/disc lock | 1.00 EA | 0.00 | 13.86 | 1.11 | 6.74 | 21.71 |
|---|---|---|---|---|---|---|
| 75. General Laborer - per hour | 608.00 HR | 0.00 | 36.82 | 0.00 | 10,073.95 | 32,460.51 |

Allowance for on site security costs during project to protect equipment, tools, and other items.

 **Iron Ladder Contractors, LLC**

## CONTINUED - Logistical Support Costs

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|

General requirements for operators
  1926.1427 - Operator training, certification, and evaluation.
  (a) The employer must ensure that, prior to operating any equipment covered under subpart CC, the person is operating the equipment during a training period in accordance with paragraph (f) of this section, or the operator is qualified or certified to operate the equipment in accordance with the following:

  Basically,
  General requirements for operators. The employer must ensure that each operator is trained, certified/ licensed, and evaluated in accordance with this section before operating any equipment.

  Personal Protective and Life Saving Equipment (PPE)
  (a) Application. Protective equipment, including personal protective equipment (PPE) for eyes, face, head, and extremities, protective clothing, respiratory devices, and protective shields and barriers, shall be provided, used, and maintained in a sanitary and reliable condition whenever it is necessary by reason of hazards of processes or environment, chemical hazards, radiological hazards, or mechanical irritants encountered in a manner
  capable of causing injury or impairment in the function of any part of the body through absorption, inhalation or physical contact.

  Reference: 29 CFR 1929 OSHA 1926.95 Personal Protective and Life Saving Equipment

  Toilets at construction jobsites.
  (1) Toilets shall be provided for employees according to the following table:

  20 or less employees = 1 (per gender)
  20 or more employees = 1 toilet set and 1 urinal per 40 workers (per gender)
  200 or more employees = 1 toilet set and 1 urinal per 50 workers (per gender)

  Reference: 29 CFR 1929 OSHA 1926.51 (C) (1) Sanitation

| | | | | | | |
|---|---|---|---|---|---|---|
| Totals:  Logistical Support Costs | | | | 132.84 | 27,906.77 | 89,921.80 |

## Labor Minimums Applied

| DESCRIPTION | QTY | REMOVE | REPLACE | TAX | O&P | TOTAL |
|---|---|---|---|---|---|---|
| 76.  Electrical labor minimum | 1.00 EA | 0.00 | 59.03 | 0.00 | 26.57 | 85.60 |
| Totals:  Labor Minimums Applied | | | | 0.00 | 26.57 | 85.60 |
| **Line Item Totals: MANISH_JARIWALA** | | | | **3,867.78** | **194,820.10** | **627,753.27** |



**Iron Ladder Contractors, LLC**

## Summary for Dwelling

| | |
|---|---:|
| Line Item Total | 429,065.39 |
| Material Sales Tax | 3,845.38 |
| Storage Rental Tax | 22.40 |
| Subtotal | 432,933.17 |
| Overhead | 108,233.45 |
| Profit | 86,586.65 |
| **Replacement Cost Value** | **$627,753.27** |
| Less Depreciation | (13,453.04) |
| **Actual Cash Value** | **$614,300.23** |
| Less Deductible | (5,000.00) |
| **Net Claim** | **$609,300.23** |
| Total Recoverable Depreciation | 13,453.04 |
| **Net Claim if Depreciation is Recovered** | **$622,753.27** |

Ben Brown

MANISH_JARIWALA                                    4/7/2021        Page: 10

 **Iron Ladder Contractors, LLC**

## Recap of Taxes, Overhead and Profit

|  | Overhead (25%) | Profit (20%) | Material Sales Tax (8%) | Storage Rental Tax (8%) | Local Food Tax (4%) |
|---|---|---|---|---|---|
| Line Items | 108,233.45 | 86,586.65 | 3,845.38 | 22.40 | 0.00 |
| **Total** | **108,233.45** | **86,586.65** | **3,845.38** | **22.40** | **0.00** |



**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Christine Rozelle, Adj
Wesco / Am Trust
PO Box 6935
Cleveland OH 44101

9590 9402 5302 9154 5474 83

2. Article Number (Transfer from service label)

7016 0910 0000 7084 9330

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X

☐ Agent
☐ Addressee

B. Received by (Printed Name) David Griffiths

C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type

- ☐ Adult Signature
- ☐ Adult Signature Restricted Delivery
- ☐ Certified Mail®
- ☐ Certified Mail Restricted Delivery
- ☐ Collect on Delivery
- ☐ Collect on Delivery Restricted Delivery
- ☐ Insured Mail
- ☐ Insured Mail Restricted Delivery (over $500)
- ☐ Priority Mail Express®
- ☐ Registered Mail™
- ☐ Registered Mail Restricted Delivery
- ☐ Return Receipt for Merchandise
- ☐ Signature Confirmation™
- ☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053 Domestic Return Receipt

3 miles and 10 miles away.  It would also provide any severe weather alerts that were triggered at your location that day, and whether any hail spotters confirmed hail on the ground versus just a radar indication.  This report was not provided to us for your location, and so we cannot confirm any details regarding these four dates that your public adjuster has provided to us.

We also provided this image to engineer Dr. Jonathan Goode to review, and to provide an updated report to us. That updated report is also attached for your review, and confirms our initial position that the hail that caused damage to this building occurred prior to our covered policy period.  Dr. Goode also notes that the "overall impact" scores indicated on this image likely relate to the severity of the impact at the property, and based on the scores, larger hail fell on July 21, 2018.  He does not dispute the possibility that hail may have fallen at this property on May 28, 2020 or August 10, 2020; however, hail of sufficient size to bruise and puncture the shingles was not consistent with the recent hail spatter seen during the inspection.  He further notes that hail spatter from the July 21, 2018 storm would have faded by the time of his inspection.

If your public adjuster wishes to provide us with a full "Hail Impact Report" from his chosen service for your location and the dates in question, so that we can review the size, direction and proximity of the storms, as compared to the findings of the inspection, we will be happy to review that information.  Based upon the information currently available to us, we must disclaim coverage for the hail damages found at your building, as well as for the missing parapet wall coping, as it would appear those damages occurred prior to the applicable policy period.

We refer you to policy form **CP0090 7/88 COMMERCIAL PROPERTY CONDITIONS** which states, in part:

*This Coverage Part is subject to the following conditions, the Common Policy Conditions and applicable Loss Conditions and Additional Conditions in Commercial Property Coverage Forms.*

   ***H. POLICY PERIOD, COVERAGE TERRITORY***
   *Under this Coverage Part:*
      ***1.** We cover loss or damage commencing:*
         ***a.** During the policy period shown in the Declarations; and*
         ***b.** Within the coverage territory.*
      ***2.** The coverage territory is:*
         ***a.** The United States of America (including its territories and possessions);*
         ***b.** Puerto Rico; and*
         ***c.** Canada.*

3241685
October 23, 2020

Page 4

We also cite your **CP0010 10/12 BUILDING AND PERSONAL PROPERTY COVERAGE FORM**, which states in relevant part:

## *A. Coverage*
*We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.*
### *3. Covered Causes Of Loss*
*See applicable Causes Of Loss form as shown in the Declarations.*

We also cite your **CP1030 10/12 CAUSES OF LOSS - SPECIAL FORM** endorsement, which states, in part:

## *A. Covered Causes Of Loss*
*When Special is shown in the Declarations, Covered Causes of Loss means direct physical loss unless the loss is excluded or limited in this policy.*
## *B. Exclusions*
> *2. We will not pay for loss or damage caused by or resulting from any of the following:*
>> *d.(1) Wear and tear;*
>>> *(2) Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;*
>>> *(4) Settling, cracking, shrinking or expansion;*
> *3. We will not pay for loss or damage caused by or resulting from any of the following, 3.a. through 3.c. But if an excluded cause of loss that is listed in 3.a. through 3.c. results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.*
>> *c. Faulty, inadequate or defective:*
>>> *(2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;*
>>> *(3) Materials used in repair, construction, renovation or remodeling; or*
>>> *(4) Maintenance;*
>> *of part or all of any property on or off the described premises.*

As stated above, your policy provides coverage for direct physical damage to your building by a covered cause of loss, which occurs during the applicable policy period shown in the declarations. The policy specifically excludes damages due to wear and tear, deterioration, cracking or faulty, inadequate or defective construction, materials, repairs or maintenance. Based upon the above information, we must disclaim coverage for the hail damages, as well as the missing parapet wall coping, which appear to have occurred prior to your policy period with Wesco Insurance Company.

3241685                                                    Page 5
October 23, 2020

This letter and our actions to date in investigating this matter do not constitute a waiver
of any policy provisions or defenses available to us.  We reserve our rights to amend,
alter or supplement this letter should information become known in the future that would
affect the content of this letter.

If any of the factual information relied upon by us in this letter is inaccurate in any way,
please advise us immediately in writing.

Very truly yours,

Christine A. Rozzelle
General Adjuster
Property Claims
(267)751-4013
Christine.Rozzelle@amtrustgroup.com


cc:     Acrisure, LLC
        United Insurance Agencies
        1019 W. Jackson Street
        Muncie, IN  47305


cc:     Iron Ladder Contractors, LLC
        115 E. Main Street, Suite A1B-8F
        Buford, GA  30518



**AmTrust North America**
An AmTrust Financial Company

October 23, 2020

Anoshvi Hospitality, LLC
DBA: Fairfield Inn & Suites Atlanta Stonecrest
7850 Stonecrest Square
Lithonia, GA  30038

Re:   Insurance Co.:      Wesco Insurance Company
      File No.:           3241685
      Policyholders:      Anoshvi Hospitality, LLC
      Policy No.:         WPP1839065
      Policy Period:      11/1/19-11/1/20
      Date of Loss:       5/28/20
      Location of Loss:   7850 Stonecrest Square, Lithonia, GA  30038

Dear Policyholder:

As your property insurer, we previously received notice of this claim for wind and hail damages and assigned a field adjuster and an engineer to inspect the property and gather the facts surrounding this loss.  The engineer's reports are attached, and confirm that your shingled roof sustained wind damage to 10 shingles.  Wind reports from the claimed date of loss indicate wind gusts up to 58MPH within 5 miles of your location.  We were advised by your public adjuster that the roof is approximately 15 years old, and that the ridge shingles were replaced in 2019.  The remaining roof shingles were found to be pliable, and are therefore repairable using insert replacement techniques.  The inspection photos indicate that this repair method has been previously used to replace sections of shingles in multiple areas of the roof.

Your policy does provide coverage for wind damage, and the field adjuster has completed the attached estimate for wind damage repairs totaling $1,272.49.  The total of the repair estimate does not exceed your $5,000 policy deductible, and therefore, we are unable to issue any payment for these covered damages.  If you obtain a repair estimate for the wind damages which exceeds your deductible, please submit it to us for review.

Regarding the claimed hail damages, the engineer's inspection noted hail spatter marks of 1/4" or less on both ground and roof level surfaces facing north and west, which would generally remain visible for one to two years after a storm.  They also found dents in metal surfaces including the gutters, downspouts, steel roof panels, a/c condenser fins, and vent caps; however, these dents were generally 1/2" or larger, and were not coincident with the hail spatter marks.  Test squares of 100SF were completed on the north, south,

east and west facing shingled roof slopes. There were no hail damaged shingles found on the south or east slopes. The west slope test square showed 1 bruised shingle, and the north slope square showed 2 bruised shingles. The edges of the hail damaged areas were weathered and in some cases, the exposed shingle fibers were tattered, indicating the damage was older. Additionally, they found that the ridge shingles, which are less supported and more vulnerable to hail damage, and which were replaced in 2019, did not show any hail damages. Additional surface anomalies were pointed out and inspected, and were not found to have any indication of impact or indentation that would result from hail damage. These anomalies appear to be due to wear and tear, based on the weathered condition of the exposed asphalt at these locations.

The engineer's report advises that, in order for hailstones to bruise a laminated asphalt shingle, the hail must be frozen solid and 1 1/4" in diameter or larger. A search of weather data for this area through both the Storm Events Database by NOAA and also through the private company CoreLogic found no hailstorms during the timeframe including the beginning of the policy period, November 1, 2019, through the inspection date. The reports do identify a storm with hail of approximately 1 1/2" near the insured location on July 21, 2018, which was outside the applicable policy period. The ridge shingles were replaced in 2019, after the date of this storm, and even though the ridge shingles are more susceptible to hail than shingles on the slopes would be, they did not display any hail damage at this inspection. The hail spatter found on the metal surfaces was 1/4" or less, indicating that a more recent storm may have occurred, but did not have hail of sufficient size to damage the roof shingles. Additionally, the hail spatter marks did not match the size or location of the dents found in the metal roofing and appurtenances. This would appear to confirm that the hail damage to the building occurred during the storm on July 21, 2018, and therefore, we advised you previously that the hail damage should be reported to the appropriate insurance carrier for that date of loss. There was also one piece of parapet wall coping that was missing at the south end of the roof; however, historical images indicated this coping was missing at least as far back as January 2018, which is also outside the policy period, and so we cannot address this damage either.

Your public adjuster recently submitted to us an image from Hail Recon, which appears to be an app by a company called Interactive Hail Maps, and can be used to locate areas of potential hail damage. The image shows a view of your location, with a pinpoint marking your building on the map. It also lists four dates on the left side of the page: July 19, 2016, July 21, 2018, May 28, 2020 and August 10, 2020, with an "overall impact" score for each date, though it does not indicate on what the "overall impact" scale is based. It also does not list the size of hailstones that fell during any of the specified storms, or the distance of that storm from your location. A review of this company's website indicates that the user should be able to generate a "Hail Impact Report" for a specific address and date. This report would show the date, time, duration and direction of a hail storm, as well as listing the size of hail that fell at your location, as well as 1 mile,

# COMMERCIAL POLICY



## AmTrust North America
### An AmTrust Financial Company

877-528-7878

## 800 SUPERIOR AVENUE EAST, 21ST FLOOR
## CLEVELAND, OH 44114

## Wesco Insurance Company

INSURANCE IS PROVIDED BY
THE COMPANY DESIGNATED ON THE
DECLARATIONS PAGE
(A Stock Insurance Company)

THIS POLICY CONSISTS OF:
-- DECLARATIONS
-- COMMON POLICY CONDITIONS
-- ONE OR MORE COVERAGE PARTS, and
-- APPLICABLE FORMS AND ENDORSEMENTS

This page intentionally left blank

## Read Your Policy Carefully

This policy is a legal contract between you and us. The information on this page is not the insurance contract and only the actual policy provisions will control. The policy sets forth in detail the rights and obligations of both you and us. **It is therefore important that you read your policy carefully.**

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of the policy.

This policy is signed by the President and Secretary of the insurance company and, if required by State law, this policy shall not be valid unless countersigned on the Declaration page by its authorized representative.

President                              Secretary

ILSIGDEC-A 0414

This page intentionally left blank



Wesco Insurance Company
800 Superior Avenue East, 21st Floor
Cleveland, OH 44114

## COMMERCIAL COMMON POLICY DECLARATIONS SUMMARY PAGE

| **Policy Number** WPP1839065 00 | **Policy Period** | **From:** 11/1/2019   **To:** 11/1/2020 |
|---|---|---|
| | | 12:01 A.M. Standard Time at the Name Insured's Address |

| **Transaction** |
|---|
| New Business |

| **Named Insured and Address** | **Producer:** 100530 |
|---|---|
| Anoshvi Hospitality, LLC | Acrisure, LLC |
| DBA: Fairfield Inn & Suites Atlanta Stonecrest | United Insurance Agencies |
| 721 Willow Glen Way | 1019 W. Jackson Street |
| Suwanee GA 30024 | Muncie IN 47305 |
| | **Telephone: (765) 284-4443** |

| **Business Description** | **Type of Business** | **Auditable** ☒ | **Non-Auditable** ☐ |
|---|---|---|---|
| Hotel | Limited Liability Company | | |
| | | **Audit Period** | Annual |

In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy. This policy consists of the following coverage parts for which a premium is indicated. This premium may be subject to adjustment.

| **COVERAGE PART DESCRIPTION** | **PREMIUM** |
|---|---|
| Commercial Fire | $16,064.00 |
| General Liability | $10,657.00 |

| | |
|---|---|
| **Policy Premium** | $26,721.00 |
| **Deposit Premium (if applicable)** | $26,721.00 |
| **Taxes and Surcharges** | $0.00 |
| **Total Deposit Premium** | $26,721.00 |
| (Includes Taxes, Surcharges, and applicable Terrorism Premium) | |

| **FORMS AND ENDORSEMENTS*** |
|---|
| See Forms and Endorsements Schedule |

***Entry optional if above in common policy declarations schedule**

THESE DECLARATIONS TOGETHER WITH THE COVERAGE DECLARATIONS, COMMON POLICY CONDITIONS, COVERAGE FORM(S) AND FORM(S) AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.

| 11/5/2019 | *Jeffrey Les* |
|---|---|
| **Date** | **Signature of Authorized Representative** |

This page intentionally left blank



Wesco Insurance Company
800 Superior Avenue East, 21st Floor
Cleveland, OH 44114

**Policy Number:**
WPP1839065 00
**Named Insured:**
Anoshvi Hospitality, LLC

## COMMERCIAL COMMON POLICY DECLARATIONS
## LOCATION SUMMARY

**Premises # 1**
7850 Stonecrest Square
Lithonia GA 30038

This page intentionally left blank



Wesco Insurance Company
800 Superior Avenue East, 21st Floor
Cleveland, OH 44114

**Policy Number:**
WPP1839065 00
**Named Insured:**
Anoshvi Hospitality, LLC

## COMMERCIAL COMMON POLICY DECLARATIONS
## SUB-LOCATION ADDRESS SCHEDULE

**Premises # 1 Building # 1**
7850 Stonecrest Square Lithonia GA 30038
Hotel

This page intentionally left blank



Wesco Insurance Company
800 Superior Avenue East, 21st Floor
Cleveland, OH 44114

## COMMERCIAL GENERAL LIABILITY COVERAGE DECLARATIONS

| Policy Number WPP1839065 00 | Policy Period | From: 11/1/2019   To: 11/1/2020 |
|---|---|---|
| | | 12:01 A.M. Standard Time at the Name Insured's Address |

**Transaction**
New Business

| Named Insured and Address | Producer: 100530 |
|---|---|
| Anoshvi Hospitality, LLC | Acrisure, LLC |
| DBA: Fairfield Inn & Suites Atlanta Stonecrest | United Insurance Agencies |
| 721 Willow Glen Way | 1019 W. Jackson Street |
| Suwanee GA 30024 | Muncie IN 47305 |
| | Telephone: (765) 284-4443 |

| Business Description | Type of Business | Audit Period |
|---|---|---|
| Hotel | Limited Liability Company | Annual |

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

**LIMITS OF INSURANCE**

| | |
|---|---:|
| General Aggregate Limit (Other than Products-Completed Operations) | $2,000,000 |
| Products - Completed Operations Aggregate Limit | $2,000,000 |
| Each Occurrence Limit | $1,000,000 |
| Personal and Advertising Injury Limit | $1,000,000 |
| Medical Expense Limit, any one person | $5,000 |
| Damage to Premises Rented to You Limit, any one premises | $100,000 |

**AMENDED LIMITS OF LIABILITY**

Refer to attached schedule, if any.

**LOCATIONS OF ALL PREMISES YOU OWN, RENT OR OCCUPY**

Refer to attached schedule.

**CLASSIFICATIONS**

Refer to attached schedule, if any.

| TOTAL PREMIUM FOR THIS COVERAGE PART | $10,657.00 |
|---|---:|

**FORMS AND ENDORSEMENTS***

See Forms and Endorsements Schedule

*Entry optional if shown in common policy declarations.

THESE DECLARATIONS TOGETHER WITH THE COMMON POLICY DECLARATIONS, COMMON POLICY CONDITIONS, COVERAGE FORM(S) AND FORM(S) AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.

11/5/2019
**Date**

**Signature of Authorized Representative**

GLDEC 0414

Page 4 of 13

This page intentionally left blank



Wesco Insurance Company
800 Superior Avenue East, 21st Floor
Cleveland, OH 44114

**Policy Number:**
WPP1839065 00
**Named Insured:**
Anoshvi Hospitality, LLC

## COMMERCIAL GENERAL LIABILITY COVERAGE DECLARATIONS
### EXTENSION OF DECLARATIONS

| LOCATION OF PREMISES |
|---|

Location of All Premises You Own, Rent or Occupy:

1
7850 Stonecrest Square
Lithonia GA 30038

| PREMIUM |
|---|

| | | | | | Rate | | Advanced Premium | |
|---|---|---|---|---|---|---|---|---|
| Location | Classification | Code No. | Exposure | Basis | Premises Ops. | Prod/Comp Ops. | Premises Ops. | Prod/Comp Ops. |
| 1 | | 45191 | 2,100,000 | s | 4.761 | 0.000 | $9,998.00 | $0.00 |
| | Hotels and Motels - with pools or beaches - four stories or more | | | | | | | |
| | | | 30 Employees | | | | $459.00 | |
| | Hired Auto and Non-Owned Auto Liability | | | | | | | |
| | | | | | | | | $200.00 |
| | Expansion Endorsement | | | | | | | |

**Extension of Declarations – Total Advance Annual Premium  $10,657.00**

This page intentionally left blank



Wesco Insurance Company
800 Superior Avenue East, 21st Floor
Cleveland, OH 44114

## COMMERCIAL PROPERTY COVERAGE DECLARATIONS

| **Policy Number** WPP1839065 00 | **Policy Period** | **From:** 11/1/2019   **To:** 11/1/2020 |
|---|---|---|
| | | 12:01 A.M. Standard Time at the Name Insured's Address |

| **Transaction** |
|---|
| New Business |

| **Named Insured and Address** | **Producer:** 100530 |
|---|---|
| Anoshvi Hospitality, LLC | Acrisure, LLC |
| DBA: Fairfield Inn & Suites Atlanta Stonecrest | United Insurance Agencies |
| 721 Willow Glen Way | 1019 W. Jackson Street |
| Suwanee GA 30024 | Muncie IN 47305 |
| | **Telephone:** (765) 284-4443 |

| **Business Description** | **Type of Business** | **Audit Period** |
|---|---|---|
| Hotel | Limited Liability Company | Annual |

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

**DESCRIPTION OF PREMISES**
Refer to attached schedule.

**COVERAGES PROVIDED**
Refer to attached schedule, if any.

**OPTIONAL COVERAGES**
Refer to attached schedule, if any.

**MORTGAGEES AND ADDITIONAL INTERESTS**
Refer to attached schedule, if any.

**TOTAL PREMIUM FOR THIS COVERAGE PART**     $16,064.00

| **FORMS AND ENDORSEMENTS*** |
|---|
| See forms and Endorsements Schedule |

*Entry optional if shown in common policy declarations.

THESE DECLARATIONS TOGETHER WITH THE COMMON POLICY DECLARATIONS, COMMON POLICY CONDITIONS, COVERAGE FORM(S) AND FORM(S) AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.

_____11/5/2019_____
Date

_____
**Signature of Authorized Representative**

This page intentionally left blank



Wesco Insurance Company
800 Superior Avenue East, 21st Floor
Cleveland, OH 44114

**Policy Number:**
WPP1839065 00
**Named Insured:**
Anoshvi Hospitality, LLC

## COMMERCIAL PROPERTY
## DESCRIPTION OF PREMISES

| Loc. No. | Bldg. No. | Occupancy | Construction | Class | Prot. | Terr. | EQ Class. | EQ Terr. |
|---|---|---|---|---|---|---|---|---|
| 1 | 1 | Hotels and Motels -- without restaurant -- Over 30 units | Frame (Code 1) | 0747 | 2 | 236 | | |

This page intentionally left blank



Wesco Insurance Company
800 Superior Avenue East, 21st Floor
Cleveland, OH 44114

**Policy Number:**
WPP1839065 00
**Named Insured:**
Anoshvi Hospitality, LLC

## COMMERCIAL PROPERTY
## DESCRIPTION OF COVERAGES PROVIDED

| Loc. No. | Bldg. No. | Coverage | Limit of Insurance | Blanket Coverage | Covered Causes of Loss | Coinsurance* | Deductible |
|---|---|---|---|---|---|---|---|
| 1 | 1 | Building | $6,500,000 | | Special | 80% | $5,000 |
| 1 | 1 | Personal Property Of The Insured | $750,000 | | Special | 100% | $5,000 |
| 1 | 1 | Business Income including Rental Value with Extra Expense – ALS 24M | ALS for 24 Months | | Special | N/A | |

*IF EXTRA EXPENSE COVERAGE, LIMITS ON LOSS PAYMENT

This page intentionally left blank



Wesco Insurance Company
800 Superior Avenue East, 21st Floor
Cleveland, OH 44114

**Policy Number:**
WPP1839065 00
**Named Insured:**
Anoshvi Hospitality, LLC

## COMMERCIAL PROPERTY
## DESCRIPTION OF OPTIONAL COVERAGES PROVIDED

| Loc. No. | Bldg. No. | Coverage | Effective Date | Expiration Date | Agreed Value | Valuation* Bldg. | Valuation* Pers. Prop. | Valuation* Incl "Stock" | Inflation Guard Bldg. | Inflation Guard Pers. Prop. | Indemnity Monthly Limit | Indemnity Extended Period | Indemnity Maximum Period |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 1 | Building | | | | RC | | | | | | | |
| 1 | 1 | Personal Property Of The Insured | | | | | RC | X | | | | | |
| 1 | 1 | Business Income including Rental Value with Extra Expense – ALS 24M | | | | | | | | | | | |

* RC - Replacement Cost
FRC - Functional Replacement Cost
ACV - Actual Cash Value

Issued Date: 11/5/2019
CPDECD 0414

This page intentionally left blank



Wesco Insurance Company
800 Superior Avenue East, 21st Floor
Cleveland, OH 44114

**Policy Number:**
WPP1839065 00
**Named Insured:**
Anoshvi Hospitality, LLC

## COMMERCIAL PROPERTY
## SUPPLEMENTAL DECLARATIONS

LOCATION SCHEDULE PREMIUM CHARGES:

| Loc No. | Bldg No. | Coverage | Covered Causes of Loss | Premium |
|---------|----------|----------|------------------------|---------|
| 1 | 1 | Building | Special Including Theft | $12,740.00 |
| 1 | 1 | Personal Property Of The Insured | Special Including Theft | $1,749.00 |
| 1 | 1 | Business Income including Rental Value with Extra Expense – ALS 24M | Special Including Theft | $377.00 |
| 1 | | Equipment Breakdown | | $543.00 |
| | | | **Location 1 Total** | $15,409.00 |

Total for All Locations: $15,409.00

OTHER PROPERTY COVERAGE PREMIUM CHARGES:

| Coverage | Premium |
|----------|---------|
| Expanded Property Expanded Property | $150.00 |
| Expanded Crime Forgery Or Alteration | $10.00 |
| Expanded Crime Inside The Premises - Theft Of Money And Securities | $5.00 |
| Expanded Crime Employee Theft | $30.00 |
| Expanded Crime Outside The Premises | $5.00 |
| Identity Recovery | $10.00 |
| Equipment Breakdown Policy Charge | $20.00 |
| Motel/Hotel Expansion | $350.00 |
| Terrorism | $75.00 |

**Total Other Property:** $655.00

**Total Property Premium Charges:$16,064.00**
(Excludes Taxes and Surcharges)

This page intentionally left blank



Wesco Insurance Company
800 Superior Avenue East, 21st Floor
Cleveland, OH 44114

**Policy Number:**
WPP1839065 00
**Named Insured:**
Anoshvi Hospitality, LLC

## COMMERCIAL COMMON POLICY DECLARATIONS
## POLICY INTEREST SCHEDULE

PRIMARY AND NONCONTRIBUTORY –OTHER
INSURANCE CONDITION
CG20010413

WAIVER OF TRANSFER OF RIGHTS OF RECOVERY
AGAINST OTHERS TO US
CG24040509
Marriott International, Inc

CERTIFICATE HOLDER - NOTICE OF CANCELLATION
IL9900531117

KANSAS CITY, MO 64114-8528

Issued Date: 11/5/2019

ILPISCH 0414

This page intentionally left blank



Wesco Insurance Company
800 Superior Avenue East, 21st Floor
Cleveland, OH 44114

**Policy Number:**
WPP1839065 00
**Named Insured:**
Anoshvi Hospitality, LLC

## COMMERCIAL COMMON POLICY DECLARATIONS
## FORMS AND ENDORSEMENTS SCHEDULE

| Coverage | Form Number | Edition Date | Title |
|---|---|---|---|
| CF | 311115 | 01/05 | MOTEL - HOTEL SUPPLEMENT |
| CF | 311216 | 04/17 | COMMERCIAL PROPERTY EXPANDED COVERAGE |
| CF | 311220GA | 07/10 | EQUIPMENT BREAKDOWN COVERAGE GEORGIA |
| CG | 330729 | 10/13 | COMMERCIAL GENERAL LIABILITY COVERAGE EXPANSION ENDORSEMENT (NON-CONTRACTORS) |
| CG | CG0001 | 04/13 | COMMERCIAL GENERAL LIABILITY COVERAGE FORM |
| CG | CG2001 | 04/13 | PRIMARY AND NONCONTRIBUTORY –OTHER INSURANCE CONDITION |
| CG | CG2008 | 04/13 | ADDITIONAL INSURED - USERS OF GOLFMOBILES |
| CG | CG2107 | 05/14 | EXCLUSION – ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY |
| CG | CG2109 | 06/15 | EXCLUSION - UNMANNED AIRCRAFT |
| CG | CG2144 | 04/17 | LIMITATION OF COVERAGE TO DESIGNATED PREMISES, PROJECT OR OPERATION |
| CG | CG2147 | 12/07 | EMPLOYMENT-RELATED PRACTICES EXCLUSION |
| CG | CG2149 | 09/99 | TOTAL POLLUTION EXCLUSION ENDORSEMENT |
| CG | CG2173 | 01/15 | EXCLUSION OF CERTIFIED ACTS OF TERRORISM |
| CG | CG2245 | 04/13 | EXCLUSION - SPECIFIED THERAPEUTIC OR COSMETIC SERVICES |
| CG | CG2404 | 05/09 | WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US |
| CG | CG2412 | 11/85 | BOATS |
| CG | CG2416 | 12/07 | CANOES OR ROWBOATS |
| CF | CP0010 | 10/12 | BUILDING AND PERSONAL PROPERTY COVERAGE |
| CF | CP0030 | 10/12 | BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM |
| CF | CP0090 | 07/88 | COMMERCIAL PROPERTY CONDITIONS |
| CF | CP0131 | 03/13 | GEORGIA CHANGES |
| CF | CP0140 | 07/06 | EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA |
| CF | CP0411 | 10/12 | PROTECTIVE SAFEGUARDS |
| CF | CP1030 | 10/12 | CAUSES OF LOSS-SPECIAL FORM |
| CF | CP990096 | 05/18 | BUSINESS INCOME COVERAGE PROVIDED ON AN ACTUAL LOSS SUSTAINED BASIS (ALS-24 MONTHS) |
| CR | CR0021 | 11/15 | COMMERCIAL CRIME COVERAGE FORM (LOSS SUSTAINED FORM) |
| CG | GL990027 | 02/08 | HIRED AUTO AND NON OWNED AUTO LIABILITY |
| IL | IL0017 | 11/98 | COMMON POLICY CONDITIONS |
| IL | IL0021 | 09/08 | NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT (BROAD FORM) |
| IL | IL0262 | 02/15 | GEORGIA CHANGES - CANCELLATION AND NONRENEWAL |

Issued Date: 11/5/2019

ILFORMSCH 0414

This page intentionally left blank



Wesco Insurance Company
800 Superior Avenue East, 21st Floor
Cleveland, OH 44114

**Policy Number:**
WPP1839065 00
**Named Insured:**
Anoshvi Hospitality, LLC

## COMMERCIAL COMMON POLICY DECLARATIONS
## FORMS AND ENDORSEMENTS SCHEDULE

| Coverage | Form Number | Edition Date | Title |
|---|---|---|---|
| IL | IL0935 | 07/02 | EXCLUSION OF CERTAIN COMPUTER-RELATED LOSSES |
| IL | IL0953 | 01/15 | EXCLUSION OF CERTIFIED ACTS OF TERRORISM |
| IL | IL0985 | 01/15 | DISCLOSURE PURSUANT TO TERRORISM RISK |
| IL | IL990034 | 09/14 | IDENTITY RECOVERY COVERAGE |
| IL | IL990044 | 01/17 | ASBESTOS EXCLUSION |
| IL | IL990048 | 01/17 | EXCLUSION - LEAD |
| CG | IL990053 | 11/17 | CERTIFICATE HOLDER - NOTICE OF CANCELLATION |

This page intentionally left blank

IL P 001 01 04

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

© ISO Properties, Inc., 2004

This page intentionally left blank

AGENCY CUSTOMER ID: _____

**ACORD**®

# INSURANCE SUPPLEMENT

| AGENCY | CARRIER | NAIC CODE |
|---|---|---|
| Acrisure, LLC | Wesco Insurance Company | 25011 |
| **POLICY NUMBER** | **APPLICANT / NAMED INSURED** | |
| WPP1839085 00 | Anoshvi Hospitality, LLC | |

## POLICYHOLDER DISCLOSURE
## NOTICE OF TERRORISM INSURANCE COVERAGE

You are hereby notified that under the Terrorism Risk Insurance Act, as amended, you have a right to purchase insurance coverage for losses resulting from acts of terrorism. As defined in Section 102(1) of the Act: The term "act of terrorism" means any act or acts that are certified by the Secretary of the Treasury—in consultation with the Secretary of Homeland Security, and the Attorney General of the United States—to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

YOU SHOULD KNOW THAT WHERE COVERAGE IS PROVIDED BY THIS POLICY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM, SUCH LOSSES MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT UNDER A FORMULA ESTABLISHED BY FEDERAL LAW. HOWEVER, YOUR POLICY MAY CONTAIN OTHER EXCLUSIONS WHICH MIGHT AFFECT YOUR COVERAGE, SUCH AS AN EXCLUSION FOR NUCLEAR EVENTS. UNDER THE FORMULA, THE UNITED STATES GOVERNMENT GENERALLY REIMBURSES 85% THROUGH 2015; 84% BEGINNING ON JANUARY 1, 2016; 83% BEGINNING ON JANUARY 1, 2017; 82% BEGINNING ON JANUARY 1, 2018; 81% BEGINNING ON JANUARY 1, 2019 and 80% BEGINNING ON JANUARY 1, 2020, OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURANCE COMPANY PROVIDING THE COVERAGE. THE PREMIUM CHARGED FOR THIS COVERAGE IS PROVIDED BELOW AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS THAT MAY BE COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT.

YOU SHOULD ALSO KNOW THAT THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A $100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURERS' LIABILITY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS $100 BILLION. IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED $100 BILLION, YOUR COVERAGE MAY BE REDUCED.

**Acceptance or Rejection of Terrorism Insurance Coverage**

☐ I hereby elect to purchase terrorism coverage for a prospective premium of $ 457 _____

☒ I hereby decline to purchase terrorism coverage for certified acts of terrorism. I understand that I will have no coverage for losses resulting from certified acts of terrorism.

| Policyholder / Applicant's Signature | Print Name | Date |
|---|---|---|
| | | |
| Policyholder / Applicant's Signature | Print Name | Date |
| | | |
| Policyholder / Applicant's Signature | Print Name | Date |
| | | Effective Date |

**Includes copyrighted material of the National Association of Insurance Commissioners, with its permission.**

© 2003-2015 ACORD CORPORATION. All rights reserved.

The ACORD name and logo are registered marks of ACORD

This page intentionally left blank

AGENCY CUSTOMER ID: _____

# ACORD®  INSURANCE SUPPLEMENT - STANDARD FIRE POLICY ONLY

| AGENCY | CARRIER | NAIC CODE |
|---|---|---|
| Acrisure, LLC | Wesco Insurance Company | 25011 |
| **POLICY NUMBER** | **APPLICANT / NAMED INSURED** | |
| WPP1839065 00 | Anoshvi Hospitality, LLC | |

## POLICYHOLDER DISCLOSURE
## NOTICE OF TERRORISM INSURANCE COVERAGE

You are hereby notified that under the Terrorism Risk Insurance Act, as amended, you have a right to purchase insurance coverage for losses resulting from acts of terrorism. As defined in Section 102(1) of the Act: The term "act of terrorism" means any act or acts that are certified by the Secretary of the Treasury—in consultation with the Secretary of Homeland Security, and the Attorney General of the United States—to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

YOU SHOULD KNOW THAT WHERE COVERAGE IS PROVIDED BY THIS POLICY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM, SUCH LOSSES MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT UNDER A FORMULA ESTABLISHED BY FEDERAL LAW. HOWEVER, YOUR POLICY MAY CONTAIN OTHER EXCLUSIONS WHICH MIGHT AFFECT YOUR COVERAGE, SUCH AS AN EXCLUSION FOR NUCLEAR EVENTS. UNDER THE FORMULA, THE UNITED STATES GOVERNMENT GENERALLY REIMBURSES 85% THROUGH 2015; 84% BEGINNING ON JANUARY 1, 2016; 83% BEGINNING ON JANUARY 1, 2017; 82% BEGINNING ON JANUARY 1, 2018; 81% BEGINNING ON JANUARY 1, 2019 and 80% BEGINNING ON JANUARY 1, 2020, OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURANCE COMPANY PROVIDING THE COVERAGE. THE PREMIUM CHARGED FOR THIS COVERAGE IS PROVIDED BELOW AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS THAT MAY BE COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT.

YOU SHOULD ALSO KNOW THAT THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A $100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURERS' LIABILITY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS $100 BILLION. IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED $100 BILLION, YOUR COVERAGE MAY BE REDUCED.

In this state, a terrorism exclusion makes an exception for (and thereby provides coverage for) fire losses resulting from an act of terrorism. Therefore, if you reject this offer of terrorism coverage, that rejection does not apply to fire losses resulting from an act of terrorism. Coverage for such fire losses will be provided in your policy. The additional premium just for such fire coverage is stated below. If you reject the offer described above for terrorism coverage, this premium is due.

### Acceptance or Rejection of Terrorism Insurance Coverage

☐ I hereby elect to purchase terrorism coverage for a prospective premium of $ 457.00 _____

☒ I hereby decline to purchase terrorism coverage for certified acts of terrorism. I understand that an **exclusion** of certain terrorism losses will be made part of the policy.

If you decline this offer, the premium for terrorism (fire only) coverage is $ 75.00 _____

| _____ | _____ | _____ |
|---|---|---|
| **Policyholder / Applicant's Signature** | **Print Name** | **Date** |
| _____ | _____ | _____ |
| **Policyholder / Applicant's Signature** | **Print Name** | **Date** |
| _____ | _____ | _____ |
| **Policyholder / Applicant's Signature** | **Print Name** | **Date** |
| | | _____ |
| | | **Effective Date** |

**Includes copyrighted material of the National Association of Insurance Commissioners, with its permission.**

This page intentionally left blank

# POLICYHOLDER DISCLOSURE NOTICE

# LEAD EXCLUSION

This notice does NOT form a part of your insurance contract.  No coverage is provided by this summary nor can it be construed to replace any provisions of your policy. This notice is designed to alert you to coverage changes when the following exclusionary endorsement is attached to your policy. You should read your policy and review your Declarations Page for complete information on the coverages you are provided. If there is any conflict between the policy (including its endorsements) and this summary, **THE PROVISIONS OF THE POLICY SHALL PREVAIL.**

Your policy is being issued with the following endorsement:

　　IL990048 Exclusion – Lead

## SUMMARY

**Exclusion – Lead**

This endorsement excludes liability coverage for "Bodily Injury", "Property Damage", "Personal and Advertising Injury" or "Medical Payments" because of liability, alleged liability or "occurrence" resulting from, caused by, arising out of or in any way connected with the existence, removal, testing, or exposure to lead.  Coverage for investigation or defense is excluded under this endorsement.

Please refer to the "Exclusion – Lead" endorsement for further details.

This page intentionally left blank

# NOTICE TO POLICYHOLDERS

# ASBESTOS EXCLUSION

This notice does NOT form a part of your insurance contract.  No coverage is provided by this summary nor can it be construed to replace any provisions of your policy. This notice is designed to alert you to coverage changes when the following exclusionary endorsement is attached to your policy. You should read your policy and review your Declarations Page for complete information on the coverages you are provided. If there is any conflict between the policy (including its endorsements) and this summary, **THE PROVISIONS OF THE POLICY SHALL PREVAIL.**

Your policy is being issued with the following endorsement:

    IL990044 Exclusion – Asbestos

<div align="center">

**SUMMARY**

</div>

**Exclusion – Asbestos**

This endorsement excludes liability coverage for "Bodily Injury", "Property Damage", "Personal and Advertising Injury" or "Medical Payments" because of liability arising out of, resulting from, caused by or contributed to by asbestos or exposure to asbestos or its use. Also excluded are damages, loss, cost or expense arising out of assessing the presence, absence or amount or effects of asbestos; identifying, sampling, testing, detecting, cleaning up, monitoring, removing, containing, treating, detoxifying, abating, disposing or mitigating asbestos, or supervision, instructions, recommendations, warnings or advice regarding any of the above which had been given or should have been given.  Coverage for investigation or defense is also excluded under this endorsement.

Please refer to the "Exclusion – Asbestos" endorsement for further details.

This page intentionally left blank



## KEEP THIS NOTICE WITH YOUR INSURANCE PAPERS

In the event you need to contact someone about this insurance for any reason, please contact your agent.  If no agent was involved in the sale of this insurance, or if you have additional questions, you may contact AmTrust North America at the address and/or telephone number below.

---

**AMTRUST POLICYHOLDER SERVICE OFFICE**
AmTrust North America
800 Superior Ave • 21st Floor • Cleveland, OH, 44114
Telephone: 877.528.7878 • Fax: 800.487.9654

Written correspondence is preferable so that a record of your inquiry is maintained.  When contacting your agent or insurance company please have your policy number available.

---

## AmTrust Claims Service

AmTrust's claims staff has an average of 20+ years of experience and provides effective management of claims. Some of the benefits for our customers include a toll-free 24/7 centralized call center staffed by special claims operators; adjusters specialized by claim types, field adjusters to provide direct assistance at loss locations and a highly qualified panel of defense attorneys.

### Information Required for All Claims Reported

- Name of the insured and policy number
- Date, time and place of accident
- Description of accident or incident
- Name, phone and/or email of person making the report

Refer to our Website for additional information on reporting a claim
Website: https://amtrustgroup.com/small-business-insurance/claims/claim-center/report-claim

---

| **Workers' Compensation (All States)** | **Other than Workers' Compensation (All States)** |
|---|---|
| First Report of Claim: | First Report of Claim: |
| Phone: 866.272.9267 | Phone: 866.272.9267 |
| Fax: 775.908.3724 or 877.669.9140 | Fax: 877.207.3961 |
| Email: amtrustclaims@grm-inc.com | Email: anaclaimsreporting@amtrustgroup.com |
| Claims Status: 888.239.3909 | Claims Status: 888.239.3909 |

Agents: Send ACORD Notice of Loss to www.anaclaimsreporting@amtrustgroup.com

---

**Employment Practices Liability, Cyber Liability and Data Breach Response Claims for Small Business (All States)**

| | |
|---|---|
| Paul Poppish, VP Claims | Phone: 312.803.4630 |
| Amtrust North America | 888.239.3909 ext 394630 |
| 233 N. Michigan Avenue, Suite 1200 | Fax: 312.781.0423 |
| Chicago, IL 60601 | Paul.Poppish@amtrustgroup.com |

---

This page intentionally left blank

# IDENTITY RECOVERY COVERAGE
# NOTICE TO POLICYHOLDERS

No coverage is provided by this summary nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations Page for complete information on the coverages you are provided. If there is any conflict between the policy and this summary, **THE PROVISIONS OF THE POLICY SHALL PREVAIL**.

Identity Recovery Coverage is included in your policy for the additional annual charge of $10.00. Following are the highlights provided by this coverage.

## SUMMARY OF THE COVERAGE

**Identity Recovery Coverage**

We will provide the Case Management Service and Expense Reimbursement Coverage if an identity theft involving the personal identity of an individual person who is the sole proprietor of the insured business and their spouse or domestic partner, current partners of a partnership, or all individuals having an ownership position of 20% or more of a corporation or other organization.

**Case Management Service**

Case Management Service provides an Identity Recovery Case Manager to assist with communications for re-establishing the integrity of the personal identity of the insured. This includes, written and telephone communications with law enforcement authorities, governmental agencies, credit agencies and individual creditors and businesses.

**Expense Reimbursement**

Expense Reimbursement provides reimbursement of necessary and reasonable identity recovery expenses incurred as a direct result of the identity theft.

We appreciate the opportunity to provide this coverage to you and are pleased you have chosen us to serve you. Please contact your agent with any questions you may have regarding your policy.

This page intentionally left blank



**AmTrust North America**
An AmTrust Financial Company

11/5/2019

Dear Policyholder,

In an effort to provide AmTrust customers with a variety of billing options, the below fee structure will be applied to your new policy.

This fee structure helps customers to meet payment due dates, ensures that valid and properly funded payments are submitted, and provides an incentive for paid-in-full options.

**Our fee structure is as follows:**

| Fee Title | Fee Amount | Description |
|---|---|---|
| Returned Payment Fee | $25 | A returned payment fee applied to any returned payment. |
| Late Fee | $20 | Late fee applied if payment not received on or before payment due date. |
| Installment Fee | $15 | A "paper" billing fee that is assessed for each mailed installment invoice. Excludes down payment and annual payment plans. Fee is billed at the account level. |
| Reinstatement Fee | $50 | Fee applied upon reinstatement of a non-payment cancellation. |
| EFT Fee | $3 | An "electronic" billing fee that is assessed for each ACH Direct Debit transaction. Fee is billed at the account level. |

*Fee amount may vary by state and program of business

For policyholders who choose to pay their annual premium on installments, we plan to implement an installment fee, which will be displayed on your renewal invoice.

Thank you for your attention. If you have any questions, feel free to contact our Customer Service Department at 877.528.7878.

We value you as a policyholder and appreciate the opportunity to serve you.

Sincerely,

AmTrust North America
Customer Service Department

This page intentionally left blank

**POLICY NUMBER:** WPP1839065 00

<div align="right">

**COMMERCIAL PROPERTY**
**31-1115 01 05**

</div>

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY

# MOTEL - HOTEL SUPPLEMENT

**Applicable only to Motel - Hotel risks whose business is principally the providing of temporary lodging accommodations.**

In consideration of the additional premium charged, this endorsement modifies insurance provided under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM – CP 0010

The following items are added to Paragraph **4. Additional Coverages** under Section **A. Coverage:**

4.  **Additional Coverages**

   g.  **Alternative Key Systems:**

   **(1)** We will pay for loss or damage to "**alternative key systems**". These include card-programmers, card-readers, computers, related alarms, transceivers, power supplies and any other electronic or mechanical apparatus needed to make the card keys work. The loss must be caused by a covered cause of loss and take place at a covered location. The most we will pay for loss or damage to "**alternative key systems**" is $100,000 in any one loss.

   **(2)** We will pay for consequential loss to keys and locks if a master key or grand master key is lost or damaged resulting from a covered cause of loss. We will pay for the actual cost to replace keys, adjustment of locks to accept new keys or, if required, new locks, including the cost of their installation. The most we will pay for loss or damage under this coverage is $5,000 in any one loss. The most we will pay for all claims during the policy period is $15,000.

   h.  **Hotel Guest Inconvenience Expense**

   **(1)** We will pay for actual "**Hotel Guest Inconvenience Expense**" incurred by persons for whom prearranged hotel accommodations at the described premises cannot be honored due to direct physical loss or damage to Covered Property at the described premises caused by or resulting from a Covered Cause of Loss.

   **(2)** We will pay for "**Hotel Guest Inconvenience Expense**" incurred for the time:

   **(a)** Beginning on the date the person's prearranged hotel accommodations at the described premises are:

   **(i)** scheduled to begin; or

   **(ii)** interrupted;

   **(iii)** whichever is later; and

   **(b)** Ending on the earliest of the following dates:

   **(i)** The date the person's prearranged hotel accommodations at the described premises are scheduled to end;

    **(ii)**    The date the damaged property at the described premises should be repaired, rebuilt or replaced with reasonable speed or similar quality;

    **(iii)**    Fourteen (14) days after the date determined in **(a)** above.

**(3)** The most we will pay for all "**Hotel Guest Inconvenience Expense**" in any one occurrence under this Additional Coverage is $10,000. We will not pay more than $1,000 in any one occurrence for the "**Hotel Guest Inconvenience Expense**" incurred by any one person.

**(4)** We will not pay for the "**Hotel Guest Inconvenience Expense**" for any one occurrence under this Additional Coverage until the amount of "**Hotel Guest Inconvenience Expense**" exceeds $500. We will then pay the amount of "**Hotel Guest Inconvenience Expense**" incurred in excess of $500 up to the Limit of Insurance for this Additional Coverage.

The Deductible Clause does not apply to "**Hotel Guest Inconvenience Expenses**".

**i.**    **Expediting Expense**

**(1)** We will pay for your reasonable and necessary expense of temporary repairs to your business property or the extra costs of expediting the permanent repair or replacement of your property, whichever is less resulting from a covered cause of loss. These expenses include overtime wages and extra costs for rapid means of transportation. We will not pay for temporary rental of property or temporary replacement of damaged property.

**(2)** The most we will pay for loss or damage under this extension is $25,000.

**j.**    **Guests' Property**

**(1)** We will pay:

    **(a)** For loss of or damage to "**guests' property**" for which you are legally liable while the property is in a safe deposit box inside a building at the described premises.

    **(b)** For loss of or damage to "**guests' property**" for which you are legally liable while the property is at the described premises or in your possession.

If you are sued for refusing to pay for loss of or damage to "**guests' property**", and you have our written consent to defend against the suit, we will pay for any reasonable legal expenses that you incur and pay in that defense. The amount that we will pay is in addition to the applicable Limit of Insurance shown in the Declarations.

**(2)** We will not pay for loss or damage:

    **(a)** Until it exceeds the first $500 of any loss.

    **(b)** Resulting from any dishonest or criminal act that you or any of your partners or members commit, whether acting alone or in collusion with other persons.

    **(c)** Resulting from liability you assume under any written agreement. However this exclusion does not apply under Paragraph (1) (b), to any written agreement entered into with a guest before the occurrence of any loss or damage that increases to an amount not exceeding $1,000 any lesser amount you may otherwise be liable under any statute.

    **(d)** To property resulting from fire, however caused.

    **(e)** Under Paragraph **(1) (a)**, to property in any wall safe or other container used for safekeeping that is in a guest's quarters.

    **(f)** Under Paragraph **(1) (b)**, to property resulting from the spilling, upsetting or leaking of any food or liquid.

    **(g)** Under Paragraph **(1) (b)**, to property while in your care and custody for laundering or cleaning.

    **(h)** Resulting from your release of any other person or organization from legal liability.

    **(i)** Under Paragraph **(1) (b)**, to samples or articles carried or held for sale or delivery after sale.

    **(j)** Under Paragraph **(1) (b)**, to any vehicle including:

        **(i)** Its equipment and accessories; and
        **(ii)** Any property contained in or on a vehicle.

**(3)** The most we will pay is determined as follows:

    **(a)** Under Paragraph **(1) (a)**, the most we will pay for loss in any one occurrence is $10,000. Subject to that limit, the most we will pay for loss arising out an occurrence for any one guest is $1,000.

    **(b)** Under Paragraph **(1) (b)**, the most we will pay for loss in any one occurrence is $10,000. Subject to that limit, the most we will pay for loss arising out of an occurrence for any one guest is $1,000.

**(4)** All loss or damage:

    **(a)** Involving a single act or series of related acts caused by one or more persons; or

    **(b)** Involving a single event or series of events not caused by any person;
    is considered one occurrence.

Item **d.** of Paragraph **5. Coverage Extensions** under Section **A. Coverage** is replaced by the following:

**5.  Coverage Extensions**

  **d.  Property Off-Premises**

    **(1)** You may extend the insurance provided by this Coverage Form to apply to your Covered Property while it is away from the described premises, if it is:

      **(a)** Temporarily at a location you do not own, lease or operate;
      **(b)** In storage at a location you lease, provided the lease was executed after the beginning of the current policy term; or
      **(c)** At any fair, trade show or exhibition.

    This Extension also applies to "**computers**" while such property is in the course of transit or is located, at a premises you do not own, lease or operate, for not more than 90 days.

    **(2)** This Extension does not apply to property:

      **(a)** In or on a vehicle, except for "**computers**"; or

**(b)** In the care, custody or control of your salespersons, unless the property is in such care, custody or control at a fair, trade show or exhibition.

**(3)** The most we will pay for loss or damage under this Extension is:

**(a)** $10,000 in any one occurrence for Covered Property while in the care, custody and control of your salesperson:

**(b)** $100,000 for all other Covered Property; and

**(c)** $100,000 in any one occurrence.

Item **b. Vacancy Provisions** of Paragraph **6. Vacancy** under Section **E. Loss Conditions** is deleted.

The following definitions are added to Section **H. Definitions:**

**H. Definitions**

**1.** "**Alternative key systems**" mean programmable keying systems, such as mechanically or electronically coded key cards.

**2.** "**Computer**" means:
   **a.** Your programmable electronic equipment that is used to store, retrieve and process electronic data. It includes their component parts and dedicated air conditioning, fire suppression equipment and electrical equipment used exclusively in your "**computer**" operations; and

   **b.** Associated peripheral equipment that provides communication, including input and output functions such as printing or auxiliary functions such as electronic data transmission. It does not include electronic data and media.

**3.** "**Guests' property**" means "**money**", "**securities**" and other tangible property having intrinsic value that belongs to your guest.

**4.** "**Hotel Guest Inconvenience Expense**" as used in this endorsement means the reasonable:

   **a.** Extra expenses incurred to secure and use other comparable hotel accommodations as close as possible to the described premises;

   **b.** Extra expenses incurred while traveling to and from the described premises to the premises where the comparable hotel accommodations are secured;

   **c.** Prepaid amounts spent for activities away from the described premises which are lost because other comparable accommodations within a reasonable distance from the described premises are unavailable.

**5.** "**Money**" means:

   **a.** Currency, coins and bank notes in current use and having a face value; and

   **b.** Travelers' checks, register checks and money orders held for sale to the public.

**6.** "**Securities**" means negotiable and nonnegotiable instruments or contracts representing either "**money**" or other property and includes:

   **a.** Redeemed coupons, tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and

**b.** Evidences of debt issued in connection with credit or charge cards, which cards are not issued by you; but does not include "money".

Includes Copyrighted Material of Insurance Services Offices, Inc.
Used with permission

This page intentionally left blank

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**

# COMMERCIAL PROPERTY EXPANDED COVERAGE

## SCHEDULE OF COVERAGES

☒   **Section I – Expanded Property Coverage**
Building and Personal Property Coverage Form – CP 00 10
Causes of Loss – Special Form – CP 10 30

$   150.00

☐   **Section II – Expanded Inland Marine Coverage**

| | Limit of Insurance | |
|---|---|---|
| $ | | Accounts Receivable  (CM 00 66) |
| $ | | Electronic Data Processing Equipment Coverage (IM 7200) |
| $ | | Signs – Any One Occurrence (CM 00 28) |

$   .00

☒   **Section III – Expanded Crime Coverage *(Loss Sustained)* (CR 00 21)**

| | Limit of Liability | Insuring Agreements | |
|---|---|---|---|
| $ | 25,000 | **1.** | Employee Theft |
| $ | 25,000 | **2.** | Forgery Or Alteration |
| $ | 10,000 | **3.** | Inside The Premises – Theft Of Money And Securities |
| $ | 10,000 | **5.** | Outside The Premises |

$   50.00

☐   **Section IV - Expanded Business Income Coverage**

| | Limit of Liability | |
|---|---|---|
| $ | | Business Income And Extra Expense (CP 00 30) |
| $ | 100,000 | Business Income From Dependent Properties (CP 15 08) |

$   .00

**Total Commercial Property Expanded Coverage Premium**   $   200.00

# SECTION I - EXPANDED PROPERTY COVERAGE

COMMERCIAL PROPERTY EXPANDED COVERAGE

This endorsement modifies insurance provided under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM – CP 00 10
CAUSES OF LOSS – SPECIAL FORM – CP 10 30

## CP 00 10 – BUILDING AND PERSONAL PROPERTY COVERAGE FORM

The Building And Personal Property Coverage Form is modified as follows:

**A. Coverage**

**2. Property Not Covered**

The following is added to Paragraph **2. Property Not Covered:**

**r. Spoilage of "Perishable Property" While Located:**
**(1)** On buildings;
**(2)** In the open; or
**(3)** In vehicles.

**4. Additional Coverages**

**a. Debris Removal**

Paragraph **(4)** is replaced with the following:

**(4)** We will pay up to an additional $25,000 for debris removal expense, for each location, in any one occurrence of physical loss or damage to Covered Property, if one or both of the following circumstances apply:

**(a)** The total of the actual debris removal expense plus the amount we pay for direct physical loss or damage exceeds the Limit of Insurance on the Covered Property that has sustained loss or damage.

**(b)** The actual debris removal expense exceeds 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

Therefore, if **(4)(a)** and/or **(4)(b)** apply, our total payment for direct physical loss or damage and debris removal expense may reach but will never exceed the Limit of Insurance on the Covered Property that has sustained loss or damage, plus $25,000.

The following is added:

We will pay your expenses to remove windblown debris of property not covered from your described premises.

The most we will pay for loss or damage under this extension is $5,000.

**c. Fire Department Service Charge**
The first paragraph in **4.c.** is replaced by the following:
When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $25,000, unless a higher limit is shown in the Declarations, for your liability for fire department service charges. No deductible applies to this Additional Coverage.

**d. Pollutant Clean-up And Removal**
The third paragraph is replaced by the following:
The most we will pay under this Additional Coverage for each described premises is $25,000 for the sum of all covered expenses arising out of Covered Causes of Loss occurring during each separate 12-month period of this policy.

The following are added to **4. Additional Coverages**:

**g. Fire Extinguisher Recharge**

**(1)** We will pay:

**(a)** The cost of recharging or replacing, whichever is less, your fire extinguishers and fire extinguishing systems (including hydrostatic testing if needed) if they are discharged on or within 100 feet of the described premises; and

**(b)** For loss or damage to Covered Property if such loss or damage is the result of an accidental discharge of chemicals from a fire extinguisher or a fire extinguishing system.

**(2)** No coverage will apply if the fire extinguishing system is discharged during installation or testing.

**(3)** The most we will pay under this Additional Coverage is $2,500.

No deductible applies to this Additional Coverage.

**h. Arson Reward**
In the event loss to your covered property is of a suspicious nature, we will pay a $10,000 reward to an individual or individuals provided:

**(1)** The individual or individuals report the suspected arsonist to local law enforcement officials; and

**(2)** The arsonist is apprehended, brought to trial, and convicted of arson to your Covered Property.

The most we will pay for a loss, annually under this provision is $10,000, regardless of the number of individuals giving information.

No deductible applies to this Additional Coverage.

**i. Spoilage**

**(1) Covered Property**
Covered Property means "perishable stock" at the described premises owned by you or by others that is in your care, custody or control.

The most we will pay for the Additional Coverage of Spoilage is $25,000.

We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds $500. We will then pay the amount of loss or damage in excess of that Deductible, up to $25,000. No other deductible in this policy applies to the spoilage coverage.

**(2)** Paragraph **A.5. Coverage Extensions** does not apply to Spoilage.

**(3) Valuation:**
We will determine the value of finished "perishable stock" in the event of loss or damage at:

    **(a)** The selling price, as if no loss or damage had occurred;

    **(b)** Less discounts and expenses you otherwise would have had.

**j.  Inventory Or Appraisal Cost**
We will pay up to $5,000 for expenses incurred by the insured, at the company's request, to assist in the determination of the amount of covered loss such as taking inventory and having appraisals done.

**k.  Brands And Labels**

**(1)** If branded or labeled merchandise that is Covered Property is damaged by a Covered Cause of Loss, we may take all or any part of the property at an agreed or appraised value. If so, you may:

    **(a)** Stamp "salvage" on the merchandise or its containers, if the stamp will not physically damage the merchandise; or

    **(b)** Remove the brands or labels, if doing so will not physically damage the merchandise. You must re-label the merchandise or its containers to comply with the law.

**(2)** We will pay reasonable costs you incur to perform the activity described in **(1)(a)** and **(1)(b)** above. But the total we will pay for these costs and the value of the damaged property will not exceed $2,500.

**l.  Utility Services – Direct Damage**

**(1) Coverage**
We will pay for loss of or damage to Covered Property described in the policy, caused by an interruption in utility service to the described premises. The interruption in utility service must result from direct physical loss or damage by a Covered Cause of Loss to the property described in Paragraph **(3)** and is located off the described premises.

**(2) Exception**
Coverage for loss or damage to Covered Property does not apply to loss or damage to electronic data, including destruction or corruption of electronic data. The term electronic data has the meaning set forth in the Building and Personal Property Coverage Form.

**(3) Utility Services**

    **(a) Water Supply Services,** meaning the following types of property supplying water to the described premises:
        **(i)** Pumping stations; and
        **(ii)** Water mains.

    **(b) Communication Supply Services,** meaning property supplying communication services, including telephone, radio, microwave or television services to the described premises, such as:
        **(i)** Communication transmission lines, including optic fiber transmission lines;
        **(ii)** Coaxial cables; and
        **(iii)** Microwave radio relays except satellites.

It does not include overhead transmission lines.

**(c) Power Supply Services,** meaning the following types of property supplying electricity, steam or gas to the described premises:

**(i)** Utility generating plants;
**(ii)** Switching stations;
**(iii)** Substations;
**(iv)** Transformers; and
**(v)** Transmission lines.
It does not include overhead transmission lines.

**(d) Spoilage**

**(i)** Breakdown or Contamination, meaning:

**1)** Change in temperature or humidity resulting from mechanical breakdown or failure of refrigerating, cooling or humidity control apparatus or equipment, only while such equipment or apparatus is at the described premises; and

**2)** Contamination by the refrigerant

**(ii)** Power Outage, meaning:

**1)** Change in temperature or humidity resulting from complete or partial interruption of electrical power, either on or off the described premises, due to conditions beyond your control.

The most we will pay for loss or damage under this provision is $50,000. This limit does not increase the Limit of Insurance stated in the Declarations.

**m. Fine Arts**

**(1) Coverage**
We will pay up to $10,000 in any one occurrence to cover direct physical loss or damage to property defined as "Fine Arts" caused by a Covered Cause of Loss.

**(2) Perils Insured Against**
We will cover risks of direct physical loss unless the loss is limited or caused by a peril that is excluded by the Property Causes of Loss – Special Form.
We will not pay for loss caused by processing of or work upon the covered property including repairs or restoration. We will not pay for any reduction in the value of damaged property after the damage has been repaired.

**(3) Valuation**
In the event of loss or damage, we will pay the actual cash value of the item, subject to the limitation of any one occurrence. The actual cash value will be the price the insured paid for the item or the value as determined by an appraisal of the item not more than 360 days prior to the date of loss or damage.
In no event will the actual cash value exceed the cost to repair, replace, or rebuild the property with material of like kind and quality to the extent practical.

**(4) Definitions**

**(a)** "Fine Arts" means paintings, etchings, pictures, tapestries, rare or art glass, art glass windows, valuable rugs, statuary, sculptures, "antique" furniture; '"antique" jewelry; bric-a-brac; porcelains, and similar property of rarity, historical value or artistic merit.

**(b)** "Antique" means an object having value because its:
    **(i)** craftsmanship is in the style or fashion of former times; and
    **(ii)** age is 100 years old or older.

**n.  Ordinance Or Law Coverage**

**(1) Application Of Coverage**

The Coverage provided by this extension of coverage applies only if both **(1)(a)** and **(1)(b)** are satisfied and are then subject to the qualifications set forth in **(1)(c).**

**(a)** The ordinance or law:
    **(i)** Regulates the demolition, construction or repair of buildings, or establishes zoning or land use requirements at the described premises shown on the Declarations; and
    **(ii)** Is in force at the time of the loss.
    Coverage applies only in response to the minimum requirements of the ordinance or law. Losses and costs incurred in complying with recommended actions or standards that exceed actual requirements are not covered under this Additional Coverage.

**(b)**
    **(i)** The building sustains direct physical damage that is covered under this policy and such damage results in enforcement of the ordinance or law; or

    **(ii)** The building sustains both direct physical damage that is covered under this policy and direct physical damage that is not covered under this policy, and the building damage in its entirety results in enforcement of the ordinance or law.

    **(iii)** But if the building sustains direct physical damage that is not covered under this policy and such damage is the subject of the ordinance or law, then there is no coverage even if the building has also sustained covered direct physical damage.

**(c)** In the situation described in **(1)(b)(ii)** above, we will not pay the full amount of loss otherwise payable under the terms of coverage of this Extension of Coverage. Instead, we will pay a proportion of such loss; meaning the proportion that the covered direct physical damage bears to the total direct physical damage.

[Section **(7)** of this Ordinance or Law Extension Coverage provides an example of this procedure.]

However, if the covered direct physical damage, alone, would have resulted in enforcement of the ordinance or law, then we will pay the full amount of loss otherwise payable under the terms of Coverage **A, B** or **C** of this Additional Coverage.

**(2)** We will not pay under Coverage **A, B** or **C** of this endorsement for:

**(a)** Enforcement of any ordinance or law which requires the demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria; or

**(b)** The costs associated with the enforcement of any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungus", wet or dry rot or bacteria.

**(3) Coverage**

**(a) Coverage A – Coverage For Loss To The Undamaged Portion Of The Building**
With respect to the building that has sustained covered direct physical damage, we will pay under Coverage **A** for the loss in value of the undamaged portion of the building as a consequence of enforcement of an ordinance or law that requires demolition of undamaged parts of the same building.

Coverage **A** is included within the Limit of Insurance shown in the Declarations as applicable to the covered building. Coverage **A** does not increase the Limit of Insurance. This is not additional insurance.

**(b) Coverage B – Demolition Cost Coverage**
With respect to the building that has sustained covered direct physical damage, we will pay the cost to demolish and clear the site of undamaged parts of the same building, as a consequence of enforcement of an ordinance or law that requires demolition of such undamaged property.

**(c) Coverage C – Increased Cost Of Construction Coverage**
With respect to the building that has sustained covered direct physical damage, we will pay the increased cost to:
**(i)** Repair or reconstruct damaged portions of that building; and/or
**(ii)** Reconstruct or remodel undamaged portions of that building, whether or not demolition is required;
when the increased cost is a consequence of enforcement of the minimum requirements of the ordinance or law.

However:
**(i)** This coverage applies only if the restored or remodeled property is intended for similar occupancy as the current property, unless such occupancy is not permitted by zoning or land use ordinance or law.
**(ii)** We will not pay for the increased cost of construction if the building is not repaired, reconstructed or remodeled.

**(4) Loss Payment**

The following Loss Payment provision is subject to the apportionment procedures set forth in Section **(1)(c)** Ordinance Or Law Coverage:

When there is a loss in value of an undamaged portion of a building to which Coverage **A** applies, the loss payment for that building, including damaged and undamaged portions, will be determined as follows:

**(a)** If the Replacement Cost Coverage Option applies and the property is being repaired or replaced, on the same or another premises, we will not pay more than the lesser of:
**(i)** The amount you would actually spend to repair, rebuild or reconstruct the building, but not for more than the amount it would cost to restore the building on the same premises and to the same height, floor area, style and comparable quality of the original property insured; or
**(ii)** The Limit of Insurance shown in the Declarations as applicable to the covered building.

**(b)** If the Replacement Cost Coverage Option applies and the property is **not** repaired or replaced, or if the Replacement Cost Coverage Option does **not** apply, we will not pay more than the lesser of:
**(i)** The actual cash value of the building at the time of loss; or

      **(ii)** The Limit of Insurance shown in the Declarations as applicable to the covered building.

**(5) Combined Limit of Insurance For Coverages B and C**

The most we will pay for the total of all covered losses for Demolition Cost and Increased Cost of Construction is the Combined Limit of Insurance for Coverage **B** and **C** of $50,000. Subject to this Combined Limit of Insurance, the following loss payment provisions apply:

**(a)** For Demolition Cost, we will not pay more than the amount you actually spend to demolish and clear the site of the described premises.

**(b)** With respect to the Increased Cost of Construction:

    **(i)** We will not pay for the increased cost of construction:

        **1)** Until the property is actually repaired or replaced, at the same or another premises; and

        **2)** Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

    **(ii)** If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay for the increased cost of construction is the increased cost of construction at the same premises.

    **(iii)** If the ordinance or law requires relocation to another premises, the most we will pay for the increased cost of construction is the increased cost of construction at the new premises.

**(6)** The terms of this Extension of Coverage applies separately to each described building.

**(7)** Under this Extension Coverage we will not pay for loss due to any ordinance or law that:

**(a)** You were required to comply with before the loss, even if the building was undamaged; and

**(b) You** failed to comply with.

**(8)** Example of Proportionate Loss Payment for Ordinance Or Law Coverage Losses (procedure as set forth in Section **(1)(c)** of this Additional Coverage.)

Assume:

- Wind is a Covered Cause of Loss; Flood is an excluded Cause of Loss
- The building has a value of $200,000
- Total direct physical damage to building: $100,000
- The ordinance or law in this jurisdiction is enforced when building damage equals or exceeds 50% of the building's value
- Portion of direct physical damage that is covered (caused by wind): $30,000
- Portion of direct physical damage that is not covered (caused by flood): $70,000

Step **1:**

Determine the proportion that the covered direct physical damage bears to the total direct physical damage.

$30,000 ÷ $100,000 = .30

Step **2:**

Apply that proportion to the Ordinance or Law loss.

**o.** Discharge From Sewer, Drain Or Sump (Not Flood Related)

**(1)** We will pay for direct physical loss or damage to Covered Property, caused by or resulting from discharge of water or waterborne material from a sewer, drain or sump located on the described premises, provided such discharge is not induced by flood or flood-related conditions.

The aforementioned references to flood include surface water, waves (including tidal wave and tsunami), tides, tidal water, and overflow of any body of water, including storm surge.

For the purpose of this coverage, the term drain includes a roof drain and related fixtures.

**(2)** We will pay for business income loss and/or extra expense in accordance with the terms of the Coverage Form applicable to such premises under your policy, when such loss or expense arises out of the direct physical loss or damage described in Paragraph **(1)**

**(3)** There is no coverage if:

**(a)** The discharge results from an insured's failure to perform routine maintenance or repair necessary to keep a sewer or drain or a sump, sump pump or related equipment free from obstruction and in proper working condition. This limitation does not apply to sudden mechanical breakdown of a sump pump or its related equipment, provided the breakdown is not the result of an insured's negligence; or

**(b)** Sump pump failure is caused by or results from failure of power, unless this policy is endorsed to cover power failure affecting the described premises.

**(4)** To the extent that the Water Exclusion might conflict with the coverage provided under this endorsement, the Water Exclusion does not apply to such coverage.

**(5)** We will not pay the cost of repairing or replacing a sewer, drain, sump, sump pump or any related parts or equipment.

The most we will pay for Discharge from Sewer, Drain or Sump in any policy year is **$10,000**, unless a higher amount is shown in the Declarations

**5. Coverage Extensions**

**a. Newly Acquired Or Constructed Property**

**(1) Buildings**

The last paragraph is replaced with the following:
The most we will pay for loss or damage under this Extension is $1,000,000 at each building.

**(2) Your Business Personal Property**

The last paragraph in **(2)(a)** is replaced with the following:
The most we will pay for loss or damage under this Extension is $500,000 at each building.

**(3) Period Of Coverage**

Paragraph **(b)** is replaced with the following:

**(b)** 90 days expire after you acquire the property or begin construction of that part of the building that would qualify as covered property; or

**b. Personal Effects And Property Of Others**

The last paragraph is replaced with the following:

The most we will pay for loss or damage under this Extension is $25,000 at each described premise. Our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

**c. Valuable Papers And Records – (Other Than Electronic Data)**

Paragraph **(4)** is replaced by the following:

**(4)** Under this Extension, the most we will pay to replace or restore the lost information is $25,000. Such amount is additional insurance. We will also pay for the cost of blank material for reproducing the records (whether or not duplicates exist), and (when there is a duplicate) for the cost of labor to transcribe or copy the records. The costs of blank material and labor are subject to the applicable Limit of Insurance on Your Business Personal Property and therefore coverage of such costs is not additional insurance.

**d. Property Off-premises**

Paragraph (3) is replaced by the following:

**(3)** The most we will pay for loss or damage under this Extension is $15,000.

**e. Outdoor Property**

The first paragraph is amended to include the following:

**(1)** Retaining walls above ground, walkways, patios;

**(2)** Outdoor lighting fixtures (but excluding the breakage of glass parts except as a direct result of fire or lighting), street and traffic signs, and awnings;

**(3)** Wiring, and wiring for masts or towers, for radio, television or satellite dishes;

**(4)** The cost of excavation, grading or backfilling;

**(5)** Foundations of buildings, structures, boilers or machinery if their foundations are below:
   **(a)** The lowest basement floor; or
   **(b)** The surface of the ground, if there is not a basement;

**(6)** Underground pipes, flues and drains;

**(7)** Underground wiring for telephones and cable television;

The last paragraph is replaced with the following:

The most we will pay for loss or damage under this Extension is $25,000, but not more than $1,000 for any one tree, shrub or plant. These limits apply to any one occurrence, regardless of the types or number of items lost or damaged in that occurrence.

**C. Limits Of Insurance**

The following limit provision is added.

The Limit of Insurance for Business Personal Property will automatically increase by 25% to provide for seasonal variations. This increase will apply only if the Limit of Insurance shown for Business Personal Property in the Declarations is at least 100% of your average monthly values during the lesser of:

**1.** The 12 months immediately preceding the date the loss or damage occurs; or

**2.** The period of time you have been in business as of the date the loss or damage occurs.

**F. Additional Conditions**

Additional Conditions do not apply to Spoilage.

**G. Optional Coverages**

Optional Coverages do not apply to Spoilage.

**H. Definitions**

Add the following:

**4. "Perishable Stock"** means personal property:

**a.** Maintained under controlled conditions for its preservation; and

**b.** Susceptible to loss or damage if the controlled conditions change

## CP 10 30 – CAUSES OF LOSS – SPECIAL FORM
The Causes Of Loss – Special Form is modified as follows:

**B. Exclusions**

The following is added to Exclusion **B.1.a**:

**a. Ordinance Or Law**

The following provision is added to this exclusion:

The Ordinance or Law Exclusions do not apply to coverages in **n. Ordinance Or Law,** above.

The following is added to Exclusion **B.1.e**:

**e. Utility Services**

The Utility exclusion provision in the Causes of Loss – Special Form applies, except for any provisions as provided in Section **A.4.l.** Utility Services – Direct Damage above.

**Spoilage**

Paragraph **B. Exclusions** is replaced by the following for Spoilage Coverage Only:

Only the following Exclusions contained in paragraph **B.1.** of the Causes of Loss Special Form applicable to this Expanded Coverage Part apply to Spoilage Coverage:

**b.** EARTH MOVEMENT;

**c.** GOVERNMENTAL ACTION;

**d.** NUCLEAR HAZARD;

**f.** WAR AND MILITARY ACTION; and

**g.** WATER.

The following Exclusions are added:

We will not pay for loss or damage caused by or resulting from:

**a.** The disconnection of any refrigerating, cooling or humidity control system from the source of power.

**b.** The deactivation of electrical power caused by the manipulation of any switch or other device used to control the flow of electrical power or current.

**c.** The inability of an Electrical Utility Company or other power source to provide sufficient power due to:

  **(1)** Lack of fuel; or

  **(2)** Governmental order.

**d.** The inability of a power source at the described premises to provide sufficient power due to lack of generating capacity to meet demand.

**e.** Breaking of any glass that is a permanent part of any refrigerating, cooling or humidity control unit.

The following is added to Exclusion **B. 2.d. (7)**:

**(d)** Except as provided in Additional Coverages **A.3. Covered Causes Of Loss** for   Spoilage above.

**F.  Additional Coverage Extensions**

**1.  Property In Transit**

Paragraph **F.1.a.** is amended as follows:

**a.** You may extend the insurance provided by this Coverage Part to your personal property in transit while:
**(1)** In or on a motor vehicle you own, lease, or operate; or
**(2)** Shipped at your own risk;
between points in the coverage territory.

Paragraph **F.1.c.** is replaced as follows:

**c.** The most we will pay for loss or damage under this Extension is $25,000.

# SECTION II - EXPANDED INLAND MARINE COVERAGE
COMMERCIAL PROPERTY EXPANDED COVERAGE

**THERE IS NO COVERAGE** under **SECTION II** unless so indicated by a ☒ preceding **SECTION II** in the **SCHEDULE OF COVERAGES** on Page 1 of this endorsement.

The most we will pay for loss or damage in any one occurrence is the applicable **Limit of Insurance** shown in **Section II – Expanded Inland Marine Coverage** of the **SCHEDULE OF COVERAGES.**

The following forms are attached:

ACCOUNTS RECEIVABLE COVERAGE FORM – CM 00 66
ELECTRONIC DATA PROCESSING EQUIPMENT COVERAGE FORM– IM 7200
SIGNS COVERAGE FORM – CM 00 28
COMMERCIAL INLAND MARINE CONDITIONS – CM 00 01

This endorsement modifies insurance provided under:

ACCOUNTS RECEIVABLE COVERAGE FORM – CM 00 66
ELECTRONIC DATA PROCESSING EQUIPMENT COVERAGE FORM– IM 7200
SIGNS COVERAGE FORM – CM 00 28

## CM 00 66 – ACCOUNTS RECEIVABLE COVERAGE FORM

This Accounts Receivable Coverage Form is modified as follows:

**C.  Limits Of Insurance**

This paragraph is replaced with the following:

The most we will pay for loss in any one occurrence is the applicable Limit of Insurance shown in the SCHEDULE OF COVERAGES.

No deductible applies.

## IM 7200 – ELECTRONIC DATA PROCESSING EQUIPMENT COVERAGE FORM

This Electronic Data Processing Equipment Coverage Form is modified as follows:

**A.  HOW MUCH WE PAY**

**1.  Insurable Interest**

The most we will pay for loss in any one occurrence is the applicable Limit of Insurance shown in the SCHEDULE OF COVERAGES.

We do not cover more than your insurable interest in any property.

**3.  Deductible**

We will pay only that part of your loss over the deductible amount of $1,000 or the deductible amount indicated in the Inland Marine Schedule if it is higher for any one occurrence.

## CM 00 28 – SIGNS COVERAGE FORM

This Signs Coverage Form is modified as follows:

**C.  Limits Of Insurance**

This paragraph has been replaced with the following:

The most we will pay for loss in any one occurrence is the applicable Limit of Insurance shown in the SCHEDULE OF COVERAGES.

## SECTION III - EXPANDED CRIME COVERAGE
COMMERCIAL PROPERTY EXPANDED COVERAGE FORM

**THERE IS NO COVERAGE** under SECTION III unless so indicated by a ☒ preceding SECTION III in the SCHEDULE OF COVERAGES on Page 1 of this endorsement.

The most we will pay for loss or damage in any one occurrence is the applicable **Limit of Insurance** shown in **Section III – Expanded Crime Coverage** of the **SCHEDULE OF COVERAGES**.

The following form is attached:

COMMERCIAL CRIME COVERAGE FORM (LOSS SUSTAINED) – CR 00 21

This endorsement modifies insurance provided under:

COMMERCIAL CRIME COVERAGE FORM (LOSS SUSTAINED) – CR 00 21

### CR 00 21 - COMMERCIAL CRIME COVERAGE FORM (LOSS SUSTAINED FORM)

This Commercial Crime Coverage Form (Loss Sustained Form) is modified as follows:

**A. Insuring Agreements**

The first Paragraph is replaced by the following:

Coverage is provided under the following Insuring Agreements for which a Limit of Insurance is shown in the SCHEDULE OF COVERAGES and applies to loss that you sustain resulting directly from an "occurrence" taking place during the Policy Period shown in the policy, except as provided in Condition **E.1.k.** or **E.1.l.**, which is "discovered" by you during the Policy Period shown in the policy or during the period of time provided in the Extended Period To Discover Loss Condition **E.1.g.**:

Paragraph **A. 5.** Outside the Premises is amended by the following:

**5. Outside The Premises**

Paragraph **c.** is added:

**c.** In regards to **a.** and **b.** we will pay only for the amount of loss that you can not recover:

**(i)** Under your contract with the armored motor vehicle; and

**(ii)** From any insurance or indemnity carried by, or for the benefit of customers of, the armored motor vehicle company.

**B. Limits Of Insurance**

This paragraph has been replaced with the following:

The most we will pay for all loss resulting directly from an "occurrence" is the applicable Limit of Insurance shown in the SCHEDULE OF COVERAGES.

If any loss is covered under more than one Insuring Agreement or Coverage, the most we will pay for such loss shall not exceed the largest Limit of Insurance available under any one of those Insuring Agreements or Coverages.

For losses covered under this Expanded Coverage Form for Crime (Loss Sustained Form) Paragraph **C. Deductible** is replaced.

**C. Deductible**

We will not pay for loss resulting directly from an "occurrence" unless the amount of loss exceeds $500 or the deductible amount shown in the Declarations for Crime if it is a higher deductible.  We will then pay the amount of loss in excess of the Deductible Amount, up to the Limit of Insurance.

# SECTION IV - EXPANDED BUSINESS INCOME COVERAGE
COMMERCIAL PROPERTY EXPANDED COVERAGE FORM

**THERE IS NO COVERAGE** under SECTION IV unless so indicated by a ⊠ preceding SECTION IV in the SCHEDULE OF COVERAGES on Page 1 of this endorsement.

The most we will pay for loss or damage in any one occurrence is the applicable **Limit of Insurance** shown in **Section IV – Expanded Business Income Coverage** of the **SCHEDULE OF COVERAGES**. The following forms are attached.

BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM – CP 00 30
BUSINESS INCOME FROM DEPENDENT PROPERTIES – BROAD FORM – CP 15 08

This endorsement modifies insurance provided under:
BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM – CP 00 30
BUSINESS INCOME FROM DEPENDENT PROPERTIES – BROAD FORM – CP 15 08

## CP 00 30 - BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM

The Business Income (And Extra Expense) Coverage Form is modified as follows:

**A. Coverage**

    **5. Additional Coverages**

        **c. Extended Business Income**

            Paragraph **(1)(b)(ii)** is amended as follows:

            **(ii)** 180 consecutive days after the date determined in **(1)(a)** above.

    **6. Coverage Extension**

        **Newly Acquired Locations**

        Paragraph **c.** is replaced with the following:

        **c.** Insurance under this Extension for each newly acquired location will end when any of the following first occurs:

            (1) This policy expires;

            (2) 180 days expire after you acquire or begin to construct the property; or

            (3) You report values to us.

            We will charge you additional premium for values reported from the date you acquire the property. This Extension is additional insurance.

        The Additional Condition, Coinsurance, does not apply to this Extension.

**B.  Limits Of Insurance**

The first paragraph is replaced with the following:

The most we will pay for loss in any one occurrence is the applicable Limit of Insurance shown in the SCHEDULE OF COVERAGES.

## CP 15 08 – BUSINESS INCOME FROM DEPENDENT PROPERTIES – BROAD FORM

The Business Income From Dependent Properties – Broad Form is modified as follows:

Paragraph **A.** is replaced as follows:

**A.**  We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by or resulting from direct physical loss of or damage to "dependent property" caused by or resulting from a Covered Cause of Loss. However, coverage under this endorsement does not apply when the only loss to "dependent property" is loss or damage to electronic data, including destruction or corruption of electronic data. If the "dependent property" sustains loss or damage to electronic data and other property, coverage under this endorsement will not continue once the other property is repaired, rebuilt, or replaced. The term electronic data has the meaning set forth in the Business Income (And Extra Expense) Coverage Form.

Paragraph **B.** is replaced as follows:

**B.  Limits Of Insurance**

1.  The most we will pay for loss in any one occurrence is the applicable Limit of Insurance shown in the SCHEDULE OF COVERAGES.

2.  The provisions of the Business Income Coverage Form with respect to direct physical loss or damage at the described premises will apply to **(A)** Contributing Locations, **(B)** Recipient Locations, **(C)** Manufacturing Locations and **(D)** Leader Locations as entered in the Business Income From Dependent Properties – Broad Form.

# SECTION V – COMMERCIALPROPERTY EXPANDED COVERAGE

COMMERCIAL PROPERTY EXPANDED COVERAGE FORM

## LIMITATIONS AND EXCLUSIONS

**The following Limitations and Exclusions are in addition to those found in the BUILDING AND PERSONAL PROPERTY COVERAGE FORM and the CAUSES OF LOSS – SPECIAL FORM, at the described premises shown in the DECLARATIONS or found elsewhere in this endorsement.**

**A. PROPERTY OF OTHERS**

We will not pay for loss or damage to the following Property Of Others:

**1.** Property insured, which has been in your custody for a period in excess of six (6) months, except as may be otherwise specifically provided; and

**2.** Autos, which mean land motor vehicles, licensed and designed for travel on public roads but does not include mobile equipment.

**B. LIMITS OF INSURANCE**

It is agreed and understood that if a coverage does not specifically show a limit per Location, Building, or Premises then it is on a per policy basis.

**C. DEDUCTIBLE**

As this endorsement is an expansion of other coverage forms, the deductible for those coverage lines applies unless otherwise noted.

**D. ADDITIONAL CONDITIONS**

The following conditions apply in addition to the Additional Conditions in the Building and Personal Property Coverage Form or the Commercial Property Conditions Form.

**1. Conflict Of Provisions**

When not in conflict with the provisions of this endorsement, all of the conditions of the policy to which this endorsement is attached, shall apply.

**2. Insurance Under Two Or More Coverages**

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the claim, loss or damage sustained.

**3. Valuation**

Where not otherwise indicated, we shall not pay beyond the actual cash value of the property at the time of the loss or damage occurs. The loss or damage shall be ascertained or estimated according to such actual cash value and shall in no event exceed what it would cost to repair or replace with the same material of like kind and quality.

<div align="right">

**COMMERCIAL PROPERTY**
**31-1220GA 07 10**

</div>

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EQUIPMENT BREAKDOWN COVERAGE GEORGIA

This endorsement modifies insurance provided under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CAUSES OF LOSS-- BASIC FORM
CAUSES OF LOSS-- BROAD FORM
CAUSES OF LOSS-- SPECIAL FORM

A. The following is added as an Additional Coverage to the Causes of Loss— Basic Form, Broad Form or Special Form.

**Additional Coverage-- Equipment Breakdown**
The term Covered Cause of Loss includes the Additional Coverage Equipment Breakdown as described and limited below.

1. We will pay for direct physical damage to Covered Property that is the direct result of an "accident." As used in this Additional Coverage, "accident" means a fortuitous event that causes direct physical damage to "covered equipment." The event must be one of the following:

   **a.** mechanical breakdown, including rupture or bursting caused by centrifugal force;
   **b.** artificially generated electrical, magnetic or electromagnetic energy, including electric arcing, that damages, disturbs, disrupts or otherwise interferes with any electrical or electronic wire, device, appliance, system or network.
   **c.** explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control;
   **d.** loss or damage to steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment; or
   **e.** loss or damage to hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment.

2. Unless otherwise shown in a Schedule, the following coverages also apply to the direct result of an "accident." These coverages do not provide additional amounts of insurance.

   **a.** **Expediting Expenses**
   With respect to your damaged Covered Property, we will pay the reasonable extra cost to:
   **(1)** make temporary repairs; and
   **(2)** expedite permanent repairs or permanent replacement.
   The most we will pay for loss or expense under this coverage is $100,000 unless otherwise shown in a Schedule.
   **b.** **Hazardous Substances**
   We will pay for the additional cost to repair or replace Covered Property because of contamination by a "hazardous substance." This includes the additional expenses to clean up or dispose of such property. This does not include contamination of "perishable goods" by refrigerant, including but not limited to ammonia, which is addressed in 2.c.(1)(b) below. As used in this coverage,

additional costs mean those beyond what would have been payable under this Equipment Breakdown Coverage had no "hazardous substance" been involved.

The most we will pay for loss, damage or expense under this coverage, including actual loss of Business Income you sustain and necessary Extra Expense you incur, if shown as covered, is $100,000 unless otherwise shown in a Schedule.

**c.   Spoilage**

    **(1)**  We will pay:

        **(a)**  for physical damage to "perishable goods" due to spoilage;

        **(b)**  for physical damage to "perishable goods" due to contamination from the release of refrigerant, including but not limited to ammonia;

        **(c)**  any necessary expenses you incur to reduce the amount of loss under this coverage to the extent that they do not exceed the amount of loss that otherwise would have been payable under this coverage.

    **(2)**  If you are unable to replace the "perishable goods" before its anticipated sale, the amount of our payment will be determined on the basis of the sales price of the "perishable goods" at the time of the "accident," less discounts and expenses you otherwise would have had. Otherwise our payment will be determined in accordance with the Valuation condition.

The most we will pay for loss, damage or expense under this coverage is $100,000 unless otherwise shown in a Schedule.

**d.   Data Restoration**

We will pay for your reasonable and necessary cost to research, replace and restore lost "data."

The most we will pay for loss or expense under this coverage, including actual loss of Business Income you sustain and necessary Extra Expense you incur, if shown as covered, is $100,000 unless otherwise shown in a Schedule.

**e.   Service Interruption**

    **(1)**  Any insurance provided for Business Income, Extra Expense or Spoilage is extended to apply to your loss, damage or expense caused by the interruption of utility services. The interruption must result from an "accident" to equipment, including overhead transmission lines, that is owned by a utility, landlord, a landlord's utility or other supplier who provides you with any of the following services: electrical power, waste disposal, air conditioning, refrigeration, heating, natural gas, compressed air, water, steam, internet access, telecommunications services, wide area networks or data transmission. The equipment must meet the definition of "covered equipment" except that it is not Covered Property.

    **(2)**  We will not pay for any loss of Business Income you sustain that results from the interruption of utility services during the first 24 hours following the "accident." However, if a deductible is shown in a Schedule as provided for in paragraph B.1. below, or if the "period of restoration" begins more than 24 hours after the time of the direct physical damage for Business Income, then that deductible or time period will apply instead of the 24 hours provided for in this paragraph.

    **(3)**  The most we will pay in any "one accident" for loss, damage or expense under this coverage is the applicable limit for Business Income, Extra Expense or Spoilage, except that if a limit is shown in a Schedule for Service Interruption, that limit will apply to Business Income and Extra Expense loss under this coverage.

**f.   Business Income and Extra Expense**

Any insurance provided under this coverage part for Business Income or Extra Expense is extended to the coverage provided by this endorsement. However, if a deductible is shown in a Schedule, then as respects Equipment Breakdown coverage, the "period of restoration" will begin immediately after the "accident," and the deductible shown in the Schedule will apply.

The most we will pay for loss or expense under this coverage is the applicable limit for Business Income and Extra Expense, unless otherwise shown in a Schedule.

## 3. EXCLUSIONS

All exclusions in the Causes of Loss form apply except as modified below and to the extent that coverage is specifically provided by this Additional Coverage Equipment Breakdown.

a.  The following exclusions are modified:
    **(1)**  If the Causes of Loss -- Basic Form or Causes of Loss -- Broad Form applies, the following is added to Exclusion B.2.: Depletion, deterioration, corrosion, erosion, wear and tear, or other gradually developing conditions. However, if an "accident" results, we will pay for the resulting loss, damage or expense caused by that "accident."
    **(2)**  The following is added to Exclusion B.1.g.:
    However, if electrical "covered equipment" requires drying out because of Water as described in g.(1) through g.(3) above, we will pay for the direct expenses of such drying out subject to the applicable Limit of Insurance and deductible for Building or Business Personal Property, whichever applies.
    **(3)**  If the Causes of Loss—Special Form applies, as respects this endorsement only, the last paragraph of Exclusion B.2.d. is deleted and replaced with the following:
    But if an excluded cause of loss that is listed in 2.d.(1) through (7) results in an "accident," we will pay for the loss, damage or expense caused by that "accident."
b.  The following exclusions are added:
    **(1)**  We will not pay for loss, damage or expense caused by or resulting from:
        **(a)**  a hydrostatic, pneumatic or gas pressure test of any boiler or pressure vessel, or an electrical insulation breakdown test of any type of electrical equipment; or
        **(b)**  any of the following:
            **(i)**  defect, programming error, programming limitation, computer virus, malicious code, loss of "data," loss of access, loss of use, loss of functionality or other condition within or involving "data" or "media" of any kind; or
            **(ii)**  misalignment, miscalibration, tripping off-line, or any condition which can be corrected by resetting, tightening, adjusting or cleaning, or by the performance of maintenance.
        However, if an "accident" results, we will pay for the resulting loss, damage or expense caused by that "accident."
    **(2)**  With respect to Service Interruption coverage, we will also not pay for an "accident" caused by or resulting from: fire; lightning; windstorm or hail; explosion (except as specifically provided in A.1.c. above); smoke; aircraft or vehicles; riot or civil commotion; vandalism; sprinkler leakage; falling objects; weight of snow, ice or sleet; freezing; collapse; flood or earth movement.
    **(3)**  With respect to Business Income, Extra Expense and Service Interruption coverages, we will also not pay for any increase in loss resulting from an agreement between you and your customer or supplier.
    **(4)**  We will not pay for loss, damage or expense caused directly or indirectly by the following, whether or not caused by or resulting from an "accident": Any mold, fungus, mildew or yeast, including any spores or toxins produced by or emanating from such mold, fungus, mildew or yeast. This includes, but is not limited to, costs arising from clean up, removal, or abatement of such mold, fungus, mildew or yeast, spores or toxins. However, this exclusion does not apply to spoilage of personal property that is "perishable goods," to the extent that spoilage is covered under Spoilage coverage. With respect to the portion of Covered Property that would still have required repair or replacement had there been no mold, fungus, mildew, or yeast, this Exclusion will not serve to limit the amount of recovery for such repair or replacement. However, the Exclusion shall continue to apply to:

(a)    Costs arising from clean up, removal, or abatement of such mold, fungus, mildew or yeast, including any spores or toxins produced by or emanating from such mold, fungus, mildew or yeast; and

(b)    Any increase in loss under Business Income and/or Extra Expense Forms resulting from 1. above.

Regardless of whether the Exclusion applies to a loss, the Limit of Insurance on Covered Property is not increased. The maximum recoverable, for the total of the cost to repair or replace Covered Property and any additional covered cost to clean up, remove, or abate such mold, fungus, mildew or yeast, including any spores or toxins produced by or emanating from such mold, fungus, mildew or yeast, is the applicable Limit of Insurance on the affected Covered Property.

(5)    We will not pay for any loss or damage to animals.

## 4. DEFINITIONS

The following definitions are added:

**a.**    "Boilers and vessels" means:

   **(1)**    Any boiler, including attached steam, condensate and feedwater piping; and

   **(2)**    Any fired or unfired pressure vessel subject to vacuum or internal pressure other than the static pressure of its contents.

This term does not appear elsewhere in this endorsement, but may appear in a Schedule.

**b.**    "Covered equipment"

   **(1)**    "Covered equipment" means, unless otherwise specified in a Schedule, Covered Property:

     **(a)**    that generates, transmits or utilizes energy, including electronic communications and data processing equipment; or

     **(b)**    which, during normal usage, operates under vacuum or pressure, other than the weight of its contents.

   **(2)**    None of the following is "covered equipment":

     **(a)**    structure, foundation, cabinet, compartment or air supported structure or building;

     **(b)**    insulating or refractory material;

     **(c)**    sewer piping, buried vessels or piping, or piping forming a part of a sprinkler or fire suppression system;

     **(d)**    water piping other than boiler feedwater piping, boiler condensate return piping or water piping forming a part of a refrigerating or air conditioning system;

     **(e)**    "vehicle"or any equipment mounted on a "vehicle";

     **(f)**    satellite, spacecraft or any equipment mounted on a satellite or spacecraft;

     **(g)**    dragline, excavation or construction equipment; or

     **(h)**    equipment manufactured by you for sale.

**c.**    "Data" means information or instructions stored in digital code capable of being processed by machinery.

**d.**    "Hazardous substance" means any substance that is hazardous to health or has been declared to be hazardous to health by a governmental agency.

**e.**    "Media" means material on which "data" is recorded, such as magnetic tapes, hard disks, optical disks or floppy disks.

**f.**    "One accident" means: If an initial "accident" causes other "accidents," all will be considered "one accident." All "accidents" that are the result of the same event will be considered "one accident."

**g.**    "Perishable goods" means personal property maintained under controlled conditions for its preservation, and susceptible to loss or damage if the controlled conditions change.

**h.**    "Production machinery" means any machine or apparatus that processes or produces a product intended for eventual sale. However, "production machinery" does not mean any

fired or unfired pressure vessel other than a cylinder containing a movable plunger or piston.

This term does not appear elsewhere in this endorsement, but may appear in a Schedule.

**i.** "Vehicle" means, as respects this endorsement only, any machine or apparatus that is used for transportation or moves under its own power. "Vehicle" includes, but is not limited to, car, truck, bus, trailer, train, aircraft, watercraft, forklift, bulldozer, tractor or harvester. However, any property that is stationary, permanently installed at a covered location and that receives electrical power from an external power source will not be considered a "vehicle."

**B.** The Building and Personal Property Coverage Form is modified as follows.
The definitions stated above also apply to section B. of this endorsement.

## 1. DEDUCTIBLE

The deductible in the Declarations applies unless a separate Equipment Breakdown deductible is shown in a Schedule. If a separate Equipment Breakdown deductible is shown, the following applies.

Only as regards Equipment Breakdown Coverage, provision D. DEDUCTIBLE is deleted and replaced with the following:

**a.** **Deductibles for Each Coverage**
**(1)** Unless the Schedule indicates that your deductible is combined for all coverages, multiple deductibles may apply to any "one accident."
**(2)** We will not pay for loss, damage or expense under any coverage until the amount of the covered loss, damage or expense exceeds the deductible amount indicated for that coverage in the Schedule.
We will then pay the amount of loss, damage or expense in excess of the applicable deductible amount, subject to the applicable limit.
**(3)** If deductibles vary by type of "covered equipment" and more than one type of "covered equipment" is involved in any "one accident," only the highest deductible for each coverage will apply.

**b.** **Direct and Indirect Coverages**
**(1)** Direct Coverages Deductibles and Indirect Coverages Deductibles may be indicated in the Schedule.
**(2)** Unless more specifically indicated in the Schedule:
**(a)** Indirect Coverages Deductibles apply to Business Income and Extra Expense loss; and
**(b)** Direct Coverages Deductibles apply to all remaining loss, damage or expense covered by this endorsement.

**c.** **Application of Deductibles**
**(1)** Dollar Deductibles
We will not pay for loss, damage or expense resulting from any "one accident" until the amount of loss, damage or expense exceeds the applicable Deductible shown in the Schedule. We will then pay the amount of loss, damage or expense in excess of the applicable Deductible or Deductibles, up to the applicable Limit of Insurance.
**(2)** Time Deductible
If a time deductible is shown in the Schedule, we will not be liable for any loss occurring during the specified number of hours or days immediately following the "accident." If a time deductible is expressed in days, each day shall mean twenty-four consecutive hours.
**(3)** Multiple of Average Daily Value (ADV)

If a deductible is expressed as a number times ADV, that amount will be calculated as follows:

The ADV (Average Daily Value) will be the Business Income (as defined in any Business Income coverage that is part of this policy) that would have been earned during the period of interruption of business had no "accident" occurred, divided by the number of working days in that period. No reduction shall be made for the Business Income not being earned, or in the number of working days, because of the "accident" or any other scheduled or unscheduled shutdowns during the period of interruption. The ADV applies to the Business Income value of the entire location, whether or not the loss affects the entire location. If more than one location is included in the valuation of the loss, the ADV will be the combined value of all affected locations. For purposes of this calculation, the period of interruption may not extend beyond the "period of restoration."

The number indicated in the Schedule will be multiplied by the ADV as determined above. The result shall be used as the applicable deductible.

**(4)** Percentage of Loss Deductibles

If a deductible is expressed as a percentage of loss, we will not be liable for the indicated percentage of the gross amount of loss, damage or expense (prior to any applicable deductible or coinsurance) insured under the applicable coverage. If the dollar amount of such percentage is less than the indicated minimum deductible, the minimum deductible will be the applicable deductible.

## 2. CONDITIONS

The following conditions are in addition to the Conditions in the Building and Personal Property Coverage Form, the Commercial Property Conditions and the Common Policy Conditions.

**a.** **Suspension**

Whenever "covered equipment" is found to be in, or exposed to, a dangerous condition, any of our representatives may immediately suspend the insurance against loss from an "accident" to that "covered equipment." This can be done by mailing or delivering a written notice of suspension to:

**(1)** your last known address; or

**(2)** the address where the "covered equipment" is located.

Once suspended in this way, your insurance can be reinstated only by an endorsement for that "covered equipment." If we suspend your insurance, you will get a pro rata refund of premium for that "covered equipment" for the period of suspension. But the suspension will be effective even if we have not yet made or offered a refund.

**b.** **Jurisdictional Inspections**

If any property that is "covered equipment" under this endorsement requires inspection to comply with state or municipal boiler and pressure vessel regulations, we agree to perform such inspection on your behalf. We do not warrant that conditions are safe or healthful.

**c.** **Environmental, Safety and Efficiency Improvements**

If "covered equipment" requires replacement due to an "accident," we will pay your additional cost to replace with equipment that is better for the environment, safer or more efficient than the equipment being replaced. However, we will not pay more than 125% of what the cost would have been to replace with like kind and quality. This condition does not increase any of the applicable limits. This condition does not apply to any property to which Actual Cash Value applies.

**d.** **Coinsurance**

If a coinsurance percentage is shown in a Schedule for specified coverages, the following condition applies. We will not pay for the full amount of your loss if the applicable limit is less than the product of the specified coinsurance percentage times the value of the property subject to the coverage at the time of the loss. Instead, we will determine what

percentage this calculated product is compared to the applicable limit and apply that percentage to the gross amount of loss. We will then subtract the applicable deductible. The resulting amount, or the applicable limit, is the most we will pay. We will not pay for the remainder of the loss. Coinsurance applies separately to each insured location.

The most we will pay for loss, damage or expense under this endorsement arising from any "one accident" is the applicable Limit of Insurance in the Declarations unless otherwise shown in a Schedule. Coverage provided under this endorsement does not provide an additional amount of insurance.

This page intentionally left blank

**POLICY NUMBER:** WPP1839065 00

COMMERCIAL GENERAL LIABILITY
33-0729 10-13

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**

# COMMERCIAL GENERAL LIABILITY COVERAGE EXPANSION ENDORSEMENT (NON-CONTRACTORS)

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART – CG 00 01**

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**Additional Premium  $200**

**SECTION I – COVERAGES**
**COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

2. **Exclusions**

    g. **Aircraft, Auto Or Watercraft**

       Paragraph **(2)** is replaced by the following:

       **(2)** A watercraft you do not own that is:

          **(a)** Less than 51 feet long; and

          **(b)** Not being used to carry persons or property for a charge.

          This provision applies to any person, who with your consent, either uses or is responsible for the use of a watercraft. This insurance is excess over any other valid and collectible insurance available to the insured whether primary, excess, or contingent.

    j. **Damage To Property**

       Paragraph **(2)** is not applicable.

          **(2)** This paragraph is deleted.

       Paragraph **(4)** replaced with the following:

          **(4)** Personal property in the care, custody or control of the insured which exceeds $50,000 regardless of the number of:

             **(a)** Insureds

             **(b)** Claims made; or

             **(c)** Persons or organizations making claims

       The most we will pay under this coverage is $50,000.  Our duty to pay and defend ends under this coverage when the coverage limit has been exhausted.

    n. **Recall Of Products, Work Or Impaired Property**
       Replace with the following:

       Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

          **(1)** "Your product";

Includes copyrighted material of Insurance Services Office, Inc.,
Used with permission

    **(2)** "Your work"; or

    **(3)** "Impaired property";

    if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it, but this exclusion does not apply to "product recall expenses" that you incur for the "covered recall" of "your product".

This insurance does not apply to "Product Recall Expense" arising out of or resulting from:

    **a.** Any product withdrawal initiated due to:

        **(1)** The failure of "your products" to accomplish their intended purpose, including any breach of warranty of fitness, whether written or implied. This exclusion does not apply if such failure has caused or is reasonably expected to cause "bodily injury" or physical damage to tangible property.

        **(2)** Copyright, patent, trade secret or trademark infringements;

        **(3)** Transformation of a chemical nature, deterioration or decomposition of "your product", except if it is caused by:

            **(a)** An error in manufacturing, design, processing or transportation of "your product"; or

            **(b)** "Product tampering"

        **(4)** Expiration of the designated shelf life of "your product".

    **b.** A "product withdrawal", initiated because of a "defect" in "your product" known to exist by the Named Insured or the Named Insured's "executive officers", prior to the inception date of this Coverage Form or prior to the time "your product" leaves your control or possession.

    **c.** Recall of any specific products for which "bodily injury" or "property damage" is excluded under **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY** by endorsement.

    **d.** Recall of "your products" which have been banned from the market by an authorized government entity prior to the policy period.

    **e.** The defense of a claim or "suit" against you for "product withdrawal expenses".

    **f.** **COVERAGE A** does not apply to "product recall expense" arising out of any withdrawal or recall that occurred before you acquired or formed the organization.

We will not pay more than $100,000 annually for "product recall expense" incurred from all "Covered Recall" events covered during this policy term.

Replace the following paragraph:

Exclusion **c.** through **n.** do not apply to damage by "specific perils" to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III – Limits Of Insurance.**

## COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY

**2. Exclusions**

Paragraph **e. Contractual Liability** is amended as follows:

    **e. Contractual Liability**

    This paragraph is deleted.

## COVERAGE C – MEDICAL PAYMENTS

Paragraph **1.a. (3)(b)** under **SECTION I – COVERAGE C – MEDICAL PAYMENTS** is replaced with the following:

    **(b)** The expenses are incurred and reported to us within two years of the date of the accident; However, expenses reported to us after two years of the date of the accident will not be denied solely because of the late submission unless such late submission operates to prejudice our rights; and

## SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

Paragraph **1.b.** and **1.d.** under **SECTION I - SUPPLEMENTARY PAYMENTS – COVERAGE A AND B** is replaced with the following:

    **b.** Up to $2,500 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not furnish these bonds.

    **d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $300 a day because of time off from work.

## SECTION II – WHO IS AN INSURED

Paragraph **3.a.** is amended as follows:

    **a.** Coverage under this provision is afforded only until the 180th day after you acquire or form the organization or the end of the policy period, whichever is earlier.

    However, provision **a.** above does not apply if the newly formed or acquired organization is excluded by either a provision of the Coverage Form or by endorsement.

The following is added under **SECTION II – WHO IS AN INSURED::**

**4.** Organization over which you maintain ownership of more than 50% will be a Named Insured if there is no other similar insurance available to that organization; however

    **a.** **COVERAGE A.** does not apply to "bodily injury" or "property damage" that occurred before you acquired   or formed the organization; and

    **b.** **COVERAGE B.** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

    If such organizations are not shown in the **DECLARATIONS,** you must report them to us within 180 days of inception date of the policy.

**5.** Any person or organization with whom you agreed, because of written contract or written agreement to provide insurance, but only with respect to "bodily injury" or "property damage" arising out of "your products" which are distributed or sold in the regular course of the vendors business, subject to the following additional exclusions:

The insurance afforded the vendor does not apply to:

    **a.** "Bodily injury" or "property damage" for which the vendor is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the vendor would have in the absence of the contract or agreement;

    **b.** Any express warranty unauthorized by you;

    **c.** Any physical or chemical change in the product made intentionally by the vendor;

    **d.** Repackaging, unless unpacked solely for the purpose of inspection, demonstration, testing or the substitution of parts under instruction from the manufacturer, and then repackaged in the original container;

    **e.** Any failure to make such inspection, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business in connection with the sale of the product;

**f.** Demonstration, installation, servicing or repair operations, except such operations performed at the vendors premises in connection with the sale of the product;

**g.** Products which, after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any thing or substance by or for the vendor.

This insurance does not apply to any insured person or organization, from whom you have acquired such products, or any ingredient, part or container, entering into accompanying or containing such products.

**6.** Any person or organization to whom you are obligated by virtue of a written contract to provide insurance such as is afforded by this policy, but only with respect to liability arising out of the maintenance or use of that part of any premises leased to you, including common or public areas about such premises if so required in the contract. However, no such person or organization is an insured with respect to:

**a.** Any "occurrence" that takes place after you cease to occupy those premises; or

**b.** Structural alterations, new construction or demolition operations performed by or on behalf of such insured.

**7.** Any person or organization granting a license to make, or distribute "your products" including "your products" which use the name or logo of grantor and to whom you are obligated by virtue of the written contract to provide insurance such as afforded by this policy, but only with respect to liability arising out of "your products".

## SECTION III – LIMITS OF INSURANCE

The following is added to Paragraph **2.** of **SECTION III – LIMITS OF INSURANCE:**

**d.** The General Aggregate Limit applies separately to each of your "locations".

For the purpose of this provision only, "Location" means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.

Paragraph **6.** is replaced with the following:

**6.** Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is replaced by a "Specific Perils" Limit which is the greater of:

**a.** $300,000; or

**b.** The amount shown in the **DECLARATIONS** for **Damage To Premises Rented To You Limit.**
The "Specific Perils" limit is the most we will pay under **COVERAGE A** for damages because of "property damage" to any one premises, while rented to you or temporarily occupied by you with permission of the owner.

However, provisions **a.** and **b.** above do not apply if any reference in the **DECLARATIONS** for **Damage to Premises Rented to You** is deleted from this policy either by the provisions of the Coverage Form or by endorsement.

The following is added under **SECTION III – LIMITS OF INSURANCE:**

## 8. Product Recall Expense

$100,000 is the most we will pay for all "product recall expenses" arising out of the same defect or deficiency.

## 9. Professional Services

Subject to provisions in **SECTION I – COVERAGES - COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY – 2. Exclusions r.** and **COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY – 2. Exclusions q.** the most we will pay for Professional Services is $50,000 each annual period.

Includes copyrighted material of Insurance Services Office, Inc., Used with permission

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

Replace paragraph **2.a.** with the following:

**a.** You must see to it we are notified as soon as practicable of an "occurrence" or an offense, which may result in a claim. Knowledge of an "occurrence" or an offense by your "employees" shall not, in itself, constitute knowledge to you unless any one of your partners, "executive officers", directors or insurance managers shall have actually received notice. To the extent possible, notice should include:

   **(1)** How, when and where the "occurrence" took place;

   **(2)** The names and addresses of any injured persons and witnesses; and,

   **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

The following is added to paragraph **2.** under **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**:

**e.** Your rights afforded under this policy shall not be prejudiced if you fail to give us notice of an "occurrence", offense, claim or "suit", solely due to your reasonable and documented belief that the "bodily injury" or "property damage" is not covered under this policy.

**f.** You must see to it that the following are done in the event of an actual or anticipated "covered recall" that may result in "product recall expense":

   **(1)** Give us prompt notice of any discovery or notification that "your product" must be withdrawn or recalled. Include a description of "your product" and the reason for withdrawal or recall.

   **(2)** Cease any further release, shipment, consignment or any other method or distribution of like or similar products until it has been determined that all such products are free from defects that could be a cause of loss under this insurance.

**4. Other Insurance**

The following is added to **Other Insurance** and supersedes any provision to the contrary with respects to the Commercial General Liability Coverage Part and Products/Completed Operations Liability Coverage Part.

   **d.** This insurance is primary to and will not seek contribution from any other insurance available to an additional insured under your policy provided that:

   **(i)** The additional insured is a Named Insured under such other insurance; and

   **(ii)** You have agreed in writing in a contract or agreement that this insurance would be primary and would not seek contribution from any other insurance available to the additional insured.

**6. Representations**

Replace with the following:

By accepting this policy, you agree:

   **a.** The statements in the Declarations are accurate and complete;

   **b.** Those statements are based upon representations you made to us; and

   **c.** We have issued this policy in reliance upon your representations.

Any knowledge of an error or omission in the description of, or failure to completely describe any premises or operations intended to be covered by the Coverage Form will not invalidate or affect coverage for these premises or operations. You must report such error or omission to us as soon as practicable after its discovery. However, this provision does not affect our right to collect additional premium or exercise our right to cancellation or non-renewal.

**8. Transfer Of Rights Of Recovery Against Others To Us**

Replace with the following:

Includes copyrighted material of Insurance Services Office, Inc.,
Used with permission

If the insured has rights to recover all or part of any payment we have made under this Coverage Form, those rights are transferred to us.  The insured must do nothing after loss to impair them.  At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.  However, if the insured has waived those rights to recover through a written contract or if "your work" was commenced under a letter of intent or work order, subject to a subsequent reduction to writing with customers whose customary contracts require a waiver, we waive any right to recovery we may have under this Coverage Form.

## SECTION V – DEFINITIONS

Paragraph **3.** of **SECTION V – DEFINITIONS** is replaced with the following:

**3.** "Bodily Injury" means injury, sickness or disease sustained by a person. This includes mental anguish, mental injury, shock, fright or death resulting from "bodily injury", sickness or disease.

The following definitions are added:

**23.** "Covered recall," means:

**a.** A product recall made necessary because you determine that the product recall is necessary; or

**b.** An authorized government entity has ordered you to conduct a product recall.

**24.** "Product recall expense" means necessary and reasonable expenses for:

**a.** Costs of notification;

**b.** Costs of stationery, envelopes, production of announcements and postage or facsimiles;

**c.** Costs of overtime paid to your regular non-salaried employees and costs incurred by your employees, including costs of transportation and accommodations;

**d.** Costs of computer time;

**e.** Costs of hiring independent contractors and other temporary employees;

**f.** Costs of transportation, shipping or packaging

**g.** Costs of warehouse or storage space; or

**h.** Costs of proper disposal of "your products", or products that contain "your products", that can not be reused, not exceeding your purchase price or your cost to produce the products;

**25.** "Specific Peril" means fire; lightning; explosion or leakage from fire sprinkler extinguishing equipment.

**26.** "Professional services" means:

**a.** The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; and

**b.** Supervisory or inspection activities performed as part of any related architectural or engineering activities.

All other policy wording not specifically changed, modified, or replaced by this endorsement wording remains in effect.

COMMERCIAL GENERAL LIABILITY
CG 00 01 04 13

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions.

## SECTION I – COVERAGES

### COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

#### 1. Insuring Agreement

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

  **(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

  **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

  **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

  **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

  **(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

  **(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

  **(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

  **(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

 © Insurance Services Office, Inc., 2012

## 2. Exclusions

This insurance does not apply to:

### a. Expected Or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

### b. Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

  (a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

  (b) Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

### c. Liquor Liability

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

(a) The supervision, hiring, employment, training or monitoring of others by that insured; or

(b) Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph (1), (2) or (3) above.

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

### d. Workers' Compensation And Similar Laws

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

### e. Employer's Liability

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

  (a) Employment by the insured; or

  (b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

© Insurance Services Office, Inc., 2012

**CG 00 01 04 13**

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

 © Insurance Services Office, Inc., 2012

**(2)** Any loss, cost or expense arising out of any:

   **(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

   **(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

   However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

   "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

   This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

   This exclusion does not apply to:

   **(1)** A watercraft while ashore on premises you own or rent;

   **(2)** A watercraft you do not own that is:

      **(a)** Less than 26 feet long; and

      **(b)** Not being used to carry persons or property for a charge;

   **(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

   **(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

   **(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

   **(b)** The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

   "Bodily injury" or "property damage" arising out of:

   **(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

   **(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

   "Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

   **(1)** War, including undeclared or civil war;

   **(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

   **(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

   "Property damage" to:

   **(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

   **(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

   **(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

However, this exclusion does not apply to liability for damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**q. Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

© Insurance Services Office, Inc., 2012

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III** – Limits Of Insurance.

## COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of web sites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a.**, **b.** and **c.** of "personal and advertising injury" under the Definitions section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**p. Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

## COVERAGE C – MEDICAL PAYMENTS

### 1. Insuring Agreement

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(a)** The accident takes place in the "coverage territory" and during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, X-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

### 2. Exclusions

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers' Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage **A**.

## SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.

**b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**e.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

**f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

© Insurance Services Office, Inc., 2012

**g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**2.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**b.** This insurance applies to such liability assumed by the insured;

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2) Provides us with written authorization to:

(a) Obtain records and other information related to the "suit"; and

(b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

## SECTION II – WHO IS AN INSURED

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

 © Insurance Services Office, Inc., 2012

2. Each of the following is also an insured:

   a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

      (1) "Bodily injury" or "personal and advertising injury":

         (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

         (b) To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph (1)(a) above;

         (c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph (1)(a) or (b) above; or

         (d) Arising out of his or her providing or failing to provide professional health care services.

      (2) "Property damage" to property:

         (a) Owned, occupied or used by;

         (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

         you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

   b. Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

   c. Any person or organization having proper temporary custody of your property if you die, but only:

      (1) With respect to liability arising out of the maintenance or use of that property; and

      (2) Until your legal representative has been appointed.

   d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

   a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

   b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

   c. Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under Coverage C;

   b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   c. Damages under Coverage B.

© Insurance Services Office, Inc., 2012     CG 00 01 04 13

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to Paragraph **2.** above, the Personal And Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to Paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   **a.** Damages under Coverage **A**; and

   **b.** Medical expenses under Coverage **C**

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to Paragraph **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

### 1. Bankruptcy

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

### 2. Duties In The Event Of Occurrence, Offense, Claim Or Suit

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

   **(1)** How, when and where the "occurrence" or offense took place;

   **(2)** The names and addresses of any injured persons and witnesses; and

   **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

   **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

   **(2)** Notify us as soon as practicable.

   You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

   **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

   **(2)** Authorize us to obtain records and other information;

   **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

   **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

### 3. Legal Action Against Us

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

(1) This insurance is excess over:

(a) Any of the other insurance, whether primary, excess, contingent or on any other basis:

(i) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(ii) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

(iii) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

(iv) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

(b) Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

(2) When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

(3) When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(a) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(b) The total of all deductible and self-insured amounts under all that other insurance.

(4) We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

a. The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

### 7. Separation Of Insureds

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

### 8. Transfer Of Rights Of Recovery Against Others To Us

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

### 9. When We Do Not Renew

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

### SECTION V – DEFINITIONS

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

**(1)** Goods or products made or sold by you in the territory described in Paragraph **a.** above;

**(2)** The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

**(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

**7.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

© Insurance Services Office, Inc., 2012

**9.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

**10.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**11.** "Loading or unloading" means the handling of property:

**a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

**b.** While it is in or on an aircraft, watercraft or "auto"; or

**c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**12.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

**(1)** Power cranes, shovels, loaders, diggers or drills; or

**(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in Paragraph **a.**, **b.**, **c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in Paragraph **a.**, **b.**, **c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

© Insurance Services Office, Inc., 2012
CG 00 01 04 13

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

  **(a)** Snow removal;

  **(b)** Road maintenance, but not construction or resurfacing; or

  **(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

  **a.** False arrest, detention or imprisonment;

  **b.** Malicious prosecution;

  **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

  **d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

  **e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

  **f.** The use of another's advertising idea in your "advertisement"; or

  **g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products-completed operations hazard":

  **a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

  **(1)** Products that are still in your physical possession; or

  **(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

    **(a)** When all of the work called for in your contract has been completed.

    **(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

    **(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

    Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

  **b.** Does not include "bodily injury" or "property damage" arising out of:

  **(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

  **(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

  **(3)** Products or operations for which the classification, listed in the Declarations or in a policy Schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

  **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

  **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

a. Means:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You;

(b) Others trading under your name; or

(c) A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

(2) The providing of or failure to provide warnings or instructions.

c. Does not include vending machines or other property rented to or located for the use of others but not sold.

22. "Your work":

a. Means:

(1) Work or operations performed by you or on your behalf; and

(2) Materials, parts or equipment furnished in connection with such work or operations.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

(2) The providing of or failure to provide warnings or instructions.

 © Insurance Services Office, Inc., 2012 **CG 00 01 04 13**

COMMERCIAL GENERAL LIABILITY
CG 20 01 04 13

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PRIMARY AND NONCONTRIBUTORY – OTHER INSURANCE CONDITION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

The following is added to the **Other Insurance** Condition and supersedes any provision to the contrary:

**Primary And Noncontributory Insurance**

This insurance is primary to and will not seek contribution from any other insurance available to an additional insured under your policy provided that:

**(1)** The additional insured is a Named Insured under such other insurance; and

**(2)** You have agreed in writing in a contract or agreement that this insurance would be primary and would not seek contribution from any other insurance available to the additional insured.

© Insurance Services Office, Inc., 2012

This page intentionally left blank

**COMMERCIAL GENERAL LIABILITY**

**CG 20 08 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – USERS OF GOLFMOBILES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** **Section II – Who Is An Insured** is amended to include as an additional insured any person(s) using or legally responsible for the use of golfmobiles loaned or rented to others by you or any of your concessionaires but only for their liability arising out of the use of the golfmobiles.

**B.** For the purposes of this endorsement, golfmobile means a motorized conveyance that is:

1. Designed to carry up to four persons on a golf course for the purpose of playing golf; and

2. Not built or modified after manufacture to exceed a speed of 25 miles per hour on level ground.

 © Insurance Services Office, Inc., 2012

This page intentionally left blank

COMMERCIAL GENERAL LIABILITY
CG 21 07 05 14

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION – ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY – LIMITED BODILY INJURY EXCEPTION NOT INCLUDED

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **2.p.** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**p. Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

Damages arising out of:

**(1)** Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

**(2)** The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph **(1)** or **(2)** above.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**B.** The following is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Access Or Disclosure Of Confidential Or Personal Information**

"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

This page intentionally left blank

COMMERCIAL GENERAL LIABILITY
CG 21 09 06 15

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – UNMANNED AIRCRAFT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. Exclusion **2.g. Aircraft, Auto Or Watercraft** under **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**g. Aircraft, Auto Or Watercraft**

**(1) Unmanned Aircraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft that is an "unmanned aircraft". Use includes operation and "loading or unloading".

This Paragraph **g.(1)** applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft that is an "unmanned aircraft".

**(2) Aircraft (Other Than Unmanned Aircraft), Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft (other than "unmanned aircraft"), "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This Paragraph **g.(2)** applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft (other than "unmanned aircraft"), "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This Paragraph **g.(2)** does not apply to:

**(a)** A watercraft while ashore on premises you own or rent;

**(b)** A watercraft you do not own that is:

**(i)** Less than 26 feet long; and

**(ii)** Not being used to carry persons or property for a charge;

**(c)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(d)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

© Insurance Services Office, Inc., 2014

(e) "Bodily injury" or "property damage" arising out of:

(i) The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

(ii) The operation of any of the machinery or equipment listed in Paragraph f.(2) or f.(3) of the definition of "mobile equipment".

B. The following exclusion is added to Paragraph 2. Exclusions of Coverage B – Personal And Advertising Injury Liability:

2. Exclusions

This insurance does not apply to:

Unmanned Aircraft

"Personal and advertising injury" arising out of the ownership, maintenance, use or entrustment to others of any aircraft that is an "unmanned aircraft". Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the offense which caused the "personal and advertising injury" involved the ownership, maintenance, use or entrustment to others of any aircraft that is an "unmanned aircraft".

This exclusion does not apply to:

a. The use of another's advertising idea in your "advertisement"; or

b. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

C. The following definition is added to the Definitions section:

"Unmanned aircraft" means an aircraft that is not:

1. Designed;

2. Manufactured; or

3. Modified after manufacture;

to be controlled directly by a person from within or on the aircraft.

 © Insurance Services Office, Inc., 2014 CG 21 09 06 15

POLICY NUMBER: WPP1839065 00

<div align="right">

**COMMERCIAL GENERAL LIABILITY**
**CG 21 44 04 17**

</div>

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# LIMITATION OF COVERAGE TO DESIGNATED PREMISES, PROJECT OR OPERATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| |
|---|
| **Premises:** |
| All Locations listed on the General Liability Declarations. |
| |
| **Project Or Operation:** |
| |
| |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A.** If this endorsement is attached to Commercial General Liability Coverage Form **CG 00 01**, the provisions under this Paragraph **A.** apply:

  **1.** Paragraph **1.b.** under **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

  **b.** This insurance applies to "bodily injury" and "property damage" caused by an "occurrence" that takes place in the "coverage territory" only if:

  **(1)** The "bodily injury" or "property damage":

  **(a)** Occurs on the premises shown in the Schedule or the grounds and structures appurtenant to those premises; or

  **(b)** Arises out of the project or operation shown in the Schedule;

  **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

  **(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II –** Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

  **2.** Paragraph **1.b.** under **Section I – Coverage B – Personal And Advertising Injury Liability** is replaced by the following:

  **b.** This insurance applies to "personal and advertising injury" caused by an offense committed in the "coverage territory" but only if:

  **(1)** The offense arises out of your business:

  **(a)** Performed on the premises shown in the Schedule; or

**(b)** In connection with the project or operation shown in the Schedule; and

**(2)** The offense was committed during the policy period.

However, with respect to Paragraph **1.b.(1)(a)** of this Insuring Agreement, if the "personal and advertising injury" is caused by:

**(1)** False arrest, detention or imprisonment; or

**(2)** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

then such offense must arise out of your business performed on the premises shown in the Schedule and the offense must have been committed on the premises shown in the Schedule or the grounds and structures appurtenant to those premises.

**3.** Paragraph **1.a.** under **Section I – Coverage C – Medical Payments** is replaced by the following:

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident that takes place in the "coverage territory" if the "bodily injury":

**(1)** Occurs on the premises shown in the Schedule or the grounds and structures appurtenant to those premises; or

**(2)** Arises out of the project or operation shown in the Schedule;

provided that:

**(a)** The accident takes place during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**B.** If this endorsement is attached to Commercial General Liability Coverage Form **CG 00 02**, the provisions under this Paragraph **B.** apply:

**1.** Paragraph **1.b.** under **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**b.** This insurance applies to "bodily injury" and "property damage" caused by an "occurrence" that takes place in the "coverage territory" only if:

**(1)** The "bodily injury" or "property damage":

**(a)** Occurs on the premises shown in the Schedule or the grounds and structures appurtenant to those premises; or

**(b)** Arises out of the project or operation shown in the Schedule;

**(2)** The "bodily injury" or "property damage" did not occur before the Retroactive Date, if any, shown in the Declarations or after the end of the policy period; and

**(3)** A claim for damages because of the "bodily injury" or "property damage" is first made against any insured, in accordance with Paragraph **1.c.** of this Insuring Agreement, during the policy period or any Extended Reporting Period we provide under Section **V –** Extended Reporting Periods.

**2.** Paragraph **1.b.** under **Section I – Coverage B – Personal And Advertising Injury Liability** is replaced by the following:

**b.** This insurance applies to "personal and advertising injury" caused by an offense committed in the "coverage territory" but only if:

**(1)** The offense arises out of your business:

**(a)** Performed on the premises shown in the Schedule; or

**(b)** In connection with the project or operation shown in the Schedule;

**(2)** The offense was not committed before the Retroactive Date, if any, shown in the Declarations or after the end of the policy period; and

**(3)** A claim for damages because of the "personal and advertising injury" is first made against any insured, in accordance with Paragraph **1.c.** of this Insuring Agreement, during the policy period or any Extended Reporting Period we provide under Section **V –** Extended Reporting Periods.

However, with respect to Paragraph **1.b.(1)(a)** of this Insuring Agreement, if the "personal and advertising injury" is caused by:

**(1)** False arrest, detention or imprisonment; or

**(2)** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

then such offense must arise out of your business performed on the premises shown in the Schedule and the offense must have been committed on the premises shown in the Schedule or the grounds and structures appurtenant to those premises.

**3.** Paragraph **1.a.** under **Section I – Coverage C – Medical Payments** is replaced by the following:

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident that takes place in the "coverage territory" if the "bodily injury":

**(1)** Occurs on the premises shown in the Schedule or the grounds and structures appurtenant to those premises; or

**(2)** Arises out of the project or operation shown in the Schedule;

provided that:

**(a)** The accident takes place during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

 © Insurance Services Office, Inc., 2016

This page intentionally left blank

POLICY NUMBER: WPP1839065 00

**COMMERCIAL GENERAL LIABILITY**
**CG 21 47 12 07**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a)**, **(b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a)**, **(b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

CG 21 47 12 07          © ISO Properties, Inc., 2006          **Page 1 of 1**

This page intentionally left blank

COMMERCIAL GENERAL LIABILITY
CG 21 49 09 99

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TOTAL POLLUTION EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion **f.** under Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

This insurance does not apply to:

**f. Pollution**

(1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

 Copyright, Insurance Services Office, Inc.,  1998

This page intentionally left blank

COMMERCIAL GENERAL LIABILITY
CG 21 73 01 15

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

"Any injury or damage" arising, directly or indirectly, out of a "certified act of terrorism".

**B.** The following definitions are added:

**1.** For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part.

**2.** "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**a.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**b.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**C.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Part.

© Insurance Services Office, Inc., 2014

This page intentionally left blank

POLICY NUMBER:WPP1839065 00

**COMMERCIAL GENERAL LIABILITY**
**CG 22 45 04 13**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION – SPECIFIED THERAPEUTIC OR COSMETIC SERVICES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| Description Of Operations: Hotel |
| --- |
| |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

With respect to any operation shown in the Schedule, this insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement, or personal grooming or therapy.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering of or failure to render any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement, or personal grooming or therapy.

© Insurance Services Office, Inc., 2012

This page intentionally left blank

POLICY NUMBER:  WPP1839065 00

**COMMERCIAL GENERAL LIABILITY**
**CG 24 04 05 09**

# WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

| **Name Of Person Or Organization:**<br>Marriott International, Inc |
| --- |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

The following is added to Paragraph **8. Transfer Of Rights Of Recovery Against Others To Us** of **Section IV – Conditions:**

We waive any right of recovery we may have against the person or organization shown in the Schedule above because of payments we make for injury or damage arising out of your ongoing operations or "your work" done under a contract with that person or organization and included in the "products-completed operations hazard". This waiver applies only to the person or organization shown in the Schedule above.

© Insurance Services Office, Inc., 2008  □

This page intentionally left blank

POLICY NUMBER:WPP1839065 00

**COMMERCIAL GENERAL LIABILITY**
**CG 24 12 11 85**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# BOATS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

**Description of Watercraft: Not Applicable**

**Additional Premium: Included**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

1. Exclusion g. of COVERAGE A (Section I) does not apply to any watercraft owned or used by or rented to the insured shown in the Schedule.

2. WHO IS AN INSURED (Section II) is amended to include as an insured any person or organization legally responsible for the use of any such watercraft you own, provided the actual use is with your permission.

Copyright, Insurance Services Office, Inc.,  1984, 1992        **Page 1 of 1**

This page intentionally left blank

POLICY NUMBER: WPP1839065 00

**COMMERCIAL GENERAL LIABILITY**
**CG 24 16 12 07**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CANOES OR ROWBOATS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

1. Exclusion **g.** of Section **I – Coverage A – Bodily Injury And Property Damage Liability** does not apply to "bodily injury" or "property damage" arising out of any canoe or rowboat owned or used by or rented to the insured.

2. **Section II – Who Is An Insured** is amended to include as an insured any person or organization legally responsible for the use of any such canoe or rowboat you own, provided the actual use is with your permission.

© ISO Properties, Inc., 2006

This page intentionally left blank

COMMERCIAL PROPERTY
CP 00 10 10 12

# BUILDING AND PERSONAL PROPERTY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **H.** Definitions.

## A. Coverage

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

### 1. Covered Property

Covered Property, as used in this Coverage Part, means the type of property described in this section, **A.1.**, and limited in **A.2.** Property Not Covered, if a Limit Of Insurance is shown in the Declarations for that type of property.

**a. Building,** meaning the building or structure described in the Declarations, including:

(1) Completed additions;

(2) Fixtures, including outdoor fixtures;

(3) Permanently installed:

(a) Machinery; and

(b) Equipment;

(4) Personal property owned by you that is used to maintain or service the building or structure or its premises, including:

(a) Fire-extinguishing equipment;

(b) Outdoor furniture;

(c) Floor coverings; and

(d) Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;

(5) If not covered by other insurance:

(a) Additions under construction, alterations and repairs to the building or structure;

(b) Materials, equipment, supplies and temporary structures, on or within 100 feet of the described premises, used for making additions, alterations or repairs to the building or structure.

**b. Your Business Personal Property** consists of the following property located in or on the building or structure described in the Declarations or in the open (or in a vehicle) within 100 feet of the building or structure or within 100 feet of the premises described in the Declarations, whichever distance is greater:

(1) Furniture and fixtures;

(2) Machinery and equipment;

(3) "Stock";

(4) All other personal property owned by you and used in your business;

(5) Labor, materials or services furnished or arranged by you on personal property of others;

(6) Your use interest as tenant in improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

(a) Made a part of the building or structure you occupy but do not own; and

(b) You acquired or made at your expense but cannot legally remove;

(7) Leased personal property for which you have a contractual responsibility to insure, unless otherwise provided for under Personal Property Of Others.

**c. Personal Property Of Others** that is:

(1) In your care, custody or control; and

(2) Located in or on the building or structure described in the Declarations or in the open (or in a vehicle) within 100 feet of the building or structure or within 100 feet of the premises described in the Declarations, whichever distance is greater.

 © Insurance Services Office, Inc., 2011

However, our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

## 2. Property Not Covered

Covered Property does not include:

a. Accounts, bills, currency, food stamps or other evidences of debt, money, notes or securities. Lottery tickets held for sale are not securities;

b. Animals, unless owned by others and boarded by you, or if owned by you, only as "stock" while inside of buildings;

c. Automobiles held for sale;

d. Bridges, roadways, walks, patios or other paved surfaces;

e. Contraband, or property in the course of illegal transportation or trade;

f. The cost of excavations, grading, backfilling or filling;

g. Foundations of buildings, structures, machinery or boilers if their foundations are below:

   (1) The lowest basement floor; or

   (2) The surface of the ground, if there is no basement;

h. Land (including land on which the property is located), water, growing crops or lawns (other than lawns which are part of a vegetated roof);

i. Personal property while airborne or waterborne;

j. Bulkheads, pilings, piers, wharves or docks;

k. Property that is covered under another coverage form of this or any other policy in which it is more specifically described, except for the excess of the amount due (whether you can collect on it or not) from that other insurance;

l. Retaining walls that are not part of a building;

m. Underground pipes, flues or drains;

n. Electronic data, except as provided under the Additional Coverage, Electronic Data. Electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data. This paragraph, n., does not apply to your "stock" of prepackaged software, or to electronic data which is integrated in and operates or controls the building's elevator, lighting, heating, ventilation, air conditioning or security system;

o. The cost to replace or restore the information on valuable papers and records, including those which exist as electronic data. Valuable papers and records include but are not limited to proprietary information, books of account, deeds, manuscripts, abstracts, drawings and card index systems. Refer to the Coverage Extension for Valuable Papers And Records (Other Than Electronic Data) for limited coverage for valuable papers and records other than those which exist as electronic data;

p. Vehicles or self-propelled machines (including aircraft or watercraft) that:

   (1) Are licensed for use on public roads; or

   (2) Are operated principally away from the described premises.

   This paragraph does not apply to:

      (a) Vehicles or self-propelled machines or autos you manufacture, process or warehouse;

    © Insurance Services Office, Inc., 2011

**(b)** Vehicles or self-propelled machines, other than autos, you hold for sale;

**(c)** Rowboats or canoes out of water at the described premises; or

**(d)** Trailers, but only to the extent provided for in the Coverage Extension for Non-owned Detached Trailers; or

**q.** The following property while outside of buildings:

**(1)** Grain, hay, straw or other crops;

**(2)** Fences, radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers, trees, shrubs or plants (other than trees, shrubs or plants which are "stock" or are part of a vegetated roof), all except as provided in the Coverage Extensions.

### 3. Covered Causes Of Loss

See applicable Causes Of Loss form as shown in the Declarations.

### 4. Additional Coverages

**a. Debris Removal**

**(1)** Subject to Paragraphs **(2)**, **(3)** and **(4)**, we will pay your expense to remove debris of Covered Property and other debris that is on the described premises, when such debris is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct physical loss or damage.

**(2)** Debris Removal does not apply to costs to:

**(a)** Remove debris of property of yours that is not insured under this policy, or property in your possession that is not Covered Property;

**(b)** Remove debris of property owned by or leased to the landlord of the building where your described premises are located, unless you have a contractual responsibility to insure such property and it is insured under this policy;

**(c)** Remove any property that is Property Not Covered, including property addressed under the Outdoor Property Coverage Extension;

**(d)** Remove property of others of a type that would not be Covered Property under this Coverage Form;

**(e)** Remove deposits of mud or earth from the grounds of the described premises;

**(f)** Extract "pollutants" from land or water; or

**(g)** Remove, restore or replace polluted land or water.

**(3)** Subject to the exceptions in Paragraph **(4)**, the following provisions apply:

**(a)** The most we will pay for the total of direct physical loss or damage plus debris removal expense is the Limit of Insurance applicable to the Covered Property that has sustained loss or damage.

**(b)** Subject to **(a)** above, the amount we will pay for debris removal expense is limited to 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage. However, if no Covered Property has sustained direct physical loss or damage, the most we will pay for removal of debris of other property (if such removal is covered under this Additional Coverage) is $5,000 at each location.

**(4)** We will pay up to an additional $25,000 for debris removal expense, for each location, in any one occurrence of physical loss or damage to Covered Property, if one or both of the following circumstances apply:

**(a)** The total of the actual debris removal expense plus the amount we pay for direct physical loss or damage exceeds the Limit of Insurance on the Covered Property that has sustained loss or damage.

**(b)** The actual debris removal expense exceeds 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

 © Insurance Services Office, Inc., 2011

Therefore, if **(4)(a)** and/or **(4)(b)** applies, our total payment for direct physical loss or damage and debris removal expense may reach but will never exceed the Limit of Insurance on the Covered Property that has sustained loss or damage, plus $25,000.

**(5) Examples**

The following examples assume that there is no Coinsurance penalty.

**Example 1**

| | |
|---|---|
| Limit of Insurance: | $ 90,000 |
| Amount of Deductible: | $    500 |
| Amount of Loss: | $ 50,000 |
| Amount of Loss Payable: | $ 49,500 |
| | ($50,000 − $500) |
| Debris Removal Expense: | $ 10,000 |
| Debris Removal Expense Payable: | $ 10,000 |
| ($10,000 is 20% of $50,000.) | |

The debris removal expense is less than 25% of the sum of the loss payable plus the deductible. The sum of the loss payable and the debris removal expense ($49,500 + $10,000 = $59,500) is less than the Limit of Insurance. Therefore, the full amount of debris removal expense is payable in accordance with the terms of Paragraph **(3)**.

**Example 2**

| | |
|---|---|
| Limit of Insurance: | $ 90,000 |
| Amount of Deductible: | $    500 |
| Amount of Loss: | $ 80,000 |
| Amount of Loss Payable: | $ 79,500 |
| | ($80,000 − $500) |
| Debris Removal Expense: | $ 40,000 |
| Debris Removal Expense Payable | |
| Basic Amount: | $ 10,500 |
| Additional Amount: | $ 25,000 |

The basic amount payable for debris removal expense under the terms of Paragraph **(3)** is calculated as follows: $80,000 ($79,500 + $500) x .25 = $20,000, capped at $10,500. The cap applies because the sum of the loss payable ($79,500) and the basic amount payable for debris removal expense ($10,500) cannot exceed the Limit of Insurance ($90,000).

The additional amount payable for debris removal expense is provided in accordance with the terms of Paragraph **(4)**, because the debris removal expense ($40,000) exceeds 25% of the loss payable plus the deductible ($40,000 is 50% of $80,000), and because the sum of the loss payable and debris removal expense ($79,500 + $40,000 = $119,500) would exceed the Limit of Insurance ($90,000). The additional amount of covered debris removal expense is $25,000, the maximum payable under Paragraph **(4)**. Thus, the total payable for debris removal expense in this example is $35,500; $4,500 of the debris removal expense is not covered.

**b. Preservation Of Property**

If it is necessary to move Covered Property from the described premises to preserve it from loss or damage by a Covered Cause of Loss, we will pay for any direct physical loss or damage to that property:

**(1)** While it is being moved or while temporarily stored at another location; and

**(2)** Only if the loss or damage occurs within 30 days after the property is first moved.

**c. Fire Department Service Charge**

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $1,000 for service at each premises described in the Declarations, unless a higher limit is shown in the Declarations. Such limit is the most we will pay regardless of the number of responding fire departments or fire units, and regardless of the number or type of services performed.

This Additional Coverage applies to your liability for fire department service charges:

**(1)** Assumed by contract or agreement prior to loss; or

**(2)** Required by local ordinance.

No Deductible applies to this Additional Coverage.

 © Insurance Services Office, Inc., 2011 CP 00 10 10 12

### d. Pollutant Clean-up And Removal

We will pay your expense to extract "pollutants" from land or water at the described premises if the discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date on which the Covered Cause of Loss occurs.

This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants". But we will pay for testing which is performed in the course of extracting the "pollutants" from the land or water.

The most we will pay under this Additional Coverage for each described premises is $10,000 for the sum of all covered expenses arising out of Covered Causes of Loss occurring during each separate 12-month period of this policy.

### e. Increased Cost Of Construction

(1) This Additional Coverage applies only to buildings to which the Replacement Cost Optional Coverage applies.

(2) In the event of damage by a Covered Cause of Loss to a building that is Covered Property, we will pay the increased costs incurred to comply with the minimum standards of an ordinance or law in the course of repair, rebuilding or replacement of damaged parts of that property, subject to the limitations stated in e.(3) through e.(9) of this Additional Coverage.

(3) The ordinance or law referred to in e.(2) of this Additional Coverage is an ordinance or law that regulates the construction or repair of buildings or establishes zoning or land use requirements at the described premises and is in force at the time of loss.

(4) Under this Additional Coverage, we will not pay any costs due to an ordinance or law that:

(a) You were required to comply with before the loss, even when the building was undamaged; and

(b) You failed to comply with.

(5) Under this Additional Coverage, we will not pay for:

(a) The enforcement of or compliance with any ordinance or law which requires demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria; or

(b) Any costs associated with the enforcement of or compliance with an ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungus", wet or dry rot or bacteria.

(6) The most we will pay under this Additional Coverage, for each described building insured under this Coverage Form, is $10,000 or 5% of the Limit of Insurance applicable to that building, whichever is less. If a damaged building is covered under a blanket Limit of Insurance which applies to more than one building or item of property, then the most we will pay under this Additional Coverage, for that damaged building, is the lesser of $10,000 or 5% times the value of the damaged building as of the time of loss times the applicable Coinsurance percentage.

The amount payable under this Additional Coverage is additional insurance.

(7) With respect to this Additional Coverage:

(a) We will not pay for the Increased Cost of Construction:

(i) Until the property is actually repaired or replaced at the same or another premises; and

(ii) Unless the repair or replacement is made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

© Insurance Services Office, Inc., 2011

**(b)** If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay for the Increased Cost of Construction, subject to the provisions of **e.(6)** of this Additional Coverage, is the increased cost of construction at the same premises.

**(c)** If the ordinance or law requires relocation to another premises, the most we will pay for the Increased Cost of Construction, subject to the provisions of **e.(6)** of this Additional Coverage, is the increased cost of construction at the new premises.

**(8)** This Additional Coverage is not subject to the terms of the Ordinance Or Law Exclusion to the extent that such Exclusion would conflict with the provisions of this Additional Coverage.

**(9)** The costs addressed in the Loss Payment and Valuation Conditions and the Replacement Cost Optional Coverage, in this Coverage Form, do not include the increased cost attributable to enforcement of or compliance with an ordinance or law. The amount payable under this Additional Coverage, as stated in **e.(6)** of this Additional Coverage, is not subject to such limitation.

**f. Electronic Data**

**(1)** Under this Additional Coverage, electronic data has the meaning described under Property Not Covered, Electronic Data. This Additional Coverage does not apply to your "stock" of prepackaged software, or to electronic data which is integrated in and operates or controls the building's elevator, lighting, heating, ventilation, air conditioning or security system.

**(2)** Subject to the provisions of this Additional Coverage, we will pay for the cost to replace or restore electronic data which has been destroyed or corrupted by a Covered Cause of Loss. To the extent that electronic data is not replaced or restored, the loss will be valued at the cost of replacement of the media on which the electronic data was stored, with blank media of substantially identical type.

**(3)** The Covered Causes of Loss applicable to Your Business Personal Property apply to this Additional Coverage, Electronic Data, subject to the following:

**(a)** If the Causes Of Loss – Special Form applies, coverage under this Additional Coverage, Electronic Data, is limited to the "specified causes of loss" as defined in that form and Collapse as set forth in that form.

**(b)** If the Causes Of Loss – Broad Form applies, coverage under this Additional Coverage, Electronic Data, includes Collapse as set forth in that form.

**(c)** If the Causes Of Loss form is endorsed to add a Covered Cause of Loss, the additional Covered Cause of Loss does not apply to the coverage provided under this Additional Coverage, Electronic Data.

**(d)** The Covered Causes of Loss include a virus, harmful code or similar instruction introduced into or enacted on a computer system (including electronic data) or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for loss or damage caused by or resulting from manipulation of a computer system (including electronic data) by any employee, including a temporary or leased employee, or by an entity retained by you or for you to inspect, design, install, modify, maintain, repair or replace that system.

 © Insurance Services Office, Inc., 2011 **CP 00 10 10 12**

**(4)** The most we will pay under this Additional Coverage, Electronic Data, is $2,500 (unless a higher limit is shown in the Declarations) for all loss or damage sustained in any one policy year, regardless of the number of occurrences of loss or damage or the number of premises, locations or computer systems involved. If loss payment on the first occurrence does not exhaust this amount, then the balance is available for subsequent loss or damage sustained in but not after that policy year. With respect to an occurrence which begins in one policy year and continues or results in additional loss or damage in a subsequent policy year(s), all loss or damage is deemed to be sustained in the policy year in which the occurrence began.

## 5. Coverage Extensions

Except as otherwise provided, the following Extensions apply to property located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises.

If a Coinsurance percentage of 80% or more, or a Value Reporting period symbol, is shown in the Declarations, you may extend the insurance provided by this Coverage Part as follows:

### a. Newly Acquired Or Constructed Property

**(1) Buildings**

If this policy covers Building, you may extend that insurance to apply to:

**(a)** Your new buildings while being built on the described premises; and

**(b)** Buildings you acquire at locations, other than the described premises, intended for:

**(i)** Similar use as the building described in the Declarations; or

**(ii)** Use as a warehouse.

The most we will pay for loss or damage under this Extension is $250,000 at each building.

**(2) Your Business Personal Property**

**(a)** If this policy covers Your Business Personal Property, you may extend that insurance to apply to:

**(i)** Business personal property, including such property that you newly acquire, at any location you acquire other than at fairs, trade shows or exhibitions; or

**(ii)** Business personal property, including such property that you newly acquire, located at your newly constructed or acquired buildings at the location described in the Declarations.

The most we will pay for loss or damage under this Extension is $100,000 at each building.

**(b)** This Extension does not apply to:

**(i)** Personal property of others that is temporarily in your possession in the course of installing or performing work on such property; or

**(ii)** Personal property of others that is temporarily in your possession in the course of your manufacturing or wholesaling activities.

**(3) Period Of Coverage**

With respect to insurance provided under this Coverage Extension for Newly Acquired Or Constructed Property, coverage will end when any of the following first occurs:

**(a)** This policy expires;

**(b)** 30 days expire after you acquire the property or begin construction of that part of the building that would qualify as covered property; or

**(c)** You report values to us.

We will charge you additional premium for values reported from the date you acquire the property or begin construction of that part of the building that would qualify as covered property.

**b. Personal Effects And Property Of Others**

You may extend the insurance that applies to Your Business Personal Property to apply to:

**(1)** Personal effects owned by you, your officers, your partners or members, your managers or your employees. This Extension does not apply to loss or damage by theft.

**(2)** Personal property of others in your care, custody or control.

The most we will pay for loss or damage under this Extension is $2,500 at each described premises. Our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

**c. Valuable Papers And Records (Other Than Electronic Data)**

**(1)** You may extend the insurance that applies to Your Business Personal Property to apply to the cost to replace or restore the lost information on valuable papers and records for which duplicates do not exist. But this Extension does not apply to valuable papers and records which exist as electronic data. Electronic data has the meaning described under Property Not Covered, Electronic Data.

**(2)** If the Causes Of Loss — Special Form applies, coverage under this Extension is limited to the "specified causes of loss" as defined in that form and Collapse as set forth in that form.

**(3)** If the Causes Of Loss — Broad Form applies, coverage under this Extension includes Collapse as set forth in that form.

**(4)** Under this Extension, the most we will pay to replace or restore the lost information is $2,500 at each described premises, unless a higher limit is shown in the Declarations. Such amount is additional insurance. We will also pay for the cost of blank material for reproducing the records (whether or not duplicates exist) and (when there is a duplicate) for the cost of labor to transcribe or copy the records. The costs of blank material and labor are subject to the applicable Limit of Insurance on Your Business Personal Property and, therefore, coverage of such costs is not additional insurance.

**d. Property Off-premises**

**(1)** You may extend the insurance provided by this Coverage Form to apply to your Covered Property while it is away from the described premises, if it is:

**(a)** Temporarily at a location you do not own, lease or operate;

**(b)** In storage at a location you lease, provided the lease was executed after the beginning of the current policy term; or

**(c)** At any fair, trade show or exhibition.

**(2)** This Extension does not apply to property:

**(a)** In or on a vehicle; or

**(b)** In the care, custody or control of your salespersons, unless the property is in such care, custody or control at a fair, trade show or exhibition.

**(3)** The most we will pay for loss or damage under this Extension is $10,000.

**e. Outdoor Property**

You may extend the insurance provided by this Coverage Form to apply to your outdoor fences, radio and television antennas (including satellite dishes), trees, shrubs and plants (other than trees, shrubs or plants which are "stock" or are part of a vegetated roof), including debris removal expense, caused by or resulting from any of the following causes of loss if they are Covered Causes of Loss:

**(1)** Fire;

**(2)** Lightning;

**(3)** Explosion;

**(4)** Riot or Civil Commotion; or

**(5)** Aircraft.

The most we will pay for loss or damage under this Extension is $1,000, but not more than $250 for any one tree, shrub or plant. These limits apply to any one occurrence, regardless of the types or number of items lost or damaged in that occurrence.

   © Insurance Services Office, Inc., 2011

Subject to all aforementioned terms and limitations of coverage, this Coverage Extension includes the expense of removing from the described premises the debris of trees, shrubs and plants which are the property of others, except in the situation in which you are a tenant and such property is owned by the landlord of the described premises.

**f. Non-owned Detached Trailers**

    **(1)** You may extend the insurance that applies to Your Business Personal Property to apply to loss or damage to trailers that you do not own, provided that:

        **(a)** The trailer is used in your business;

        **(b)** The trailer is in your care, custody or control at the premises described in the Declarations; and

        **(c)** You have a contractual responsibility to pay for loss or damage to the trailer.

    **(2)** We will not pay for any loss or damage that occurs:

        **(a)** While the trailer is attached to any motor vehicle or motorized conveyance, whether or not the motor vehicle or motorized conveyance is in motion;

        **(b)** During hitching or unhitching operations, or when a trailer becomes accidentally unhitched from a motor vehicle or motorized conveyance.

    **(3)** The most we will pay for loss or damage under this Extension is $5,000, unless a higher limit is shown in the Declarations.

    **(4)** This insurance is excess over the amount due (whether you can collect on it or not) from any other insurance covering such property.

**g. Business Personal Property Temporarily In Portable Storage Units**

    **(1)** You may extend the insurance that applies to Your Business Personal Property to apply to such property while temporarily stored in a portable storage unit (including a detached trailer) located within 100 feet of the building or structure described in the Declarations or within 100 feet of the premises described in the Declarations, whichever distance is greater.

    **(2)** If the applicable Covered Causes of Loss form or endorsement contains a limitation or exclusion concerning loss or damage from sand, dust, sleet, snow, ice or rain to property in a structure, such limitation or exclusion also applies to property in a portable storage unit.

    **(3)** Coverage under this Extension:

        **(a)** Will end 90 days after the business personal property has been placed in the storage unit;

        **(b)** Does not apply if the storage unit itself has been in use at the described premises for more than 90 consecutive days, even if the business personal property has been stored there for 90 or fewer days as of the time of loss or damage.

    **(4)** Under this Extension, the most we will pay for the total of all loss or damage to business personal property is $10,000 (unless a higher limit is indicated in the Declarations for such Extension) regardless of the number of storage units. Such limit is part of, not in addition to, the applicable Limit of Insurance on Your Business Personal Property. Therefore, payment under this Extension will not increase the applicable Limit of Insurance on Your Business Personal Property.

    **(5)** This Extension does not apply to loss or damage otherwise covered under this Coverage Form or any endorsement to this Coverage Form or policy, and does not apply to loss or damage to the storage unit itself.

Each of these Extensions is additional insurance unless otherwise indicated. The Additional Condition, Coinsurance, does not apply to these Extensions.

**B. Exclusions And Limitations**

See applicable Causes Of Loss form as shown in the Declarations.

**C. Limits Of Insurance**

The most we will pay for loss or damage in any one occurrence is the applicable Limit Of Insurance shown in the Declarations.

The most we will pay for loss or damage to outdoor signs, whether or not the sign is attached to a building, is $2,500 per sign in any one occurrence.

 © Insurance Services Office, Inc., 2011

The amounts of insurance stated in the following Additional Coverages apply in accordance with the terms of such coverages and are separate from the Limit(s) Of Insurance shown in the Declarations for any other coverage:

1. Fire Department Service Charge;

2. Pollutant Clean-up And Removal;

3. Increased Cost Of Construction; and

4. Electronic Data.

Payments under the Preservation Of Property Additional Coverage will not increase the applicable Limit of Insurance.

**D. Deductible**

In any one occurrence of loss or damage (hereinafter referred to as loss), we will first reduce the amount of loss if required by the Coinsurance Condition or the Agreed Value Optional Coverage. If the adjusted amount of loss is less than or equal to the Deductible, we will not pay for that loss. If the adjusted amount of loss exceeds the Deductible, we will then subtract the Deductible from the adjusted amount of loss and will pay the resulting amount or the Limit of Insurance, whichever is less.

When the occurrence involves loss to more than one item of Covered Property and separate Limits of Insurance apply, the losses will not be combined in determining application of the Deductible. But the Deductible will be applied only once per occurrence.

**Example 1**

(This example assumes there is no Coinsurance penalty.)

| | | |
|---|---|---|
| Deductible: | $ | 250 |
| Limit of Insurance – Building 1: | $ | 60,000 |
| Limit of Insurance – Building 2: | $ | 80,000 |
| Loss to Building 1: | $ | 60,100 |
| Loss to Building 2: | $ | 90,000 |

The amount of loss to Building 1 ($60,100) is less than the sum ($60,250) of the Limit of Insurance applicable to Building 1 plus the Deductible.

The Deductible will be subtracted from the amount of loss in calculating the loss payable for Building 1:

| | |
|---|---|
| $ 60,100 | |
| – 250 | |
| $ 59,850 | Loss Payable – Building 1 |

The Deductible applies once per occurrence and therefore is not subtracted in determining the amount of loss payable for Building 2. Loss payable for Building 2 is the Limit of Insurance of $80,000.

Total amount of loss payable:

$59,850 + $80,000 = $139,850

**Example 2**

(This example, too, assumes there is no Coinsurance penalty.)

The Deductible and Limits of Insurance are the same as those in Example 1.

| | | |
|---|---|---|
| Loss to Building 1: | $ | 70,000 |
| (Exceeds Limit of Insurance plus Deductible) | | |
| Loss to Building 2: | $ | 90,000 |
| (Exceeds Limit of Insurance plus Deductible) | | |
| Loss Payable – Building 1: | $ | 60,000 |
| (Limit of Insurance) | | |
| Loss Payable – Building 2: | $ | 80,000 |
| (Limit of Insurance) | | |
| Total amount of loss payable: | $ | 140,000 |

**E. Loss Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.

1. **Abandonment**

   There can be no abandonment of any property to us.

2. **Appraisal**

   If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

   a. Pay its chosen appraiser; and

   b. Bear the other expenses of the appraisal and umpire equally.

   If there is an appraisal, we will still retain our right to deny the claim.

3. **Duties In The Event Of Loss Or Damage**

   a. You must see that the following are done in the event of loss or damage to Covered Property:

      (1) Notify the police if a law may have been broken.

**(2)** Give us prompt notice of the loss or damage. Include a description of the property involved.

**(3)** As soon as possible, give us a description of how, when and where the loss or damage occurred.

**(4)** Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

**(5)** At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

**(6)** As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also, permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

**(7)** Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

**(8)** Cooperate with us in the investigation or settlement of the claim.

**b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**4. Loss Payment**

**a.** In the event of loss or damage covered by this Coverage Form, at our option, we will either:

**(1)** Pay the value of lost or damaged property;

**(2)** Pay the cost of repairing or replacing the lost or damaged property, subject to **b.** below;

**(3)** Take all or any part of the property at an agreed or appraised value; or

**(4)** Repair, rebuild or replace the property with other property of like kind and quality, subject to **b.** below.

We will determine the value of lost or damaged property, or the cost of its repair or replacement, in accordance with the applicable terms of the Valuation Condition in this Coverage Form or any applicable provision which amends or supersedes the Valuation Condition.

**b.** The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

**c.** We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

**d.** We will not pay you more than your financial interest in the Covered Property.

**e.** We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

**f.** We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

**g.** We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part, and:

**(1)** We have reached agreement with you on the amount of loss; or

**(2)** An appraisal award has been made.

**h.** A party wall is a wall that separates and is common to adjoining buildings that are owned by different parties. In settling covered losses involving a party wall, we will pay a proportion of the loss to the party wall based on your interest in the wall in proportion to the interest of the owner of the adjoining building. However, if you elect to repair or replace your building and the owner of the adjoining building elects not to repair or replace that building, we will pay you the full value of the loss to the party wall, subject to all applicable policy provisions including Limits of Insurance, the Valuation and Coinsurance Conditions and all other provisions of this Loss Payment Condition. Our payment under the provisions of this paragraph does not alter any right of subrogation we may have against any entity, including the owner or insurer of the adjoining building, and does not alter the terms of the Transfer Of Rights Of Recovery Against Others To Us Condition in this policy.

**5. Recovered Property**

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, the property will be returned to you. You must then return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limit of Insurance.

**6. Vacancy**

**a. Description Of Terms**

**(1)** As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in **(1)(a)** and **(1)(b)** below:

**(a)** When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

**(b)** When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:

**(i)** Rented to a lessee or sublessee and used by the lessee or sublessee to conduct its customary operations; and/or

**(ii)** Used by the building owner to conduct customary operations.

**(2)** Buildings under construction or renovation are not considered vacant.

**b. Vacancy Provisions**

If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

**(1)** We will not pay for any loss or damage caused by any of the following, even if they are Covered Causes of Loss:

**(a)** Vandalism;

**(b)** Sprinkler leakage, unless you have protected the system against freezing;

**(c)** Building glass breakage;

**(d)** Water damage;

**(e)** Theft; or

**(f)** Attempted theft.

**(2)** With respect to Covered Causes of Loss other than those listed in **b.(1)(a)** through **b.(1)(f)** above, we will reduce the amount we would otherwise pay for the loss or damage by 15%.

**7. Valuation**

We will determine the value of Covered Property in the event of loss or damage as follows:

**a.** At actual cash value as of the time of loss or damage, except as provided in **b.**, **c.**, **d.** and **e.** below.

**b.** If the Limit of Insurance for Building satisfies the Additional Condition, Coinsurance, and the cost to repair or replace the damaged building property is $2,500 or less, we will pay the cost of building repairs or replacement.

The cost of building repairs or replacement does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

However, the following property will be valued at the actual cash value, even when attached to the building:

  **(1)** Awnings or floor coverings;

  **(2)** Appliances for refrigerating, ventilating, cooking, dishwashing or laundering; or

  **(3)** Outdoor equipment or furniture.

**c.** "Stock" you have sold but not delivered at the selling price less discounts and expenses you otherwise would have had.

**d.** Glass at the cost of replacement with safety-glazing material if required by law.

**e.** Tenants' Improvements and Betterments at:

  **(1)** Actual cash value of the lost or damaged property if you make repairs promptly.

  **(2)** A proportion of your original cost if you do not make repairs promptly. We will determine the proportionate value as follows:

    **(a)** Multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

    **(b)** Divide the amount determined in **(a)** above by the number of days from the installation of improvements to the expiration of the lease.

    If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

  **(3)** Nothing if others pay for repairs or replacement.

**F. Additional Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:

**1. Coinsurance**

If a Coinsurance percentage is shown in the Declarations, the following condition applies:

**a.** We will not pay the full amount of any loss if the value of Covered Property at the time of loss times the Coinsurance percentage shown for it in the Declarations is greater than the Limit of Insurance for the property.

Instead, we will determine the most we will pay using the following steps:

**(1)** Multiply the value of Covered Property at the time of loss by the Coinsurance percentage;

**(2)** Divide the Limit of Insurance of the property by the figure determined in Step **(1)**;

**(3)** Multiply the total amount of loss, before the application of any deductible, by the figure determined in Step **(2)**; and

**(4)** Subtract the deductible from the figure determined in Step **(3)**.

We will pay the amount determined in Step **(4)** or the Limit of Insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

**Example 1 (Underinsurance)**

| When: | | |
|---|---|---|
| The value of the property is: | | $250,000 |
| The Coinsurance percentage for it is: | | 80% |
| The Limit of Insurance for it is: | | $100,000 |
| The Deductible is: | $ | 250 |
| The amount of loss is: | $ | 40,000 |

**Step (1):** $250,000 x 80% = $200,000

(the minimum amount of insurance to meet your Coinsurance requirements)

**Step (2):** $100,000 ÷ $200,000 = .50

**Step (3):** $40,000 x .50 = $20,000

**Step (4):** $20,000 − $250 = $19,750

We will pay no more than $19,750. The remaining $20,250 is not covered.

**Example 2 (Adequate Insurance)**

| When: | | |
|---|---|---|
| The value of the property is: | | $250,000 |
| The Coinsurance percentage for it is: | | 80% |
| The Limit of Insurance for it is: | | $200,000 |
| The Deductible is: | $ | 250 |
| The amount of loss is: | $ | 40,000 |

The minimum amount of insurance to meet your Coinsurance requirement is $200,000 ($250,000 x 80%). Therefore, the Limit of Insurance in this example is adequate, and no penalty applies. We will pay no more than $39,750 ($40,000 amount of loss minus the deductible of $250).

 © Insurance Services Office, Inc., 2011

**b.** If one Limit of Insurance applies to two or more separate items, this condition will apply to the total of all property to which the limit applies.

**Example 3**

| When: | The value of the property is: | |
|---|---|---|
| | Building at Location 1: | $ 75,000 |
| | Building at Location 2: | $100,000 |
| | Personal Property at Location 2: | $ 75,000 |
| | | $250,000 |
| | The Coinsurance percentage for it is: | 90% |
| | The Limit of Insurance for Buildings and Personal Property at Locations 1 and 2 is: | $180,000 |
| | The Deductible is: | $ 1,000 |
| | The amount of loss is: | |
| | Building at Location 2: | $ 30,000 |
| | Personal Property at Location 2: | $ 20,000 |
| | | $ 50,000 |

**Step (1):** $250,000 x 90% = $225,000
(the minimum amount of insurance to meet your Coinsurance requirements and to avoid the penalty shown below)

**Step (2):** $180,000 ÷ $225,000 = .80

**Step (3):** $50,000 x .80 = $40,000

**Step (4):** $40,000 − $1,000 = $39,000

We will pay no more than $39,000. The remaining $11,000 is not covered.

**2. Mortgageholders**

**a.** The term mortgageholder includes trustee.

**b.** We will pay for covered loss of or damage to buildings or structures to each mortgageholder shown in the Declarations in their order of precedence, as interests may appear.

**c.** The mortgageholder has the right to receive loss payment even if the mortgageholder has started foreclosure or similar action on the building or structure.

**d.** If we deny your claim because of your acts or because you have failed to comply with the terms of this Coverage Part, the mortgageholder will still have the right to receive loss payment if the mortgageholder:

**(1)** Pays any premium due under this Coverage Part at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgageholder.

All of the terms of this Coverage Part will then apply directly to the mortgageholder.

**e.** If we pay the mortgageholder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

**(1)** The mortgageholder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

**(2)** The mortgageholder's right to recover the full amount of the mortgageholder's claim will not be impaired.

At our option, we may pay to the mortgageholder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

**f.** If we cancel this policy, we will give written notice to the mortgageholder at least:

**(1)** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

**g.** If we elect not to renew this policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this policy.

**G. Optional Coverages**

If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item:

**1. Agreed Value**

**a.** The Additional Condition, Coinsurance, does not apply to Covered Property to which this Optional Coverage applies. We will pay no more for loss of or damage to that property than the proportion that the Limit of Insurance under this Coverage Part for the property bears to the Agreed Value shown for it in the Declarations.

**b.** If the expiration date for this Optional Coverage shown in the Declarations is not extended, the Additional Condition, Coinsurance, is reinstated and this Optional Coverage expires.

**c.** The terms of this Optional Coverage apply only to loss or damage that occurs:

   **(1)** On or after the effective date of this Optional Coverage; and

   **(2)** Before the Agreed Value expiration date shown in the Declarations or the policy expiration date, whichever occurs first.

**2. Inflation Guard**

   **a.** The Limit of Insurance for property to which this Optional Coverage applies will automatically increase by the annual percentage shown in the Declarations.

   **b.** The amount of increase will be:

   **(1)** The Limit of Insurance that applied on the most recent of the policy inception date, the policy anniversary date, or any other policy change amending the Limit of Insurance, times

   **(2)** The percentage of annual increase shown in the Declarations, expressed as a decimal (example: 8% is .08), times

   **(3)** The number of days since the beginning of the current policy year or the effective date of the most recent policy change amending the Limit of Insurance, divided by 365.

**Example**

If: The applicable Limit of Insurance is:    $ 100,000

The annual percentage increase is:    8%

The number of days since the beginning of the policy year (or last policy change) is:    146

The amount of increase is:
$100,000 x .08 x 146 ÷ 365 =    $   3,200

**3. Replacement Cost**

   **a.** Replacement Cost (without deduction for depreciation) replaces Actual Cash Value in the Valuation Loss Condition of this Coverage Form.

   **b.** This Optional Coverage does not apply to:

   **(1)** Personal property of others;

   **(2)** Contents of a residence;

   **(3)** Works of art, antiques or rare articles, including etchings, pictures, statuary, marbles, bronzes, porcelains and bric-a-brac; or

   **(4)** "Stock", unless the Including "Stock" option is shown in the Declarations.

Under the terms of this Replacement Cost Optional Coverage, tenants' improvements and betterments are not considered to be the personal property of others.

**c.** You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim for the additional coverage this Optional Coverage provides if you notify us of your intent to do so within 180 days after the loss or damage.

**d.** We will not pay on a replacement cost basis for any loss or damage:

   **(1)** Until the lost or damaged property is actually repaired or replaced; and

   **(2)** Unless the repair or replacement is made as soon as reasonably possible after the loss or damage.

With respect to tenants' improvements and betterments, the following also apply:

   **(3)** If the conditions in **d.(1)** and **d.(2)** above are not met, the value of tenants' improvements and betterments will be determined as a proportion of your original cost, as set forth in the Valuation Loss Condition of this Coverage Form; and

   **(4)** We will not pay for loss or damage to tenants' improvements and betterments if others pay for repairs or replacement.

**e.** We will not pay more for loss or damage on a replacement cost basis than the least of **(1)**, **(2)** or **(3)**, subject to **f.** below:

   **(1)** The Limit of Insurance applicable to the lost or damaged property;

   **(2)** The cost to replace the lost or damaged property with other property:

      **(a)** Of comparable material and quality; and

      **(b)** Used for the same purpose; or

   **(3)** The amount actually spent that is necessary to repair or replace the lost or damaged property.

If a building is rebuilt at a new premises, the cost described in **e.(2)** above is limited to the cost which would have been incurred if the building had been rebuilt at the original premises.

**f.** The cost of repair or replacement does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

**4. Extension Of Replacement Cost To Personal Property Of Others**

**a.** If the Replacement Cost Optional Coverage is shown as applicable in the Declarations, then this Extension may also be shown as applicable. If the Declarations show this Extension as applicable, then Paragraph **3.b.(1)** of the Replacement Cost Optional Coverage is deleted and all other provisions of the Replacement Cost Optional Coverage apply to replacement cost on personal property of others.

**b.** With respect to replacement cost on the personal property of others, the following limitation applies:

If an item(s) of personal property of others is subject to a written contract which governs your liability for loss or damage to that item(s), then valuation of that item(s) will be based on the amount for which you are liable under such contract, but not to exceed the lesser of the replacement cost of the property or the applicable Limit of Insurance.

**H. Definitions**

**1.** "Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

**2.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**3.** "Stock" means merchandise held in storage or for sale, raw materials and in-process or finished goods, including supplies used in their packing or shipping.

© Insurance Services Office, Inc., 2011

CP 00 10 10 12

COMMERCIAL PROPERTY
CP 00 30 10 12

# BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **F.** Definitions.

## A. Coverage

### 1. Business Income

Business Income means the:

**a.** Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred; and

**b.** Continuing normal operating expenses incurred, including payroll.

For manufacturing risks, Net Income includes the net sales value of production.

Coverage is provided as described and limited below for one or more of the following options for which a Limit Of Insurance is shown in the Declarations:

**(1)** Business Income Including "Rental Value".

**(2)** Business Income Other Than "Rental Value".

**(3)** "Rental Value".

If option **(1)** above is selected, the term Business Income will include "Rental Value". If option **(3)** above is selected, the term Business Income will mean "Rental Value" only.

If Limits of Insurance are shown under more than one of the above options, the provisions of this Coverage Part apply separately to each.

We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit Of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of such premises.

With respect to the requirements set forth in the preceding paragraph, if you occupy only part of a building, your premises means:

**(a)** The portion of the building which you rent, lease or occupy;

**(b)** The area within 100 feet of the building or within 100 feet of the premises described in the Declarations, whichever distance is greater (with respect to loss of or damage to personal property in the open or personal property in a vehicle); and

**(c)** Any area within the building or at the described premises, if that area services, or is used to gain access to, the portion of the building which you rent, lease or occupy.

### 2. Extra Expense

**a.** Extra Expense Coverage is provided at the premises described in the Declarations only if the Declarations show that Business Income Coverage applies at that premises.

**b.** Extra Expense means necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss.

We will pay Extra Expense (other than the expense to repair or replace property) to:

**(1)** Avoid or minimize the "suspension" of business and to continue operations at the described premises or at replacement premises or temporary locations, including relocation expenses and costs to equip and operate the replacement location or temporary location.

 © Insurance Services Office, Inc., 2011

**(2)** Minimize the "suspension" of business if you cannot continue "operations".

We will also pay Extra Expense to repair or replace property, but only to the extent it reduces the amount of loss that otherwise would have been payable under this Coverage Form.

**3. Covered Causes Of Loss, Exclusions And Limitations**

See applicable Causes Of Loss form as shown in the Declarations.

**4. Additional Limitation – Interruption Of Computer Operations**

**a.** Coverage for Business Income does not apply when a "suspension" of "operations" is caused by destruction or corruption of electronic data, or any loss or damage to electronic data, except as provided under the Additional Coverage, Interruption Of Computer Operations.

**b.** Coverage for Extra Expense does not apply when action is taken to avoid or minimize a "suspension" of "operations" caused by destruction or corruption of electronic data, or any loss or damage to electronic data, except as provided under the Additional Coverage, Interruption Of Computer Operations.

**c.** Electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

**d.** This Additional Limitation does not apply when loss or damage to electronic data involves only electronic data which is integrated in and operates or controls a building's elevator, lighting, heating, ventilation, air conditioning or security system.

**5. Additional Coverages**

**a. Civil Authority**

In this Additional Coverage, Civil Authority, the described premises are premises to which this Coverage Form applies, as shown in the Declarations.

When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:

**(1)** Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and

**(2)** The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

Civil Authority Coverage for Business Income will begin 72 hours after the time of the first action of civil authority that prohibits access to the described premises and will apply for a period of up to four consecutive weeks from the date on which such coverage began.

Civil Authority Coverage for Extra Expense will begin immediately after the time of the first action of civil authority that prohibits access to the described premises and will end:

**(1)** Four consecutive weeks after the date of that action; or

**(2)** When your Civil Authority Coverage for Business Income ends;

whichever is later.

© Insurance Services Office, Inc., 2011

**b. Alterations And New Buildings**

We will pay for the actual loss of Business Income you sustain and necessary Extra Expense you incur due to direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss to:

(1) New buildings or structures, whether complete or under construction;

(2) Alterations or additions to existing buildings or structures; and

(3) Machinery, equipment, supplies or building materials located on or within 100 feet of the described premises and:

   (a) Used in the construction, alterations or additions; or

   (b) Incidental to the occupancy of new buildings.

If such direct physical loss or damage delays the start of "operations", the "period of restoration" for Business Income Coverage will begin on the date "operations" would have begun if the direct physical loss or damage had not occurred.

**c. Extended Business Income**

**(1) Business Income Other Than "Rental Value"**

If the necessary "suspension" of your "operations" produces a Business Income loss payable under this policy, we will pay for the actual loss of Business Income you incur during the period that:

   (a) Begins on the date property (except "finished stock") is actually repaired, rebuilt or replaced and "operations" are resumed; and

   (b) Ends on the earlier of:

     (i) The date you could restore your "operations", with reasonable speed, to the level which would generate the business income amount that would have existed if no direct physical loss or damage had occurred; or

     (ii) 60 consecutive days after the date determined in **(1)(a)** above.

However, Extended Business Income does not apply to loss of Business Income incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

Loss of Business Income must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

**(2) "Rental Value"**

If the necessary "suspension" of your "operations" produces a "Rental Value" loss payable under this policy, we will pay for the actual loss of "Rental Value" you incur during the period that:

   (a) Begins on the date property is actually repaired, rebuilt or replaced and tenantability is restored; and

   (b) Ends on the earlier of:

     (i) The date you could restore tenant occupancy, with reasonable speed, to the level which would generate the "Rental Value" that would have existed if no direct physical loss or damage had occurred; or

     (ii) 60 consecutive days after the date determined in **(2)(a)** above.

However, Extended Business Income does not apply to loss of "Rental Value" incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

Loss of "Rental Value" must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

**d. Interruption Of Computer Operations**

**(1)** Under this Additional Coverage, electronic data has the meaning described under Additional Limitation – Interruption Of Computer Operations.

 © Insurance Services Office, Inc., 2011

**(2)** Subject to all provisions of this Additional Coverage, you may extend the insurance that applies to Business Income and Extra Expense to apply to a "suspension" of "operations" caused by an interruption in computer operations due to destruction or corruption of electronic data due to a Covered Cause of Loss. However, we will not provide coverage under this Additional Coverage when the Additional Limitation – Interruption Of Computer Operations does not apply based on Paragraph **A.4.d.** therein.

**(3)** With respect to the coverage provided under this Additional Coverage, the Covered Causes of Loss are subject to the following:

**(a)** If the Causes Of Loss – Special Form applies, coverage under this Additional Coverage, Interruption Of Computer Operations, is limited to the "specified causes of loss" as defined in that form and Collapse as set forth in that form.

**(b)** If the Causes Of Loss – Broad Form applies, coverage under this Additional Coverage, Interruption Of Computer Operations, includes Collapse as set forth in that form.

**(c)** If the Causes Of Loss form is endorsed to add a Covered Cause of Loss, the additional Covered Cause of Loss does not apply to the coverage provided under this Additional Coverage, Interruption Of Computer Operations.

**(d)** The Covered Causes of Loss include a virus, harmful code or similar instruction introduced into or enacted on a computer system (including electronic data) or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for an interruption related to manipulation of a computer system (including electronic data) by any employee, including a temporary or leased employee, or by an entity retained by you or for you to inspect, design, install, maintain, repair or replace that system.

**(4)** The most we will pay under this Additional Coverage, Interruption Of Computer Operations, is $2,500 (unless a higher limit is shown in the Declarations) for all loss sustained and expense incurred in any one policy year, regardless of the number of interruptions or the number of premises, locations or computer systems involved. If loss payment relating to the first interruption does not exhaust this amount, then the balance is available for loss or expense sustained or incurred as a result of subsequent interruptions in that policy year. A balance remaining at the end of a policy year does not increase the amount of insurance in the next policy year. With respect to any interruption which begins in one policy year and continues or results in additional loss or expense in a subsequent policy year(s), all loss and expense is deemed to be sustained or incurred in the policy year in which the interruption began.

**(5)** This Additional Coverage, Interruption Of Computer Operations, does not apply to loss sustained or expense incurred after the end of the "period of restoration", even if the amount of insurance stated in **(4)** above has not been exhausted.

**6. Coverage Extension**

If a Coinsurance percentage of 50% or more is shown in the Declarations, you may extend the insurance provided by this Coverage Part as follows:

**Newly Acquired Locations**

**a.** You may extend your Business Income and Extra Expense Coverages to apply to property at any location you acquire other than fairs or exhibitions.

**b.** The most we will pay under this Extension, for the sum of Business Income loss and Extra Expense incurred, is $100,000 at each location, unless a higher limit is shown in the Declarations.

**c.** Insurance under this Extension for each newly acquired location will end when any of the following first occurs:

**(1)** This policy expires;

**(2)** 30 days expire after you acquire or begin to construct the property; or

**(3)** You report values to us.

We will charge you additional premium for values reported from the date you acquire the property.

The Additional Condition, Coinsurance, does not apply to this Extension.

## B. Limits Of Insurance

The most we will pay for loss in any one occurrence is the applicable Limit Of Insurance shown in the Declarations.

Payments under the following coverages will not increase the applicable Limit of Insurance:

**1.** Alterations And New Buildings;

**2.** Civil Authority;

**3.** Extra Expense; or

**4.** Extended Business Income.

The amounts of insurance stated in the Interruption Of Computer Operations Additional Coverage and the Newly Acquired Locations Coverage Extension apply in accordance with the terms of those coverages and are separate from the Limit(s) Of Insurance shown in the Declarations for any other coverage.

## C. Loss Conditions

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:

### 1. Appraisal

If we and you disagree on the amount of Net Income and operating expense or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser.

The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of Net Income and operating expense or amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

### 2. Duties In The Event Of Loss

**a.** You must see that the following are done in the event of loss:

**(1)** Notify the police if a law may have been broken.

**(2)** Give us prompt notice of the direct physical loss or damage. Include a description of the property involved.

**(3)** As soon as possible, give us a description of how, when and where the direct physical loss or damage occurred.

**(4)** Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

**(5)** As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

**(6)** Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

**(7)** Cooperate with us in the investigation or settlement of the claim.

**(8)** If you intend to continue your business, you must resume all or part of your "operations" as quickly as possible.

**b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**3. Loss Determination**

**a.** The amount of Business Income loss will be determined based on:

(1) The Net Income of the business before the direct physical loss or damage occurred;

(2) The likely Net Income of the business if no physical loss or damage had occurred, but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses;

(3) The operating expenses, including payroll expenses, necessary to resume "operations" with the same quality of service that existed just before the direct physical loss or damage; and

(4) Other relevant sources of information, including:

(a) Your financial records and accounting procedures;

(b) Bills, invoices and other vouchers; and

(c) Deeds, liens or contracts.

**b.** The amount of Extra Expense will be determined based on:

(1) All expenses that exceed the normal operating expenses that would have been incurred by "operations" during the "period of restoration" if no direct physical loss or damage had occurred. We will deduct from the total of such expenses:

(a) The salvage value that remains of any property bought for temporary use during the "period of restoration", once "operations" are resumed; and

(b) Any Extra Expense that is paid for by other insurance, except for insurance that is written subject to the same plan, terms, conditions and provisions as this insurance; and

(2) Necessary expenses that reduce the Business Income loss that otherwise would have been incurred.

**c. Resumption Of Operations**

We will reduce the amount of your:

(1) Business Income loss, other than Extra Expense, to the extent you can resume your "operations", in whole or in part, by using damaged or undamaged property (including merchandise or stock) at the described premises or elsewhere.

(2) Extra Expense loss to the extent you can return "operations" to normal and discontinue such Extra Expense.

**d.** If you do not resume "operations", or do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

**4. Loss Payment**

We will pay for covered loss within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part, and:

**a.** We have reached agreement with you on the amount of loss; or

**b.** An appraisal award has been made.

**D. Additional Condition**

**COINSURANCE**

If a Coinsurance percentage is shown in the Declarations, the following condition applies in addition to the Common Policy Conditions and the Commercial Property Conditions.

We will not pay the full amount of any Business Income loss if the Limit of Insurance for Business Income is less than:

**1.** The Coinsurance percentage shown for Business Income in the Declarations; times

**2.** The sum of:

**a.** The Net Income (Net Profit or Loss before income taxes), and

**b.** Operating expenses, including payroll expenses,

that would have been earned or incurred (had no loss occurred) by your "operations" at the described premises for the 12 months following the inception, or last previous anniversary date, of this policy (whichever is later).

© Insurance Services Office, Inc., 2011

Instead, we will determine the most we will pay using the following steps:

Step (1): Multiply the Net Income and operating expense for the 12 months following the inception, or last previous anniversary date, of this policy by the Coinsurance percentage;

Step (2): Divide the Limit of Insurance for the described premises by the figure determined in Step (1); and

Step (3): Multiply the total amount of loss by the figure determined in Step (2).

We will pay the amount determined in Step (3) or the limit of insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

In determining operating expenses for the purpose of applying the Coinsurance condition, the following expenses, if applicable, shall be deducted from the total of all operating expenses:

    (1)  Prepaid freight – outgoing;

    (2)  Returns and allowances;

    (3)  Discounts;

    (4)  Bad debts;

    (5)  Collection expenses;

    (6)  Cost of raw stock and factory supplies consumed (including transportation charges);

    (7)  Cost of merchandise sold (including transportation charges);

    (8)  Cost of other supplies consumed (including transportation charges);

    (9)  Cost of services purchased from outsiders (not employees) to resell, that do not continue under contract;

    (10) Power, heat and refrigeration expenses that do not continue under contract (if Form **CP 15 11** is attached);

    (11) All payroll expenses or the amount of payroll expense excluded (if Form **CP 15 10** is attached); and

    (12) Special deductions for mining properties (royalties unless specifically included in coverage; actual depletion commonly known as unit or cost depletion – not percentage depletion; welfare and retirement fund charges based on tonnage; hired trucks).

**Example 1 (Underinsurance)**

| When: | The Net Income and operating expenses for the 12 months following the inception, or last previous anniversary date, of this policy at the described premises would have been: | $ 400,000 |
|---|---|---|
| | The Coinsurance percentage is: | 50% |
| | The Limit of Insurance is: | $ 150,000 |
| | The amount of loss is: | $ 80,000 |

Step (1): $400,000 x 50% = $200,000

    (the minimum amount of insurance to meet your Coinsurance requirements)

Step (2): $150,000 ÷ $200,000 = .75

Step (3): $80,000 x .75 = $60,000

We will pay no more than $60,000. The remaining $20,000 is not covered.

**Example 2 (Adequate Insurance)**

| When: | The Net Income and operating expenses for the 12 months following the inception, or last previous anniversary date, of this policy at the described premises would have been: | $ 400,000 |
|---|---|---|
| | The Coinsurance percentage is: | 50% |
| | The Limit of Insurance is: | $ 200,000 |
| | The amount of loss is: | $ 80,000 |

The minimum amount of insurance to meet your Coinsurance requirement is $200,000 ($400,000 x 50%). Therefore, the Limit of Insurance in this example is adequate and no penalty applies. We will pay no more than $80,000 (amount of loss).

This condition does not apply to Extra Expense Coverage.

**E. Optional Coverages**

    If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item.

    **1. Maximum Period Of Indemnity**

        **a.** The Additional Condition, Coinsurance, does not apply to this Coverage Form at the described premises to which this Optional Coverage applies.

 © Insurance Services Office, Inc., 2011

**b.** The most we will pay for the total of Business Income loss and Extra Expense is the lesser of:

**(1)** The amount of loss sustained and expenses incurred during the 120 days immediately following the beginning of the "period of restoration"; or

**(2)** The Limit Of Insurance shown in the Declarations.

**2. Monthly Limit Of Indemnity**

**a.** The Additional Condition, Coinsurance, does not apply to this Coverage Form at the described premises to which this Optional Coverage applies.

**b.** The most we will pay for loss of Business Income in each period of 30 consecutive days after the beginning of the "period of restoration" is:

**(1)** The Limit of Insurance, multiplied by

**(2)** The fraction shown in the Declarations for this Optional Coverage.

**Example**

| When: | The Limit of Insurance is: | $ 120,000 |
|---|---|---|
| | The fraction shown in the Declarations for this Optional Coverage is: | 1/4 |
| | The most we will pay for loss in each period of 30 consecutive days is: | $ 30,000 |
| | ($120,000 x 1/4 = $30,000) | |
| | If, in this example, the actual amount of loss is: | |
| | Days 1–30: | $ 40,000 |
| | Days 31–60: | $ 20,000 |
| | Days 61–90: | $ 30,000 |
| | | $ 90,000 |
| | We will pay: | |
| | Days 1–30: | $ 30,000 |
| | Days 31–60: | $ 20,000 |
| | Days 61–90: | $ 30,000 |
| | | $ 80,000 |

The remaining $10,000 is not covered.

**3. Business Income Agreed Value**

**a.** To activate this Optional Coverage:

**(1)** A Business Income Report/Work Sheet must be submitted to us and must show financial data for your "operations":

**(a)** During the 12 months prior to the date of the Work Sheet; and

**(b)** Estimated for the 12 months immediately following the inception of this Optional Coverage.

**(2)** The Declarations must indicate that the Business Income Agreed Value Optional Coverage applies, and an Agreed Value must be shown in the Declarations. The Agreed Value should be at least equal to:

**(a)** The Coinsurance percentage shown in the Declarations; multiplied by

**(b)** The amount of Net Income and operating expenses for the following 12 months you report on the Work Sheet.

**b.** The Additional Condition, Coinsurance, is suspended until:

**(1)** 12 months after the effective date of this Optional Coverage; or

**(2)** The expiration date of this policy;

whichever occurs first.

**c.** We will reinstate the Additional Condition, Coinsurance, automatically if you do not submit a new Work Sheet and Agreed Value:

**(1)** Within 12 months of the effective date of this Optional Coverage; or

**(2)** When you request a change in your Business Income Limit of Insurance.

**d.** If the Business Income Limit of Insurance is less than the Agreed Value, we will not pay more of any loss than the amount of loss multiplied by:

**(1)** The Business Income Limit of Insurance; divided by

**(2)** The Agreed Value.

**Example**

| When: | The Limit of Insurance is: | $ 100,000 |
|---|---|---|
| | The Agreed Value is: | $ 200,000 |
| | The amount of loss is: | $ 80,000 |

Step (1): $100,000 ÷ $200,000 = .50

Step (2): .50 x $80,000 = $40,000

We will pay $40,000. The remaining $40,000 is not covered.

**4. Extended Period Of Indemnity**

Under Paragraph **A.5.c., Extended Business Income,** the number 60 in Subparagraphs **(1)(b)** and **(2)(b)** is replaced by the number shown in the Declarations for this Optional Coverage.

## F. Definitions

1. "Finished stock" means stock you have manufactured.

   "Finished stock" also includes whiskey and alcoholic products being aged, unless there is a Coinsurance percentage shown for Business Income in the Declarations.

   "Finished stock" does not include stock you have manufactured that is held for sale on the premises of any retail outlet insured under this Coverage Part.

2. "Operations" means:

   a. Your business activities occurring at the described premises; and

   b. The tenantability of the described premises, if coverage for Business Income Including "Rental Value" or "Rental Value" applies.

3. "Period of restoration" means the period of time that:

   a. Begins:

      (1) 72 hours after the time of direct physical loss or damage for Business Income Coverage; or

      (2) Immediately after the time of direct physical loss or damage for Extra Expense Coverage;

      caused by or resulting from any Covered Cause of Loss at the described premises; and

   b. Ends on the earlier of:

      (1) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

      (2) The date when business is resumed at a new permanent location.

   "Period of restoration" does not include any increased period required due to the enforcement of or compliance with any ordinance or law that:

      (1) Regulates the construction, use or repair, or requires the tearing down, of any property; or

      (2) Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

   The expiration date of this policy will not cut short the "period of restoration".

4. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

5. "Rental Value" means Business Income that consists of:

   a. Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred as rental income from tenant occupancy of the premises described in the Declarations as furnished and equipped by you, including fair rental value of any portion of the described premises which is occupied by you; and

   b. Continuing normal operating expenses incurred in connection with that premises, including:

      (1) Payroll; and

      (2) The amount of charges which are the legal obligation of the tenant(s) but would otherwise be your obligations.

6. "Suspension" means:

   a. The slowdown or cessation of your business activities; or

   b. That a part or all of the described premises is rendered untenantable, if coverage for Business Income Including "Rental Value" or "Rental Value" applies.

© Insurance Services Office, Inc., 2011

This page intentionally left blank

Policy Number: WPP1839065 00

<div align="right">

**COMMERCIAL PROPERTY**
CP 00 90 07 88

</div>

# COMMERCIAL PROPERTY CONDITIONS

This Coverage Part is subject to the following conditions, the Common Policy Conditions and applicable Loss Conditions and Additional Conditions in Commercial Property Coverage Forms.

## A. CONCEALMENT, MISREPRESENTATION OR FRAUD

This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

1. This Coverage Part;
2. The Covered Property;
3. Your interest in the Covered Property; or
4. A claim under this Coverage Part.

## B. CONTROL OF PROPERTY

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Part at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

## C. INSURANCE UNDER TWO OR MORE COVERAGES

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

## D. LEGAL ACTION AGAINST US

No one may bring a legal action against us under this Coverage Part unless:

1. There has been full compliance with all of the terms of this Coverage Part; and
2. The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

## E. LIBERALIZATION

If we adopt any revision that would broaden the coverage under this Coverage Part without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this Coverage Part.

## F. NO BENEFIT TO BAILEE

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

## G. OTHER INSURANCE

1. You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis.

2. If there is other insurance covering the same loss or damage, other than that described in 1. above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

## H. POLICY PERIOD, COVERAGE TERRITORY

Under this Coverage Part:

1. We cover loss or damage commencing:
   a. During the policy period shown in the Declarations; and
   b. Within the coverage territory.

2. The coverage territory is:
   a. The United States of America (including its territories and possessions);
   b. Puerto Rico; and
   c. Canada.

**I. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US**

If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

1. Prior to a loss to your Covered Property or Covered Income.

2. After a loss to your Covered Property or Covered Income only if, at time of loss, that party is one of the following:

    **a.** Someone insured by this insurance;

    **b.** A business firm:

        **(1)** Owned or controlled by you; or

        **(2)** That owns or controls you; or

    **c.** Your tenant.

This will not restrict your insurance.

© ISO Properties, Inc., 2001

**COMMERCIAL PROPERTY**
**CP 01 31 03 13**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# GEORGIA CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART
STANDARD PROPERTY POLICY

**A.** When this endorsement is attached to the Standard Property Policy **CP 00 99**, the term Coverage Part in this endorsement is replaced by the term Policy.

**B.** The following exclusion and related provisions are added to Paragraph **B.2. Exclusions** in the Causes Of Loss Forms and to any Coverage Form or policy to which a Causes Of Loss Form is not attached:

  **1.** We will not pay for loss or damage arising out of any act committed:

    **a.** By or at the direction of any insured; and

    **b.** With the intent to cause a loss.

  **2.** However, this exclusion will not apply to deny coverage to an innocent co-insured, provided the loss:

    **a.** Is otherwise covered under this Coverage Part; and

    **b.** Arose out of an act of family violence by an insured against whom a family violence complaint is brought for such act.

  **3.** If we pay a claim pursuant to Paragraph **B.2.,** our payment to the insured is limited to that insured's legal interest in the property less any payments we first made to a mortgageholder or other party with a legal secured interest in the property. In no event will we pay more than the Limit of Insurance.

**C.** The following explanation is added with respect to application of the Exclusion of "Fungus", Wet Rot, Dry Rot And Bacteria and the Limited Coverage of the same title:

With respect to the portion of Covered Property that would still have required repair or replacement had there been no "fungus", wet rot or bacteria, this Exclusion and Limited Coverage will not serve to limit the amount of recovery for such repair or replacement.

However, the Exclusion and Limited Coverage shall continue to apply to:

  **1.** The cost to treat, contain, remove or dispose of "fungus", wet rot, dry rot or bacteria beyond that which is required to repair or replace Covered Property;

  **2.** The cost of testing as described in the Limited Coverage; and

  **3.** Any increase in loss under Business Income and/or Extra Expense Forms resulting from **1.** or **2.** above.

Regardless of whether the Exclusion and Limited Coverage apply to a loss, the Limit of Insurance on Covered Property is not increased. The maximum recoverable, for the total of the cost to repair or replace Covered Property and any additional covered cost to treat, contain, remove, dispose or test for "fungus", wet or dry rot or bacteria, is the applicable Limit of Insurance on the affected Covered Property.

 © Insurance Services Office, Inc., 2013

**D.** This Paragraph, **D.,** applies to the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM

CONDOMINIUM ASSOCIATION COVERAGE FORM

CONDOMINIUM COMMERCIAL UNIT OWNERS COVERAGE FORM

BUILDERS RISK COVERAGE FORM

STANDARD PROPERTY POLICY

Paragraph **a.** of the **Loss Payment** Condition is replaced by the following:

**a.** In the event of loss or damage covered by this Coverage Form, at our option we will either:

   **(1)** Repair, rebuild or replace the property with other property of like kind and quality, or pay the cost of such repair, rebuilding or replacement, as limited by Paragraph **b.** of this Loss Payment Condition and any other applicable policy provisions, such as the Limit of Insurance provision, the Valuation Condition or any provision which amends or supersedes the Valuation Condition; or

   **(2)** Take all or any part of the property at an agreed or appraised value.

With respect to Paragraph **a.(1),** this policy covers only the cost of repair, rebuilding or replacement. Such cost does not include recovery of, and therefore this policy does not pay any compensation for, an actual or perceived reduction in the market value of any property. But if the property that has sustained loss or damage is subject to an endorsement which explicitly addresses market value, then that endorsement will apply to such property in accordance with its terms.

 © Insurance Services Office, Inc., 2013 CP 01 31 03 13

**COMMERCIAL PROPERTY**
**CP 01 40 07 06**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART
STANDARD PROPERTY POLICY

**A.** The exclusion set forth in Paragraph **B.** applies to all coverage under all forms and endorsements that comprise this Coverage Part or Policy, including but not limited to forms or endorsements that cover property damage to buildings or personal property and forms or endorsements that cover business income, extra expense or action of civil authority.

**B.** We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

However, this exclusion does not apply to loss or damage caused by or resulting from "fungus", wet rot or dry rot. Such loss or damage is addressed in a separate exclusion in this Coverage Part or Policy.

**C.** With respect to any loss or damage subject to the exclusion in Paragraph **B.,** such exclusion supersedes any exclusion relating to "pollutants".

**D.** The following provisions in this Coverage Part or Policy are hereby amended to remove reference to bacteria:

**1.** Exclusion of "Fungus", Wet Rot, Dry Rot And Bacteria; and

**2.** Additional Coverage – Limited Coverage for "Fungus", Wet Rot, Dry Rot And Bacteria, including any endorsement increasing the scope or amount of coverage.

**E.** The terms of the exclusion in Paragraph **B.,** or the inapplicability of this exclusion to a particular loss, do not serve to create coverage for any loss that would otherwise be excluded under this Coverage Part or Policy.

 © ISO Properties, Inc., 2006

This page intentionally left blank

POLICY NUMBER: WPP1839065 00

**COMMERCIAL PROPERTY**
**CP 04 11 10 12**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# PROTECTIVE SAFEGUARDS

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART
STANDARD PROPERTY POLICY

### SCHEDULE

| Premises Number | Building Number | Protective Safeguards Symbols Applicable |
|---|---|---|
| 1 | 1 | P-1 |
| | | |
| | | |

| Protective Safeguards "P-9" Description: |
|---|
| |

| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |
|---|

**A.** The following is added to the Commercial Property Conditions:

**Protective Safeguards**

1. As a condition of this insurance, you are required to maintain the protective devices or services listed in the Schedule above.

2. The protective safeguards to which this endorsement applies are identified by the following symbols:

   **"P-1" Automatic Sprinkler System,** including related supervisory services.

   Automatic Sprinkler System means:

   **a.** Any automatic fire protective or extinguishing system, including connected:

   **(1)** Sprinklers and discharge nozzles;

   **(2)** Ducts, pipes, valves and fittings;

   **(3)** Tanks, their component parts and supports; and

   **(4)** Pumps and private fire protection mains.

   **b.** When supplied from an automatic fire protective system:

   **(1)** Non-automatic fire protective systems; and

   **(2)** Hydrants, standpipes and outlets.

   **"P-2" Automatic Fire Alarm,** protecting the entire building, that is:

   **a.** Connected to a central station; or

   **b.** Reporting to a public or private fire alarm station.

   **"P-3" Security Service,** with a recording system or watch clock, making hourly rounds covering the entire building, when the premises are not in actual operation.

   **"P-4" Service Contract** with a privately owned fire department providing fire protection service to the described premises.

   **"P-5" Automatic Commercial Cooking Exhaust And Extinguishing System** installed on cooking appliances and having the following components:

   **a.** Hood;

   **b.** Grease removal device;

   **c.** Duct system; and

   **d.** Wet chemical fire extinguishing equipment.

   **"P-9",** the protective system described in the Schedule.

© Insurance Services Office, Inc., 2011

**B.** The following is added to the **Exclusions** section of:

Causes Of Loss – Basic Form
Causes Of Loss – Broad Form
Causes Of Loss – Special Form
Mortgageholders Errors And Omissions Coverage Form
Standard Property Policy

We will not pay for loss or damage caused by or resulting from fire if, prior to the fire, you:

1. Knew of any suspension or impairment in any protective safeguard listed in the Schedule above and failed to notify us of that fact; or

2. Failed to maintain any protective safeguard listed in the Schedule above, and over which you had control, in complete working order.

If part of an Automatic Sprinkler System or Automatic Commercial Cooking Exhaust And Extinguishing System is shut off due to breakage, leakage, freezing conditions or opening of sprinkler heads, notification to us will not be necessary if you can restore full protection within 48 hours.

 © Insurance Services Office, Inc., 2011

COMMERCIAL PROPERTY
CP 10 30 10 12

# CAUSES OF LOSS – SPECIAL FORM

Words and phrases that appear in quotation marks have special meaning. Refer to Section **G.** Definitions.

## A. Covered Causes Of Loss

When Special is shown in the Declarations, Covered Causes of Loss means direct physical loss unless the loss is excluded or limited in this policy.

## B. Exclusions

**1.** We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

### a. Ordinance Or Law

The enforcement of or compliance with any ordinance or law:

**(1)** Regulating the construction, use or repair of any property; or

**(2)** Requiring the tearing down of any property, including the cost of removing its debris.

This exclusion, Ordinance Or Law, applies whether the loss results from:

**(a)** An ordinance or law that is enforced even if the property has not been damaged; or

**(b)** The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property, or removal of its debris, following a physical loss to that property.

### b. Earth Movement

**(1)** Earthquake, including tremors and aftershocks and any earth sinking, rising or shifting related to such event;

**(2)** Landslide, including any earth sinking, rising or shifting related to such event;

**(3)** Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

**(4)** Earth sinking (other than sinkhole collapse), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface.

But if Earth Movement, as described in **b.(1)** through **(4)** above, results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

**(5)** Volcanic eruption, explosion or effusion. But if volcanic eruption, explosion or effusion results in fire, building glass breakage or Volcanic Action, we will pay for the loss or damage caused by that fire, building glass breakage or Volcanic Action.

Volcanic Action means direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:

**(a)** Airborne volcanic blast or airborne shock waves;

**(b)** Ash, dust or particulate matter; or

**(c)** Lava flow.

With respect to coverage for Volcanic Action as set forth in **(5)(a)**, **(5)(b)** and **(5)(c)**, all volcanic eruptions that occur within any 168-hour period will constitute a single occurrence.

Volcanic Action does not include the cost to remove ash, dust or particulate matter that does not cause direct physical loss or damage to the described property.

This exclusion applies regardless of whether any of the above, in Paragraphs **(1)** through **(5)**, is caused by an act of nature or is otherwise caused.

 © Insurance Services Office, Inc., 2011

### c. Governmental Action

Seizure or destruction of property by order of governmental authority.

But we will pay for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this Coverage Part.

### d. Nuclear Hazard

Nuclear reaction or radiation, or radioactive contamination, however caused.

But if nuclear reaction or radiation, or radioactive contamination, results in fire, we will pay for the loss or damage caused by that fire.

### e. Utility Services

The failure of power, communication, water or other utility service supplied to the described premises, however caused, if the failure:

**(1)** Originates away from the described premises; or

**(2)** Originates at the described premises, but only if such failure involves equipment used to supply the utility service to the described premises from a source away from the described premises.

Failure of any utility service includes lack of sufficient capacity and reduction in supply.

Loss or damage caused by a surge of power is also excluded, if the surge would not have occurred but for an event causing a failure of power.

But if the failure or surge of power, or the failure of communication, water or other utility service, results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

Communication services include but are not limited to service relating to Internet access or access to any electronic, cellular or satellite network.

### f. War And Military Action

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

### g. Water

**(1)** Flood, surface water, waves (including tidal wave and tsunami), tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind (including storm surge);

**(2)** Mudslide or mudflow;

**(3)** Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment;

**(4)** Water under the ground surface pressing on, or flowing or seeping through:

    **(a)** Foundations, walls, floors or paved surfaces;

    **(b)** Basements, whether paved or not; or

    **(c)** Doors, windows or other openings; or

**(5)** Waterborne material carried or otherwise moved by any of the water referred to in Paragraph **(1)**, **(3)** or **(4)**, or material carried or otherwise moved by mudslide or mudflow.

This exclusion applies regardless of whether any of the above, in Paragraphs **(1)** through **(5)**, is caused by an act of nature or is otherwise caused. An example of a situation to which this exclusion applies is the situation where a dam, levee, seawall or other boundary or containment system fails in whole or in part, for any reason, to contain the water.

But if any of the above, in Paragraphs **(1)** through **(5)**, results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage (if sprinkler leakage is a Covered Cause of Loss).

### h. "Fungus", Wet Rot, Dry Rot And Bacteria

Presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria.

But if "fungus", wet or dry rot or bacteria result in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

© Insurance Services Office, Inc., 2011

This exclusion does not apply:

**(1)** When "fungus", wet or dry rot or bacteria result from fire or lightning; or

**(2)** To the extent that coverage is provided in the Additional Coverage, Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria, with respect to loss or damage by a cause of loss other than fire or lightning.

Exclusions **B.1.a.** through **B.1.h.** apply whether or not the loss event results in widespread damage or affects a substantial area.

**2.** We will not pay for loss or damage caused by or resulting from any of the following:

**a.** Artificially generated electrical, magnetic or electromagnetic energy that damages, disturbs, disrupts or otherwise interferes with any:

**(1)** Electrical or electronic wire, device, appliance, system or network; or

**(2)** Device, appliance, system or network utilizing cellular or satellite technology.

For the purpose of this exclusion, electrical, magnetic or electromagnetic energy includes but is not limited to:

**(a)** Electrical current, including arcing;

**(b)** Electrical charge produced or conducted by a magnetic or electromagnetic field;

**(c)** Pulse of electromagnetic energy; or

**(d)** Electromagnetic waves or microwaves.

But if fire results, we will pay for the loss or damage caused by that fire.

**b.** Delay, loss of use or loss of market.

**c.** Smoke, vapor or gas from agricultural smudging or industrial operations.

**d.(1)** Wear and tear;

**(2)** Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

**(3)** Smog;

**(4)** Settling, cracking, shrinking or expansion;

**(5)** Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals.

**(6)** Mechanical breakdown, including rupture or bursting caused by centrifugal force. But if mechanical breakdown results in elevator collision, we will pay for the loss or damage caused by that elevator collision.

**(7)** The following causes of loss to personal property:

**(a)** Dampness or dryness of atmosphere;

**(b)** Changes in or extremes of temperature; or

**(c)** Marring or scratching.

But if an excluded cause of loss that is listed in **2.d.(1)** through **(7)** results in a "specified cause of loss" or building glass breakage, we will pay for the loss or damage caused by that "specified cause of loss" or building glass breakage.

**e.** Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control. But if explosion of steam boilers, steam pipes, steam engines or steam turbines results in fire or combustion explosion, we will pay for the loss or damage caused by that fire or combustion explosion. We will also pay for loss or damage caused by or resulting from the explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

**f.** Continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.

**g.** Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by or resulting from freezing, unless:

**(1)** You do your best to maintain heat in the building or structure; or

**(2)** You drain the equipment and shut off the supply if the heat is not maintained.

**h.** Dishonest or criminal act (including theft) by you, any of your partners, members, officers, managers, employees (including temporary employees and leased workers), directors, trustees or authorized representatives, whether acting alone or in collusion with each other or with any other party; or theft by any person to whom you entrust the property for any purpose, whether acting alone or in collusion with any other party.

This exclusion:

**(1)** Applies whether or not an act occurs during your normal hours of operation;

**(2)** Does not apply to acts of destruction by your employees (including temporary employees and leased workers) or authorized representatives; but theft by your employees (including temporary employees and leased workers) or authorized representatives is not covered.

**i.** Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

**j.** Rain, snow, ice or sleet to personal property in the open.

**k.** Collapse, including any of the following conditions of property or any part of the property:

**(1)** An abrupt falling down or caving in;

**(2)** Loss of structural integrity, including separation of parts of the property or property in danger of falling down or caving in; or

**(3)** Any cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion as such condition relates to **(1)** or **(2)** above.

But if collapse results in a Covered Cause of Loss at the described premises, we will pay for the loss or damage caused by that Covered Cause of Loss.

This exclusion, **k.,** does not apply:

**(a)** To the extent that coverage is provided under the Additional Coverage, Collapse; or

**(b)** To collapse caused by one or more of the following:

**(i)** The "specified causes of loss";

**(ii)** Breakage of building glass;

**(iii)** Weight of rain that collects on a roof; or

**(iv)** Weight of people or personal property.

**l.** Discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss". But if the discharge, dispersal, seepage, migration, release or escape of "pollutants" results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

This exclusion, **l.,** does not apply to damage to glass caused by chemicals applied to the glass.

**m.** Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

**3.** We will not pay for loss or damage caused by or resulting from any of the following, **3.a.** through **3.c.** But if an excluded cause of loss that is listed in **3.a.** through **3.c.** results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**a.** Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in Paragraph **1.** above to produce the loss or damage.

**b.** Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

**c.** Faulty, inadequate or defective:

**(1)** Planning, zoning, development, surveying, siting;

**(2)** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

**(3)** Materials used in repair, construction, renovation or remodeling; or

**(4)** Maintenance;

of part or all of any property on or off the described premises.

 © Insurance Services Office, Inc., 2011

4. **Special Exclusions**

The following provisions apply only to the specified Coverage Forms:

a. **Business Income (And Extra Expense) Coverage Form, Business Income (Without Extra Expense) Coverage Form, Or Extra Expense Coverage Form**

We will not pay for:

(1) Any loss caused by or resulting from:

    (a) Damage or destruction of "finished stock"; or

    (b) The time required to reproduce "finished stock".

This exclusion does not apply to Extra Expense.

(2) Any loss caused by or resulting from direct physical loss or damage to radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers.

(3) Any increase of loss caused by or resulting from:

    (a) Delay in rebuilding, repairing or replacing the property or resuming "operations", due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or

    (b) Suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the "suspension" of "operations", we will cover such loss that affects your Business Income during the "period of restoration" and any extension of the "period of restoration" in accordance with the terms of the Extended Business Income Additional Coverage and the Extended Period Of Indemnity Optional Coverage or any variation of these.

(4) Any Extra Expense caused by or resulting from suspension, lapse or cancellation of any license, lease or contract beyond the "period of restoration".

(5) Any other consequential loss.

b. **Leasehold Interest Coverage Form**

(1) Paragraph **B.1.a.,** Ordinance Or Law, does not apply to insurance under this Coverage Form.

(2) We will not pay for any loss caused by:

    (a) Your cancelling the lease;

    (b) The suspension, lapse or cancellation of any license; or

    (c) Any other consequential loss.

c. **Legal Liability Coverage Form**

(1) The following exclusions do not apply to insurance under this Coverage Form:

    (a) Paragraph **B.1.a.** Ordinance Or Law;

    (b) Paragraph **B.1.c.** Governmental Action;

    (c) Paragraph **B.1.d.** Nuclear Hazard;

    (d) Paragraph **B.1.e.** Utility Services; and

    (e) Paragraph **B.1.f.** War And Military Action.

(2) The following additional exclusions apply to insurance under this Coverage Form:

    (a) **Contractual Liability**

We will not defend any claim or "suit", or pay damages that you are legally liable to pay, solely by reason of your assumption of liability in a contract or agreement. But this exclusion does not apply to a written lease agreement in which you have assumed liability for building damage resulting from an actual or attempted burglary or robbery, provided that:

      (i) Your assumption of liability was executed prior to the accident; and

      (ii) The building is Covered Property under this Coverage Form.

    (b) **Nuclear Hazard**

We will not defend any claim or "suit", or pay any damages, loss, expense or obligation, resulting from nuclear reaction or radiation, or radioactive contamination, however caused.

 © Insurance Services Office, Inc., 2011

**5. Additional Exclusion**

The following provisions apply only to the specified property:

**Loss Or Damage To Products**

We will not pay for loss or damage to any merchandise, goods or other product caused by or resulting from error or omission by any person or entity (including those having possession under an arrangement where work or a portion of the work is outsourced) in any stage of the development, production or use of the product, including planning, testing, processing, packaging, installation, maintenance or repair. This exclusion applies to any effect that compromises the form, substance or quality of the product. But if such error or omission results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**C. Limitations**

The following limitations apply to all policy forms and endorsements, unless otherwise stated:

1. We will not pay for loss of or damage to property, as described and limited in this section. In addition, we will not pay for any loss that is a consequence of loss or damage as described and limited in this section.

   a. Steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment. But we will pay for loss of or damage to such equipment caused by or resulting from an explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

   b. Hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment, other than an explosion.

   c. The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

      (1) The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

      (2) The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

   d. Building materials and supplies not attached as part of the building or structure, caused by or resulting from theft.

      However, this limitation does not apply to:

      (1) Building materials and supplies held for sale by you, unless they are insured under the Builders Risk Coverage Form; or

      (2) Business Income Coverage or Extra Expense Coverage.

   e. Property that is missing, where the only evidence of the loss or damage is a shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to the property.

   f. Property that has been transferred to a person or to a place outside the described premises on the basis of unauthorized instructions.

   g. Lawns, trees, shrubs or plants which are part of a vegetated roof, caused by or resulting from:

      (1) Dampness or dryness of atmosphere or of soil supporting the vegetation;

      (2) Changes in or extremes of temperature;

      (3) Disease;

      (4) Frost or hail; or

      (5) Rain, snow, ice or sleet.

2. We will not pay for loss of or damage to the following types of property unless caused by the "specified causes of loss" or building glass breakage:

   a. Animals, and then only if they are killed or their destruction is made necessary.

   b. Fragile articles such as statuary, marbles, chinaware and porcelains, if broken. This restriction does not apply to:

      (1) Glass; or

      (2) Containers of property held for sale.

   c. Builders' machinery, tools and equipment owned by you or entrusted to you, provided such property is Covered Property.

      However, this limitation does not apply:

      (1) If the property is located on or within 100 feet of the described premises, unless the premises is insured under the Builders Risk Coverage Form; or

      (2) To Business Income Coverage or to Extra Expense Coverage.

3. The special limit shown for each category, **a.** through **d.**, is the total limit for loss of or damage to all property in that category. The special limit applies to any one occurrence of theft, regardless of the types or number of articles that are lost or damaged in that occurrence. The special limits are (unless a higher limit is shown in the Declarations):

   **a.** $2,500 for furs, fur garments and garments trimmed with fur.

   **b.** $2,500 for jewelry, watches, watch movements, jewels, pearls, precious and semiprecious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limit does not apply to jewelry and watches worth $100 or less per item.

   **c.** $2,500 for patterns, dies, molds and forms.

   **d.** $250 for stamps, tickets, including lottery tickets held for sale, and letters of credit.

   These special limits are part of, not in addition to, the Limit of Insurance applicable to the Covered Property.

   This limitation, **C.3.**, does not apply to Business Income Coverage or to Extra Expense Coverage.

4. We will not pay the cost to repair any defect to a system or appliance from which water, other liquid, powder or molten material escapes. But we will pay the cost to repair or replace damaged parts of fire-extinguishing equipment if the damage:

   **a.** Results in discharge of any substance from an automatic fire protection system; or

   **b.** Is directly caused by freezing.

   However, this limitation does not apply to Business Income Coverage or to Extra Expense Coverage.

**D. Additional Coverage – Collapse**

The coverage provided under this Additional Coverage, Collapse, applies only to an abrupt collapse as described and limited in **D.1.** through **D.7.**

1. For the purpose of this Additional Coverage, Collapse, abrupt collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose.

2. We will pay for direct physical loss or damage to Covered Property, caused by abrupt collapse of a building or any part of a building that is insured under this Coverage Form or that contains Covered Property insured under this Coverage Form, if such collapse is caused by one or more of the following:

   **a.** Building decay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse;

   **b.** Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an insured prior to collapse;

   **c.** Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs during the course of the construction, remodeling or renovation.

   **d.** Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs after the construction, remodeling or renovation is complete, but only if the collapse is caused in part by:

      **(1)** A cause of loss listed in **2.a.** or **2.b.**;

      **(2)** One or more of the "specified causes of loss";

      **(3)** Breakage of building glass;

      **(4)** Weight of people or personal property; or

      **(5)** Weight of rain that collects on a roof.

3. This **Additional Coverage – Collapse** does **not** apply to:

   **a.** A building or any part of a building that is in danger of falling down or caving in;

   **b.** A part of a building that is standing, even if it has separated from another part of the building; or

   **c.** A building that is standing or any part of a building that is standing, even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

4. With respect to the following property:

   **a.** Outdoor radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers;

**b.** Awnings, gutters and downspouts;

**c.** Yard fixtures;

**d.** Outdoor swimming pools;

**e.** Fences;

**f.** Piers, wharves and docks;

**g.** Beach or diving platforms or appurtenances;

**h.** Retaining walls; and

**i.** Walks, roadways and other paved surfaces;

if an abrupt collapse is caused by a cause of loss listed in **2.a.** through **2.d.**, we will pay for loss or damage to that property only if:

    **(1)** Such loss or damage is a direct result of the abrupt collapse of a building insured under this Coverage Form; and

    **(2)** The property is Covered Property under this Coverage Form.

**5.** If personal property abruptly falls down or caves in and such collapse is **not** the result of abrupt collapse of a building, we will pay for loss or damage to Covered Property caused by such collapse of personal property only if:

    **a.** The collapse of personal property was caused by a cause of loss listed in **2.a.** through **2.d.;**

    **b.** The personal property which collapses is inside a building; and

    **c.** The property which collapses is not of a kind listed in **4.,** regardless of whether that kind of property is considered to be personal property or real property.

The coverage stated in this Paragraph **5.** does not apply to personal property if marring and/or scratching is the only damage to that personal property caused by the collapse.

**6.** This Additional Coverage, Collapse, does not apply to personal property that has not abruptly fallen down or caved in, even if the personal property shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**7.** This Additional Coverage, Collapse, will not increase the Limits of Insurance provided in this Coverage Part.

**8.** The term Covered Cause of Loss includes the Additional Coverage, Collapse, as described and limited in **D.1.** through **D.7.**

**E. Additional Coverage – Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria**

**1.** The coverage described in **E.2.** and **E.6.** only applies when the "fungus", wet or dry rot or bacteria are the result of one or more of the following causes that occur during the policy period and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence:

    **a.** A "specified cause of loss" other than fire or lightning; or

    **b.** Flood, if the Flood Coverage Endorsement applies to the affected premises.

This Additional Coverage does not apply to lawns, trees, shrubs or plants which are part of a vegetated roof.

**2.** We will pay for loss or damage by "fungus", wet or dry rot or bacteria. As used in this Limited Coverage, the term loss or damage means:

    **a.** Direct physical loss or damage to Covered Property caused by "fungus", wet or dry rot or bacteria, including the cost of removal of the "fungus", wet or dry rot or bacteria;

    **b.** The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungus", wet or dry rot or bacteria; and

    **c.** The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that "fungus", wet or dry rot or bacteria are present.

**3.** The coverage described under **E.2.** of this Limited Coverage is limited to $15,000. Regardless of the number of claims, this limit is the most we will pay for the total of all loss or damage arising out of all occurrences of "specified causes of loss" (other than fire or lightning) and Flood which take place in a 12-month period (starting with the beginning of the present annual policy period). With respect to a particular occurrence of loss which results in "fungus", wet or dry rot or bacteria, we will not pay more than a total of $15,000 even if the "fungus", wet or dry rot or bacteria continue to be present or active, or recur, in a later policy period.

© Insurance Services Office, Inc., 2011

**4.** The coverage provided under this Limited Coverage does not increase the applicable Limit of Insurance on any Covered Property. If a particular occurrence results in loss or damage by "fungus", wet or dry rot or bacteria, and other loss or damage, we will not pay more, for the total of all loss or damage, than the applicable Limit of Insurance on the affected Covered Property.

If there is covered loss or damage to Covered Property, not caused by "fungus", wet or dry rot or bacteria, loss payment will not be limited by the terms of this Limited Coverage, except to the extent that "fungus", wet or dry rot or bacteria cause an increase in the loss. Any such increase in the loss will be subject to the terms of this Limited Coverage.

**5.** The terms of this Limited Coverage do not increase or reduce the coverage provided under Paragraph **F.2.** (Water Damage, Other Liquids, Powder Or Molten Material Damage) of this Causes Of Loss form or under the Additional Coverage, Collapse.

**6.** The following, **6.a.** or **6.b.,** applies only if Business Income and/or Extra Expense Coverage applies to the described premises and only if the "suspension" of "operations" satisfies all terms and conditions of the applicable Business Income and/or Extra Expense Coverage Form:

   **a.** If the loss which resulted in "fungus", wet or dry rot or bacteria does not in itself necessitate a "suspension" of "operations", but such "suspension" is necessary due to loss or damage to property caused by "fungus", wet or dry rot or bacteria, then our payment under Business Income and/or Extra Expense is limited to the amount of loss and/or expense sustained in a period of not more than 30 days. The days need not be consecutive.

   **b.** If a covered "suspension" of "operations" was caused by loss or damage other than "fungus", wet or dry rot or bacteria but remediation of "fungus", wet or dry rot or bacteria prolongs the "period of restoration", we will pay for loss and/or expense sustained during the delay (regardless of when such a delay occurs during the "period of restoration"), but such coverage is limited to 30 days. The days need not be consecutive.

**F. Additional Coverage Extensions**

  **1. Property In Transit**

    This Extension applies only to your personal property to which this form applies.

    **a.** You may extend the insurance provided by this Coverage Part to apply to your personal property (other than property in the care, custody or control of your salespersons) in transit more than 100 feet from the described premises. Property must be in or on a motor vehicle you own, lease or operate while between points in the coverage territory.

    **b.** Loss or damage must be caused by or result from one of the following causes of loss:

     **(1)** Fire, lightning, explosion, windstorm or hail, riot or civil commotion, or vandalism.

     **(2)** Vehicle collision, upset or overturn. Collision means accidental contact of your vehicle with another vehicle or object. It does not mean your vehicle's contact with the roadbed.

     **(3)** Theft of an entire bale, case or package by forced entry into a securely locked body or compartment of the vehicle. There must be visible marks of the forced entry.

    **c.** The most we will pay for loss or damage under this Extension is $5,000.

    This Coverage Extension is additional insurance. The Additional Condition, Coinsurance, does not apply to this Extension.

  **2. Water Damage, Other Liquids, Powder Or Molten Material Damage**

    If loss or damage caused by or resulting from covered water or other liquid, powder or molten material damage loss occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes. This Coverage Extension does not increase the Limit of Insurance.

  **3. Glass**

    **a.** We will pay for expenses incurred to put up temporary plates or board up openings if repair or replacement of damaged glass is delayed.

**b.** We will pay for expenses incurred to remove or replace obstructions when repairing or replacing glass that is part of a building. This does not include removing or replacing window displays.

This Coverage Extension **F.3.** does not increase the Limit of Insurance.

## G. Definitions

**1.** "Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

**2.** "Specified causes of loss" means the following: fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire-extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

**a.** Sinkhole collapse means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. This cause of loss does not include:

**(1)** The cost of filling sinkholes; or

**(2)** Sinking or collapse of land into man-made underground cavities.

**b.** Falling objects does not include loss or damage to:

**(1)** Personal property in the open; or

**(2)** The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

**c.** Water damage means:

**(1)** Accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of a plumbing, heating, air conditioning or other system or appliance (other than a sump system including its related equipment and parts), that is located on the described premises and contains water or steam; and

**(2)** Accidental discharge or leakage of water or waterborne material as the direct result of the breaking apart or cracking of a water or sewer pipe that is located off the described premises and is part of a municipal potable water supply system or municipal sanitary sewer system, if the breakage or cracking is caused by wear and tear.

But water damage does not include loss or damage otherwise excluded under the terms of the Water Exclusion. Therefore, for example, there is no coverage under this policy in the situation in which discharge or leakage of water results from the breaking apart or cracking of a pipe which was caused by or related to weather-induced flooding, even if wear and tear contributed to the breakage or cracking. As another example, and also in accordance with the terms of the Water Exclusion, there is no coverage for loss or damage caused by or related to weather-induced flooding which follows or is exacerbated by pipe breakage or cracking attributable to wear and tear.

To the extent that accidental discharge or leakage of water falls within the criteria set forth in **c.(1)** or **c.(2)** of this definition of "specified causes of loss," such water is not subject to the provisions of the Water Exclusion which preclude coverage for surface water or water under the surface of the ground.

© Insurance Services Office, Inc., 2011

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# BUSINESS INCOME COVERAGE PROVIDED ON AN ACTUAL LOSS SUSTAINED BASIS (ALS-24 MONTHS)

This endorsement modifies insurance provided under the following:

> BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM
> BUSINESS INCOME (WITHOUT EXTRA EXPENSE) COVERAGE FORM

The following is added at the end of the first paragraph of **B. Limits Of Insurance.**

If the phrase "ALS for 24 months" is shown as the Limit of Insurance, we will only pay for loss of Business Income that you sustain during the "period of restoration" and that occurs within 24 consecutive months after the date of direct physical loss or damage. We will only pay for payroll expenses for 60 days following the date of direct physical loss or damage, unless a different number of days is shown in the Declarations.

Payroll expense includes:

1. Payroll;
2. Special compensation such as bonuses and other incentive compensation;
3. Employee benefits, if directly related to payroll;
4. FICA payments you pay;
5. Union Dues you pay; and
6. Workers' Compensation premiums.

**CP990096 0518**                                                                 **Page 1 of 1**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

This page intentionally left blank

# COMMERCIAL CRIME COVERAGE FORM
# (LOSS SUSTAINED FORM)

Various provisions in this Policy restrict coverage. Read the entire Policy carefully to determine rights, duties and what is or is not covered.

Throughout this Policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section F. Definitions.

## A. Insuring Agreements

Coverage is provided under the following Insuring Agreements for which a Limit Of Insurance is shown in the Declarations and applies to loss that you sustain resulting directly from an "occurrence" taking place during the Policy Period shown in the Declarations, except as provided in Condition **E.1.k.** or **E.1.l.**, which is "discovered" by you during the Policy Period shown in the Declarations or during the period of time provided in the Extended Period To Discover Loss Condition **E.1.g.**:

### 1. Employee Theft

We will pay for loss of or damage to "money", "securities" and "other property" resulting directly from "theft" committed by an "employee", whether identified or not, acting alone or in collusion with other persons.

For the purposes of this Insuring Agreement, "theft" shall also include forgery.

### 2. Forgery Or Alteration

a. We will pay for loss resulting directly from "forgery" or alteration of checks, drafts, promissory notes, or similar written promises, orders or directions to pay a sum certain in "money" that are:

(1) Made or drawn by or drawn upon you; or

(2) Made or drawn by one acting as your agent;

or that are purported to have been so made or drawn.

For the purposes of this Insuring Agreement, a substitute check as defined in the Check Clearing for the 21st Century Act shall be treated the same as the original it replaced.

b. If you are sued for refusing to pay any instrument covered in Paragraph **2.a.,** on the basis that it has been forged or altered, and you have our written consent to defend against the suit, we will pay for any reasonable legal expenses that you incur and pay in that defense. The amount that we will pay for such legal expenses is in addition to the Limit of Insurance applicable to this Insuring Agreement.

### 3. Inside The Premises – Theft Of Money And Securities

We will pay for:

a. Loss of "money" and "securities" inside the "premises" or "financial institution premises":

(1) Resulting directly from "theft" committed by a person present inside such "premises" or "financial institution premises"; or

(2) Resulting directly from disappearance or destruction.

b. Loss from damage to the "premises" or its exterior resulting directly from an actual or attempted "theft" of "money" and "securities", if you are the owner of the "premises" or are liable for damage to it.

c. Loss of or damage to a locked safe, vault, cash register, cash box or cash drawer located inside the "premises" resulting directly from an actual or attempted "theft" of, or unlawful entry into, those containers.

### 4. Inside The Premises – Robbery Or Safe Burglary Of Other Property

We will pay for:

a. Loss of or damage to "other property":

(1) Inside the "premises" resulting directly from an actual or attempted "robbery" of a "custodian"; or

(2) Inside the "premises" in a safe or vault resulting directly from an actual or attempted "safe burglary".

© Insurance Services Office, Inc., 2015

**b.** Loss from damage to the "premises" or its exterior resulting directly from an actual or attempted "robbery" or "safe burglary" of "other property", if you are the owner of the "premises" or are liable for damage to it.

**c.** Loss of or damage to a locked safe or vault located inside the "premises" resulting directly from an actual or attempted "robbery" or "safe burglary".

**5. Outside The Premises**

We will pay for:

**a.** Loss of "money" and "securities" outside the "premises" in the care and custody of a "messenger" or an armored motor vehicle company resulting directly from "theft", disappearance or destruction.

**b.** Loss of or damage to "other property" outside the "premises" in the care and custody of a "messenger" or an armored motor vehicle company resulting directly from an actual or attempted "robbery".

**6. Computer And Funds Transfer Fraud**

**a.** We will pay for:

**(1)** Loss resulting directly from a fraudulent:

**(a)** Entry of "electronic data" or "computer program" into; or

**(b)** Change of "electronic data" or "computer program" within;

any "computer system" owned, leased or operated by you, provided the fraudulent entry or fraudulent change causes, with regard to Paragraphs **6.a.(1)(a)** and **6.a.(1)(b):**

**(i)** "Money", "securities" or "other property" to be transferred, paid or delivered; or

**(ii)** Your account at a "financial institution" to be debited or deleted.

**(2)** Loss resulting directly from a "fraudulent instruction" directing a "financial institution" to debit your "transfer account" and to transfer, pay or deliver "money" or "securities" from that account.

**b.** As used in Paragraph **6.a.(1)**, fraudulent entry or fraudulent change of "electronic data" or "computer program" shall include such entry or change made by an "employee" acting, in good faith, upon a "fraudulent instruction" received from a computer software contractor who has a written agreement with you to design, implement or service "computer programs" for a "computer system" covered under this Insuring Agreement.

**7. Money Orders And Counterfeit Money**

We will pay for loss resulting directly from your having, in good faith, accepted in exchange for merchandise, "money" or services:

**a.** Money orders issued by any post office, express company or "financial institution" that are not paid upon presentation; or

**b.** "Counterfeit money" that is acquired during the regular course of business.

**B. Limit Of Insurance**

The most we will pay for all loss resulting directly from an "occurrence" is the applicable Limit Of Insurance shown in the Declarations.

If any loss is covered under more than one Insuring Agreement or coverage, the most we will pay for such loss shall not exceed the largest Limit of Insurance available under any one of those Insuring Agreements or coverages.

**C. Deductible**

We will not pay for loss resulting directly from an "occurrence" unless the amount of loss exceeds the Deductible Amount shown in the Declarations. We will then pay the amount of loss in excess of the Deductible Amount, up to the Limit of Insurance.

**D. Exclusions**

**1.** This insurance does not cover:

**a. Acts Committed By You, Your Partners Or Your Members**

Loss resulting from "theft" or any other dishonest act committed by:

**(1)** You; or

**(2)** Any of your partners or "members";

whether acting alone or in collusion with other persons.

### b. Acts Committed By Your Employees Learned Of By You Prior To The Policy Period

Loss caused by an "employee" if the "employee" had also committed "theft" or any other dishonest act prior to the effective date of this insurance and you or any of your partners, "members", "managers", officers, directors or trustees, not in collusion with the "employee", learned of such "theft" or dishonest act prior to the Policy Period shown in the Declarations.

### c. Acts Committed By Your Employees, Managers, Directors, Trustees Or Representatives

Loss resulting from "theft" or any other dishonest act committed by any of your "employees", "managers", directors, trustees or authorized representatives:

(1) Whether acting alone or in collusion with other persons; or

(2) While performing services for you or otherwise;

except when covered under Insuring Agreement **A.1.**

### d. Confidential Or Personal Information

Loss resulting from:

(1) The disclosure or use of another person's or organization's confidential or personal information; or

(2) The disclosure of your confidential or personal information. However, this Paragraph **1.d.(2)** does not apply to loss otherwise covered under this insurance that results directly from the use of your confidential or personal information.

For the purposes of this exclusion, confidential or personal information includes, but is not limited to, patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

### e. Data Security Breach

Fees, costs, fines, penalties and other expenses incurred by you which are related to the access to or disclosure of another person's or organization's confidential or personal information including, but not limited to, patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

### f. Governmental Action

Loss resulting from seizure or destruction of property by order of governmental authority.

### g. Indirect Loss

Loss that is an indirect result of an "occurrence" covered by this insurance including, but not limited to, loss resulting from:

(1) Your inability to realize income that you would have realized had there been no loss of or damage to "money", "securities" or "other property";

(2) Payment of damages of any type for which you are legally liable. But, we will pay compensatory damages arising directly from a loss covered under this insurance; or

(3) Payment of costs, fees or other expenses you incur in establishing either the existence or the amount of loss under this insurance.

### h. Legal Fees, Costs And Expenses

Fees, costs and expenses incurred by you which are related to any legal action, except when covered under Insuring Agreement **A.2.**

### i. Nuclear Hazard

Loss or damage resulting from nuclear reaction or radiation, or radioactive contamination, however caused.

### j. Pollution

Loss or damage caused by or resulting from pollution. Pollution means the discharge, dispersal, seepage, migration, release or escape of any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

### k. Virtual Currency

Loss involving virtual currency of any kind, by whatever name known, whether actual or fictitious including, but not limited to, digital currency, crypto currency or any other type of electronic currency.

### l. War And Military Action

Loss or damage resulting from:

(1) War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**2.** Insuring Agreement **A.1.** does not cover:

**a. Inventory Shortages**

Loss, or that part of any loss, the proof of which as to its existence or amount is dependent upon:

**(1)** An inventory computation; or

**(2)** A profit and loss computation.

However, where you establish wholly apart from such computations that you have sustained a loss, then you may offer your inventory records and actual physical count of inventory in support of the amount of loss claimed.

**b. Trading**

Loss resulting from trading, whether in your name or in a genuine or fictitious account.

**c. Warehouse Receipts**

Loss resulting from the fraudulent or dishonest signing, issuing, cancelling or failing to cancel, a warehouse receipt or any papers connected with it.

**3.** Insuring Agreements **A.3., A.4.** and **A.5.** do not cover:

**a. Accounting Or Arithmetical Errors Or Omissions**

Loss resulting from accounting or arithmetical errors or omissions.

**b. Exchanges Or Purchases**

Loss resulting from the giving or surrendering of property in any exchange or purchase.

**c. Fire**

Loss or damage resulting from fire, however caused, except:

**(1)** Loss of or damage to "money" and "securities"; and

**(2)** Loss from damage to a safe or vault.

**d. Money Operated Devices**

Loss of property contained in any money operated device unless the amount of "money" deposited in it is recorded by a continuous recording instrument in the device.

**e. Motor Vehicles Or Equipment And Accessories**

Loss of or damage to motor vehicles, trailers or semitrailers or equipment and accessories attached to them.

**f. Transfer Or Surrender Of Property**

**(1)** Loss of or damage to property after it has been transferred or surrendered to a person or place outside the "premises" or "financial institution premises":

**(a)** On the basis of unauthorized instructions; or

**(b)** As a result of a threat including, but not limited to:

**(i)** A threat to do bodily harm to any person;

**(ii)** A threat to do damage to any property;

**(iii)** A threat to introduce a denial of service attack into any "computer system";

**(iv)** A threat to introduce a virus or other malicious instruction into any "computer system" which is designed to damage, destroy or corrupt "electronic data" or "computer programs" stored within the "computer system";

**(v)** A threat to contaminate, pollute or render substandard your products or goods; or

**(vi)** A threat to disseminate, divulge or utilize:

  **i.** Your confidential information;

  **ii.** Confidential or personal information of another person or organization; or

  **iii.** Weaknesses in the source code within any "computer system".

   © Insurance Services Office, Inc., 2015   CR 00 21 11 15

**(2)** However, this exclusion does not apply under Insuring Agreement **A.5.** to loss of "money", "securities" or "other property" while outside the "premises" in the care and custody of a "messenger" if you:

**(a)** Had no knowledge of any threat at the time the conveyance began; or

**(b)** Had knowledge of a threat at the time the conveyance began, but the loss was not related to the threat.

**g. Vandalism**

Loss from damage to the "premises" or its exterior, or to any safe, vault, cash register, cash box, cash drawer or "other property" by vandalism or malicious mischief.

**h. Voluntary Parting Of Title To Or Possession Of Property**

Loss resulting from your, or anyone else acting on your express or implied authority, being induced by any dishonest act to voluntarily part with title to or possession of any property.

**4.** Insuring Agreement **A.6.** does not cover:

**a. Authorized Access**

Loss resulting from a fraudulent:

**(1)** Entry of "electronic data" or "computer program" into; or

**(2)** Change of "electronic data" or "computer program" within;

any "computer system" owned, leased or operated by you by a person or organization with authorized access to that "computer system", except when covered under Insuring Agreement **A.6.b.**

**b. Credit Card Transactions**

Loss resulting from the use or purported use of credit, debit, charge, access, convenience, identification, stored-value or other cards or the information contained on such cards.

**c. Exchanges Or Purchases**

Loss resulting from the giving or surrendering of property in any exchange or purchase.

**d. Fraudulent Instructions**

Loss resulting from an "employee" or "financial institution" acting upon any instruction to:

**(1)** Transfer, pay or deliver "money", "securities" or "other property"; or

**(2)** Debit or delete your account;

which instruction proves to be fraudulent, except when covered under Insuring Agreement **A.6.a.(2)** or **A.6.b.**

**e. Inventory Shortages**

Loss, or that part of any loss, the proof of which as to its existence or amount is dependent upon:

**(1)** An inventory computation; or

**(2)** A profit and loss computation.

**E. Conditions**

The following conditions apply in addition to the Common Policy Conditions:

**1. Conditions Applicable To All Insuring Agreements**

**a. Additional Premises Or Employees**

If, while this insurance is in force, you establish any additional "premises" or hire additional "employees", other than through consolidation or merger with, or purchase or acquisition of assets or liabilities of, another entity, such "premises" and "employees" shall automatically be covered under this insurance. Notice to us of an increase in the number of "premises" or "employees" is not required, and no additional premium will be charged for the remainder of the Policy Period shown in the Declarations.

**b. Concealment, Misrepresentation Or Fraud**

This insurance is void in any case of fraud by you as it relates to this insurance at any time. It is also void if you or any other Insured, at any time, intentionally conceals or misrepresents a material fact concerning:

**(1)** This insurance;

**(2)** The property covered under this insurance;

**(3)** Your interest in the property covered under this insurance; or

**(4)** A claim under this insurance.

© Insurance Services Office, Inc., 2015

**c. Consolidation – Merger Or Acquisition**

If you consolidate or merge with, or purchase or acquire the assets or liabilities of, another entity:

(1) You must give us written notice as soon as possible and obtain our written consent to extend the coverage provided by this insurance to such consolidated or merged entity or such purchased or acquired assets or liabilities. We may condition our consent by requiring payment of an additional premium; but

(2) For the first 90 days after the effective date of such consolidation, merger or purchase or acquisition of assets or liabilities, the coverage provided by this insurance shall apply to such consolidated or merged entity or such purchased or acquired assets or liabilities, provided that all "occurrences" causing or contributing to a loss involving such consolidation, merger or purchase or acquisition of assets or liabilities, must take place after the effective date of such consolidation, merger or purchase or acquisition of assets or liabilities.

**d. Cooperation**

You must cooperate with us in all matters pertaining to this insurance as stated in its terms and conditions.

**e. Duties In The Event Of Loss**

After you "discover" a loss or a situation that may result in loss of or damage to "money", "securities" or "other property", you must:

(1) Notify us as soon as possible. If you have reason to believe that any loss (except for loss covered under Insuring Agreement **A.1.** or **A.2.**) involves a violation of law, you must also notify the local law enforcement authorities;

(2) Give us a detailed, sworn proof of loss within 120 days;

(3) Cooperate with us in the investigation and settlement of any claim;

(4) Produce for our examination all pertinent records;

(5) Submit to examination under oath at our request and give us a signed statement of your answers; and

(6) Secure all of your rights of recovery against any person or organization responsible for the loss and do nothing to impair those rights.

**f. Employee Benefit Plans**

The "employee benefit plans" shown in the Declarations (hereinafter referred to as Plan) are included as Insureds under Insuring Agreement **A.1.**, subject to the following:

(1) If any Plan is insured jointly with any other entity under this insurance, you or the Plan Administrator is responsible for selecting a Limit of Insurance for Insuring Agreement **A.1.** that is sufficient to provide a Limit of Insurance for each Plan that is at least equal to that required under ERISA as if each Plan were separately insured.

(2) With respect to loss sustained or "discovered" by any such Plan, Insuring Agreement **A.1.** is replaced by the following:

We will pay for loss of or damage to "money", "securities" and "other property" resulting directly from fraudulent or dishonest acts committed by an "employee", whether identified or not, acting alone or in collusion with other persons.

(3) If the first Named Insured is an entity other than a Plan, any payment we make for loss sustained by any Plan will be made to the Plan sustaining the loss.

(4) If two or more Plans are insured under this insurance, any payment we make for loss:

(a) Sustained by two or more Plans; or

(b) Of commingled "money", "securities" or "other property" of two or more Plans;

resulting directly from an "occurrence", will be made to each Plan sustaining loss in the proportion that the Limit of Insurance required under ERISA for each Plan bears to the total of those limits.

(5) The Deductible Amount applicable to Insuring Agreement **A.1.** does not apply to loss sustained by any Plan.

 © Insurance Services Office, Inc., 2015

**g. Extended Period To Discover Loss**

We will pay for loss that you sustained prior to the effective date of cancellation of this insurance, which is "discovered" by you:

**(1)** No later than one year from the date of that cancellation. However, this extended period to "discover" loss terminates immediately upon the effective date of any other insurance obtained by you, whether from us or another insurer, replacing in whole or in part the coverage afforded under this insurance, whether or not such other insurance provides coverage for loss sustained prior to its effective date.

**(2)** No later than one year from the date of that cancellation with regard to any "employee benefit plan".

**h. Joint Insured**

**(1)** If more than one Insured is named in the Declarations, the first Named Insured will act for itself and for every other Insured for all purposes of this insurance. If the first Named Insured ceases to be covered, then the next Named Insured will become the first Named Insured.

**(2)** If any Insured, or partner, "member", "manager", officer, director or trustee of that Insured has knowledge of any information relevant to this insurance, that knowledge is considered knowledge of every Insured.

**(3)** An "employee" of any Insured is considered to be an "employee" of every Insured.

**(4)** If this insurance or any of its coverages are cancelled as to any Insured, loss sustained by that Insured is covered only if it is "discovered" by you:

**(a)** No later than one year from the date of that cancellation. However, this extended period to "discover" loss terminates immediately upon the effective date of any other insurance obtained by that Insured, whether from us or another insurer, replacing in whole or in part the coverage afforded under this insurance, whether or not such other insurance provides coverage for loss sustained prior to its effective date.

**(b)** No later than one year from the date of that cancellation with regard to any "employee benefit plan".

**(5)** We will not pay more for loss sustained by more than one Insured than the amount we would pay if all such loss had been sustained by one Insured.

**(6)** Payment by us to the first Named Insured for loss sustained by any Insured, or payment by us to any "employee benefit plan" for loss sustained by that Plan, shall fully release us on account of such loss.

**i. Legal Action Against Us**

You may not bring any legal action against us involving loss:

**(1)** Unless you have complied with all the terms of this insurance;

**(2)** Until 90 days after you have filed proof of loss with us; and

**(3)** Unless brought within two years from the date you "discovered" the loss.

If any limitation in this condition is prohibited by law, such limitation is amended so as to equal the minimum period of limitation provided by such law.

**j. Liberalization**

If we adopt any revision that would broaden the coverage under this insurance without additional premium within 45 days prior to or during the Policy Period shown in the Declarations, the broadened coverage will immediately apply to this insurance.

**k. Loss Sustained During Prior Insurance Issued By Us Or Any Affiliate**

**(1) Loss Sustained Partly During This Insurance And Partly During Prior Insurance**

If you "discover" loss during the Policy Period shown in the Declarations, resulting directly from an "occurrence" taking place:

**(a)** Partly during the Policy Period shown in the Declarations; and

**(b)** Partly during the policy period(s) of any prior cancelled insurance that we or any affiliate issued to you or any predecessor in interest;

and this insurance became effective at the time of cancellation of the prior insurance, we will first settle the amount of loss that you sustained during this Policy Period. We will then settle the remaining amount of loss that you sustained during the policy period(s) of the prior insurance.

**(2) Loss Sustained Entirely During Prior Insurance**

If you "discover" loss during the Policy Period shown in the Declarations, resulting directly from an "occurrence" taking place entirely during the policy period(s) of any prior cancelled insurance that we or any affiliate issued to you or any predecessor in interest, we will pay for the loss, provided:

**(a)** This insurance became effective at the time of cancellation of the prior insurance; and

**(b)** The loss would have been covered under this insurance had it been in effect at the time of the "occurrence".

We will first settle the amount of loss that you sustained during the most recent prior insurance. We will then settle any remaining amount of loss that you sustained during the policy period(s) of any other prior insurance.

**(3)** In settling loss under Paragraphs **k.(1)** and **k.(2):**

**(a)** The most we will pay for the entire loss is the highest single Limit of Insurance applicable during the period of loss, whether such limit was written under this insurance or was written under the prior insurance issued by us.

**(b)** We will apply the applicable Deductible Amount shown in the Declarations to the amount of loss sustained under this insurance. If no loss was sustained under this insurance, we will apply the Deductible Amount shown in the Declarations to the amount of loss sustained under the most recent prior insurance.

If the Deductible Amount is larger than the amount of loss sustained under this insurance, or the most recent prior insurance, we will apply the remaining Deductible Amount to the remaining amount of loss sustained during the prior insurance.

We will not apply any other Deductible Amount that may have been applicable to the loss.

**(4)** The following examples demonstrate how we will settle losses subject to this condition:

**Example Number 1**

The Insured sustained a covered loss of $10,000 resulting directly from an "occurrence" taking place during the terms of Policy **A** and Policy **B.**

**Policy A**

The current policy. Written at a Limit of Insurance of $50,000 and a Deductible Amount of $5,000.

**Policy B**

Issued prior to Policy **A.** Written at a Limit of Insurance of $50,000 and a Deductible Amount of $5,000.

**Settlement Of Loss**

The amount of loss sustained under Policy **A** is $2,500 and under Policy **B,** $7,500.

The highest single Limit of Insurance applicable to this entire loss is $50,000 written under Policy **A.** The Policy **A** Deductible Amount of $5,000 applies. The loss is settled as follows:

**(a)** The amount of loss sustained under Policy **A** ($2,500) is settled first. The amount we will pay is nil ($0.00) because the amount of loss is less than the Deductible Amount (i.e., $2,500 loss - $5,000 deductible = $0.00).

**(b)** The remaining amount of loss sustained under Policy **B** ($7,500) is settled next. The amount recoverable is $5,000 after the remaining Deductible Amount from Policy **A** of $2,500 is applied to the loss (i.e., $7,500 loss - $2,500 deductible = $5,000).

The most we will pay for this loss is $5,000.

**Example Number 2**

The Insured sustained a covered loss of $250,000 resulting directly from an "occurrence" taking place during the terms of Policy **A** and Policy **B.**

**Policy A**

The current policy. Written at a Limit of Insurance of $125,000 and a Deductible Amount of $10,000.

© Insurance Services Office, Inc., 2015

### Policy B

Issued prior to Policy **A.** Written at a Limit of Insurance of $150,000 and a Deductible Amount of $25,000.

### Settlement Of Loss

The amount of loss sustained under Policy **A** is $175,000 and under Policy **B,** $75,000.

The highest single Limit of Insurance applicable to this entire loss is $150,000 written under Policy **B.** The Policy **A** Deductible Amount of $10,000 applies. The loss is settled as follows:

**(a)** The amount of loss sustained under Policy **A** ($175,000) is settled first. The amount we will pay is the Policy **A** Limit of $125,000 because $175,000 loss - $10,000 deductible = $165,000, which is greater than the $125,000 policy limit.

**(b)** The remaining amount of loss sustained under Policy **B** ($75,000) is settled next. The amount we will pay is $25,000 (i.e., $150,000 Policy **B** limit - $125,000 paid under Policy **A** = $25,000).

The most we will pay for this loss is $150,000.

### Example Number 3

The Insured sustained a covered loss of $2,000,000 resulting directly from an "occurrence" taking place during the terms of Policies **A, B, C** and **D.**

### Policy A

The current policy. Written at a Limit of Insurance of $1,000,000 and a Deductible Amount of $100,000.

### Policy B

Issued prior to Policy **A.** Written at a Limit of Insurance of $750,000 and a Deductible Amount of $75,000.

### Policy C

Issued prior to Policy **B.** Written at a Limit of Insurance of $500,000 and a Deductible Amount of $50,000.

### Policy D

Issued prior to Policy **C.** Written at a Limit of Insurance of $500,000 and a Deductible Amount of $50,000.

### Settlement Of Loss

The amount of loss sustained under Policy **A** is $350,000; under Policy **B,** $250,000; under Policy **C,** $600,000; and under Policy **D,** $800,000.

The highest single Limit of Insurance applicable to this entire loss is $1,000,000 written under Policy **A.** The Policy **A** Deductible Amount of $100,000 applies. The loss is settled as follows:

**(a)** The amount of loss sustained under Policy **A** ($350,000) is settled first. The amount we will pay is $250,000 (i.e., $350,000 loss - $100,000 deductible = $250,000).

**(b)** The amount of loss sustained under Policy **B** ($250,000) is settled next. The amount we will pay is $250,000 (no deductible is applied).

**(c)** The amount of loss sustained under Policy **C** ($600,000) is settled next. The amount we will pay is $500,000, the policy limit (no deductible is applied).

**(d)** We will not make any further payment under Policy **D,** as the maximum amount payable under the highest single Limit of Insurance applying to the loss of $1,000,000 under Policy **A** has been satisfied.

The most we will pay for this loss is $1,000,000.

### I. Loss Sustained During Prior Insurance Not Issued By Us Or Any Affiliate

**(1)** If you "discover" loss during the Policy Period shown in the Declarations, resulting directly from an "occurrence" taking place during the policy period of any prior cancelled insurance that was issued to you or a predecessor in interest by another company, and the period of time to discover loss under that insurance had expired, we will pay for the loss under this insurance, provided:

**(a)** This insurance became effective at the time of cancellation of the prior insurance; and

**(b)** The loss would have been covered under this insurance had it been in effect at the time of the "occurrence".

**(2)** In settling loss subject to this condition:

    **(a)** The most we will pay for the entire loss is the lesser of the Limits of Insurance applicable during the period of loss, whether such limit was written under this insurance or was written under the prior cancelled insurance.

    **(b)** We will apply the applicable Deductible Amount shown in the Declarations to the amount of loss sustained under the prior cancelled insurance.

**(3)** The insurance provided under this condition is subject to the following:

    **(a)** If loss covered under this condition is also partially covered under Condition **E.1.k.**, the amount recoverable under this condition is part of, not in addition to, the amount recoverable under Condition **E.1.k.**

    **(b)** For loss covered under this condition that is not subject to Paragraph **l.(3)(a)**, the amount recoverable under this condition is part of, not in addition to, the Limit of Insurance applicable to the loss covered under this insurance and is limited to the lesser of the amount recoverable under:

        **(i)** This insurance as of its effective date; or

        **(ii)** The prior cancelled insurance had it remained in effect.

**m. Other Insurance**

If other valid and collectible insurance is available to you for loss covered under this insurance, our obligations are limited as follows:

**(1) Primary Insurance**

When this insurance is written as primary insurance, and:

    **(a)** You have other insurance subject to the same terms and conditions as this insurance, we will pay our share of the covered loss. Our share is the proportion that the applicable Limit Of Insurance shown in the Declarations bears to the total limit of all insurance covering the same loss.

    **(b)** You have other insurance covering the same loss other than that described in Paragraph **m.(1)(a)**, we will only pay for the amount of loss that exceeds:

        **(i)** The Limit of Insurance and Deductible Amount of that other insurance, whether you can collect on it or not; or

        **(ii)** The Deductible Amount shown in the Declarations;

        whichever is greater. Our payment for loss is subject to the terms and conditions of this insurance.

**(2) Excess Insurance**

    **(a)** When this insurance is written excess over other insurance, we will only pay for the amount of loss that exceeds the Limit of Insurance and Deductible Amount of that other insurance, whether you can collect on it or not. Our payment for loss is subject to the terms and conditions of this insurance.

    **(b)** However, if loss covered under this insurance is subject to a deductible, we will reduce the Deductible Amount shown in the Declarations by the sum total of all such other insurance plus any Deductible Amount applicable to that other insurance.

**n. Ownership Of Property; Interests Covered**

The property covered under this insurance is limited to property:

**(1)** That you own or lease;

**(2)** That is held by you in any capacity; or

**(3)** For which you are legally liable, provided you were liable for the property prior to the time the loss was sustained.

However, this insurance is for your benefit only. It provides no rights or benefits to any other person or organization. Any claim for loss that is covered under this insurance must be presented by you.

**o. Records**

You must keep records of all property covered under this insurance so we can verify the amount of any loss.

 © Insurance Services Office, Inc., 2015

**p. Recoveries**

(1) Any recoveries, whether effected before or after any payment under this insurance, whether made by us or by you, shall be applied net of the expense of such recovery:

(a) First, to you in satisfaction of your covered loss in excess of the amount paid under this insurance;

(b) Second, to us in satisfaction of amounts paid in settlement of your claim;

(c) Third, to you in satisfaction of any Deductible Amount; and

(d) Fourth, to you in satisfaction of any loss not covered under this insurance.

(2) Recoveries do not include any recovery:

(a) From insurance, suretyship, reinsurance, security or indemnity taken for our benefit; or

(b) Of original "securities" after duplicates of them have been issued.

**q. Territory**

This insurance covers loss that you sustain resulting directly from an "occurrence" taking place within the United States of America (including its territories and possessions), Puerto Rico and Canada.

**r. Transfer Of Your Rights Of Recovery Against Others To Us**

You must transfer to us all your rights of recovery against any person or organization for any loss you sustained and for which we have paid or settled. You must also do everything necessary to secure those rights and do nothing after loss to impair them.

**s. Valuation – Settlement**

The value of any loss for purposes of coverage under this insurance shall be determined as follows:

(1) **Money**

Loss of "money" but only up to and including its face value. We will, at your option, pay for loss of "money" issued by any country other than the United States of America:

(a) At face value in the "money" issued by that country; or

(b) In the United States of America dollar equivalent, determined by the rate of exchange published in The Wall Street Journal on the day the loss was "discovered".

(2) **Securities**

Loss of "securities" but only up to and including their value at the close of business on the day the loss was "discovered". We may, at our option:

(a) Pay the market value of such "securities" or replace them in kind, in which event you must assign to us all your rights, title and interest in and to those "securities"; or

(b) Pay the cost of any Lost Securities Bond required in connection with issuing duplicates of the "securities". However, we will be liable only for the payment of so much of the cost of the bond as would be charged for a bond having a penalty not exceeding the lesser of the:

(i) Market value of the "securities" at the close of business on the day the loss was "discovered"; or

(ii) Limit of Insurance applicable to the "securities".

(3) **Property Other Than Money And Securities**

(a) Loss of or damage to "other property" or loss from damage to the "premises" or its exterior for the replacement cost of the property without deduction for depreciation. However, we will not pay more than the least of the following:

(i) The Limit of Insurance applicable to the lost or damaged property;

(ii) The cost to replace the lost or damaged property with property of comparable material and quality and used for the same purpose; or

(iii) The amount you actually spend that is necessary to repair or replace the lost or damaged property.

© Insurance Services Office, Inc., 2015

**(b)** We will not pay on a replacement cost basis for any loss or damage to property covered under Paragraph **s.(3)(a):**

    **(i)** Until the lost or damaged property is actually repaired or replaced; and

    **(ii)** Unless the repair or replacement is made as soon as reasonably possible after the loss or damage.

If the lost or damaged property is not repaired or replaced, we will pay on an actual cash value basis.

**(c)** We will, at your option, pay for loss or damage to such property:

    **(i)** In the "money" of the country in which the loss or damage was sustained; or

    **(ii)** In the United States of America dollar equivalent of the "money" of the country in which the loss or damage was sustained, determined by the rate of exchange published in The Wall Street Journal on the day the loss was "discovered".

**(d)** Any property that we pay for or replace becomes our property.

**2. Conditions Applicable To Insuring Agreement A.1.**

  **a. Termination As To Any Employee**

This Insuring Agreement terminates as to any "employee":

    **(1)** As soon as:

      **(a)** You; or

      **(b)** Any of your partners, "members", "managers", officers, directors or trustees not in collusion with the "employee";

learn of "theft" or any other dishonest act committed by the "employee" whether before or after becoming employed by you; or

    **(2)** On the date specified in a notice mailed to the first Named Insured. That date will be at least 30 days after the date of mailing.

We will mail or deliver our notice to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

  **b. Territory**

We will pay for loss caused by any "employee" while temporarily outside the territory specified in Territory Condition **E.1.q.** for a period of not more than 90 consecutive days.

**3. Conditions Applicable To Insuring Agreement A.2.**

  **a. Deductible Amount**

The Deductible Amount does not apply to legal expenses paid under Insuring Agreement **A.2.**

  **b. Electronic And Mechanical Signatures**

We will treat signatures that are produced or reproduced electronically, mechanically or by other means the same as handwritten signatures.

  **c. Proof Of Loss**

You must include with your proof of loss any instrument involved in that loss or, if that is not possible, an affidavit setting forth the amount and cause of loss.

  **d. Territory**

We will cover loss that you sustain resulting directly from an "occurrence" taking place anywhere in the world. Territory Condition **E.1.q.** does not apply to Insuring Agreement **A.2.**

**4. Conditions Applicable To Insuring Agreements A.4. And A.5.**

  **a. Armored Motor Vehicle Companies**

Under Insuring Agreement **A.5.**, we will only pay for the amount of loss you cannot recover:

    **(1)** Under your contract with the armored motor vehicle company; and

    **(2)** From any insurance or indemnity carried by, or for the benefit of customers of, the armored motor vehicle company.

  **b. Special Limit Of Insurance For Specified Property**

We will only pay up to $5,000 for any one "occurrence" of loss of or damage to:

    **(1)** Precious metals, precious or semiprecious stones, pearls, furs, or completed or partially completed articles made of or containing such materials that constitute the principal value of such articles; or

**(2)** Manuscripts, drawings, or records of any kind, or the cost of reconstructing them or reproducing any information contained in them.

**5. Conditions Applicable To Insuring Agreement A.6.**

**a. Special Limit Of Insurance For Specified Property**

We will only pay up to $5,000 for any one "occurrence" of loss of or damage to manuscripts, drawings, or records of any kind, or the cost of reconstructing them or reproducing any information contained in them.

**b. Territory**

We will cover loss that you sustain resulting directly from an "occurrence" taking place anywhere in the world. Territory Condition **E.1.q.** does not apply to Insuring Agreement **A.6.**

**F. Definitions**

1. "Computer program" means a set of related electronic instructions, which direct the operation and function of a computer or devices connected to it, which enable the computer or devices to receive, process, store or send "electronic data".

2. "Computer system" means:

   **a.** Computers, including Personal Digital Assistants (PDAs) and other transportable or handheld devices, electronic storage devices and related peripheral components;

   **b.** Systems and applications software; and

   **c.** Related communications networks;

   by which "electronic data" is collected, transmitted, processed, stored or retrieved.

3. "Counterfeit money" means an imitation of "money" which is intended to deceive and to be taken as genuine.

4. "Custodian" means you, or any of your partners or "members", or any "employee" while having care and custody of property inside the "premises", excluding any person while acting as a "watchperson" or janitor.

5. "Discover" or "discovered" means the time when you first become aware of facts which would cause a reasonable person to assume that a loss of a type covered by this insurance has been or will be incurred, regardless of when the act or acts causing or contributing to such loss occurred, even though the exact amount or details of loss may not then be known.

"Discover" or "discovered" also means the time when you first receive notice of an actual or potential claim in which it is alleged that you are liable to a third party under circumstances which, if true, would constitute a loss under this insurance.

6. "Electronic data" means information, facts, images or sounds stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software) on data storage devices, including hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

7. "Employee":

   **a.** Means:

   **(1)** Any natural person:

   **(a)** While in your service and for the first 30 days immediately after termination of service, unless such termination is due to "theft" or any dishonest act committed by the "employee";

   **(b)** Whom you compensate directly by salary, wages or commissions; and

   **(c)** Whom you have the right to direct and control while performing services for you;

   **(2)** Any natural person who is furnished temporarily to you:

   **(a)** To substitute for a permanent "employee", as defined in Paragraph **7.a.(1)**, who is on leave; or

   **(b)** To meet seasonal or short-term work load conditions;

   while that person is subject to your direction and control and performing services for you;

   **(3)** Any natural person who is leased to you under a written agreement between you and a labor leasing firm, to perform duties related to the conduct of your business, but does not mean a temporary "employee" as defined in Paragraph **7.a.(2)**;

   **(4)** Any natural person who is:

   **(a)** A trustee, officer, employee, administrator or manager, except an administrator or manager who is an independent contractor, of any "employee benefit plan"; or

**(b)** Your director or trustee while that person is engaged in handling "money", "securities" or "other property" of any "employee benefit plan";

**(5)** Any natural person who is a former "employee", partner, "member", "manager", director or trustee retained by you as a consultant while performing services for you;

**(6)** Any natural person who is a guest student or intern pursuing studies or duties;

**(7)** Any natural person employed by an entity merged or consolidated with you prior to the effective date of this insurance; and

**(8)** Any natural person who is your "manager", director or trustee while:

   **(a)** Performing acts within the scope of the usual duties of an "employee"; or

   **(b)** Acting as a member of any committee duly elected or appointed by resolution of your board of directors or board of trustees to perform specific, as distinguished from general, directorial acts on your behalf.

**b.** Does not mean:

Any agent, broker, factor, commission merchant, consignee, independent contractor or representative of the same general character not specified in Paragraph **7.a.**

**8.** "Employee benefit plan" means any welfare or pension benefit plan shown in the Declarations that you sponsor and that is subject to the Employee Retirement Income Security Act of 1974 (ERISA) and any amendments thereto.

**9.** "Financial institution" means:

**a.** With regard to Insuring Agreement **A.3.:**

**(1)** A bank, savings bank, savings and loan association, trust company, credit union or similar depository institution; or

**(2)** An insurance company.

**b.** With regard to Insuring Agreement **A.6.:**

**(1)** A bank, savings bank, savings and loan association, trust company, credit union or similar depository institution;

**(2)** An insurance company; or

**(3)** A stock brokerage firm or investment company.

**c.** Other than Insuring Agreements **A.3.** and **A.6.,** any financial institution.

**10.** "Financial institution premises" means the interior of that portion of any building occupied by a "financial institution" as defined in Paragraph **F.9.a.**

**11.** "Forgery" means the signing of the name of another person or organization with intent to deceive; it does not mean a signature which consists in whole or in part of one's own name signed with or without authority, in any capacity, for any purpose.

**12.** "Fraudulent instruction" means:

**a.** With regard to Insuring Agreement **A.6.a.(2):**

**(1)** A computer, telefacsimile, telephone or other electronic instruction directing a "financial institution" to debit your "transfer account" and to transfer, pay or deliver "money" or "securities" from that "transfer account", which instruction purports to have been issued by you, but which in fact was fraudulently issued by someone else without your knowledge or consent; or

**(2)** A written instruction (other than those covered under Insuring Agreement **A.2.**) issued to a "financial institution" directing the "financial institution" to debit your "transfer account" and to transfer, pay or deliver "money" or "securities" from that "transfer account", through an electronic funds transfer system at specified times or under specified conditions, which instruction purports to have been issued by you, but which in fact was issued, forged or altered by someone else without your knowledge or consent.

**b.** With regard to Insuring Agreement **A.6.b.:**

A computer, telefacsimile, telephone or other electronic, written or voice instruction directing an "employee" to enter or change "electronic data" or "computer programs" within a "computer system" covered under the Insuring Agreement, which instruction in fact was fraudulently issued by your computer software contractor.

**13.** "Manager" means a natural person serving in a directorial capacity for a limited liability company.

**14.** "Member" means an owner of a limited liability company represented by its membership interest who, if a natural person, may also serve as a "manager".

15. "Messenger" means you, or your relative, or any of your partners or "members", or any "employee" while having care and custody of property outside the "premises".

16. "Money" means:

   **a.** Currency, coins and bank notes in current use and having a face value;

   **b.** Traveler's checks and money orders held for sale to the public; and

   **c.** In addition, includes:

   **(1)** Under Insuring Agreements **A.1.** and **A.2.,** deposits in your account at any "financial institution"; and

   **(2)** Under Insuring Agreement **A.6.,** deposits in your account at a "financial institution" as defined in Paragraph **F.9.b.**

17. "Occurrence" means:

   **a.** Under Insuring Agreement **A.1.:**

   **(1)** An individual act;

   **(2)** The combined total of all separate acts whether or not related; or

   **(3)** A series of acts whether or not related;

   committed by an "employee" acting alone or in collusion with other persons, during the Policy Period shown in the Declarations, except as provided under Condition **E.1.k.** or **E.1.l.**

   **b.** Under Insuring Agreement **A.2.:**

   **(1)** An individual act;

   **(2)** The combined total of all separate acts whether or not related; or

   **(3)** A series of acts whether or not related;

   committed by a person acting alone or in collusion with other persons, involving one or more instruments, during the Policy Period shown in the Declarations, except as provided under Condition **E.1.k.** or **E.1.l.**

   **c.** Under all other Insuring Agreements:

   **(1)** An individual act or event;

   **(2)** The combined total of all separate acts or events whether or not related; or

   **(3)** A series of acts or events whether or not related;

   committed by a person acting alone or in collusion with other persons, or not committed by any person, during the Policy Period shown in the Declarations, except as provided under Condition **E.1.k.** or **E.1.l.**

18. "Other property" means any tangible property other than "money" and "securities" that has intrinsic value. "Other property" does not include "computer programs", "electronic data" or any property specifically excluded under this insurance.

19. "Premises" means the interior of that portion of any building you occupy in conducting your business.

20. "Robbery" means the unlawful taking of property from the care and custody of a person by one who has:

   **a.** Caused or threatened to cause that person bodily harm; or

   **b.** Committed an obviously unlawful act witnessed by that person.

21. "Safe burglary" means the unlawful taking of:

   **a.** Property from within a locked safe or vault by a person unlawfully entering the safe or vault as evidenced by marks of forcible entry upon its exterior; or

   **b.** A safe or vault from inside the "premises".

22. "Securities" means negotiable and nonnegotiable instruments or contracts representing either "money" or property and includes:

   **a.** Tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and

   **b.** Evidences of debt issued in connection with credit or charge cards, which cards are not issued by you;

   but does not include "money".

23. "Theft" means the unlawful taking of property to the deprivation of the Insured.

24. "Transfer account" means an account maintained by you at a "financial institution" from which you can initiate the transfer, payment or delivery of "money" or "securities":

   **a.** By means of computer, telefacsimile, telephone or other electronic instructions; or

   **b.** By means of written instructions (other than those covered under Insuring Agreement **A.2.**) establishing the conditions under which such transfers are to be initiated by such "financial institution" through an electronic funds transfer system.

25. "Watchperson" means any person you retain specifically to have care and custody of property inside the "premises" and who has no other duties.

 © Insurance Services Office, Inc., 2015

This page intentionally left blank

THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY.

# HIRED AUTO AND NON-OWNED AUTO LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

SCHEDULE

Insurance is provided only with respect to those coverages for which a specific premium charge is shown:

| Coverage | | Additional Premium |
|---|---|---|
| Hired Auto Liability and Non-Owned Auto Liability | $1,000,000 | $459 |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**A.  HIRED AUTO LIABILITY**

The insurance provided under **COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY** (Section I -Coverages) applies to "bodily injury" or "property damage" arising out of the maintenance or use of a "hired auto" by you or your "employees" in the course of your business.

**B.  NON-OWNED AUTO LIABILITY**

The insurance provided under **COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY** (Section I -Coverages) applies to "bodily injury" or "property damage" arising out of the use of a "non-owned auto" by any person other than you in the course of your business.

**C.**  With respect to the insurance provided by this endorsement:

1.  Subparagraphs b., c., e., g., h., j., k., l., m., and n. of paragraph 2., Exclusions of **COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY** (Section I - Coverages) do not apply.

2.  The following exclusions are added to paragraph 2., Exclusions of **COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY** (Section I - Coverages):

a.  "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1)  That the insured would have in the absence of the contract or agreement; or

      **(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement.

  **b.** "Bodily injury" to:

      **(1)** An "employee" of the insured arising out of and in the course of:

         **(a)** Employment by the insured; or
         **(b)** Performing duties related to the conduct of the insured's business; or

      **(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of paragraph (1) above.

    This exclusion applies:

      **(1)** Whether the insured may be liable as an employer or in any other capacity; and

      **(2)** To any obligation to share damages with or repay someone else who must pay the damages because of the injury.

    This exclusion does not apply to:

      **(1)** Liability assumed by the insured under an "insured contract"; or

      **(2)** "Bodily injury" to domestic "employees" not entitled to Workers Compensation benefits.

  **c.** "Property damage" to:

      **(1)** Property owned or being transported by, or rented or loaned to the insured; or

      **(2)** Property in the care, custody or control of the insured.

**D.** For the purposes of this endorsement only, WHO IS AN INSURED (Section II) is replaced by the following:

Each of the following is an insured under this Insurance to the extent set forth below:

**1.** You.

**2.** Any other person using a "hired auto" with your permission.

**3.** With respect to a "non-owned auto", any partner or "executive officer" of yours, but only while such "non-owned auto" is being used in your business.

**4.** Any other person or organization, but only with respect to their liability because of acts or omissions of an insured under paragraphs 1., 2., or 3. above.

None of the following is an insured:

**1.** Any person engaged in the business of his or her employer with respect to "bodily injury" to any co-employee of such person injured in the course of employment;

**2.** Any partner or "executive officer" with respect to any "auto" owned by such partner or officer or a member of his or her household;

3. Any person while employed in or otherwise engaged in performing duties related to the conduct of an "auto business", other than an "auto business" you operate;

4. The owner or lessee (of whom you are a sublessee) of a "hired auto" or the owner of a "non-owned auto" or any agent or "employee" of any such owner or lessee;

5. Any person or organization with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

E. For the purposes of this endorsement only, the definition of "insured contract" in the **DEFINITIONS** Section is amended by the addition of the following:

9. "Insured contract' means:

g. That part of any contract or agreement entered into, as part of your business pertaining to the rental or lease, by you or any of your "employees", of any "auto". However, such contract or agreement shall not be considered an "insured contract" to the extent it obligates you or any of your "employees" to pay for "property damage" to any "auto" rented or leased by you or any of your "employees".

F. For the purposes of this endorsement only, the following definitions are added to the **DEFINITIONS** Section:

1. "Auto business" means the business or occupation of selling, repairing, servicing, storing or parking "autos".

2. "Hired auto" means any "auto" you lease, hire, rent or borrow. This does not include any "auto" you lease, hire, rent or borrow from any of your "employees", your partners or your "executive officers", or members of their households,

3. "Non-owned auto" means any "auto" you do not own, lease, hire, rent or borrow which is used In connection with your business. This includes "autos" owned by your "employees", your partners or your "executive officers", or members of their households, but only while used in your business or your personal affairs.

This page intentionally left blank

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Copyright, Insurance Services Office, Inc., 1998

This page intentionally left blank

POLICY NUMBER: WPP1839065 00

IL 00 21 09 08

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**1.** The insurance does not apply:

   **A.** Under any Liability Coverage, to "bodily injury" or "property damage":

   **(1)** With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

   **(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   **B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   **C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

   **(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

   **(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

   **(3)** The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

**2.** As used in this endorsement:

   "Hazardous properties" includes radioactive, toxic or explosive properties.

   "Nuclear material" means "source material", "special nuclear material" or "by-product material".

© ISO Properties, Inc., 2007

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

(a) Any "nuclear reactor";

(b) Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

IL 02 62 02 15

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# GEORGIA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraph **A.1.** of the **Cancellation** Common Policy Condition is replaced by the following:

**1.** The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation stating a future date on which the policy is to be cancelled, subject to the following:

**a.** If only the interest of the first Named Insured is affected, the effective date of cancellation will be either the date we receive notice from the first Named Insured or the date specified in the notice, whichever is later. However, upon receiving a written notice of cancellation from the first Named Insured, we may waive the requirement that the notice state the future date of cancellation, by confirming the date and time of cancellation in writing to the first Named Insured.

**b.** If by statute, regulation or contract this policy may not be cancelled unless notice is given to a governmental agency, mortgagee or other third party, we will mail or deliver at least 10 days' notice to the first Named Insured and the third party as soon as practicable after receiving the first Named Insured's request for cancellation.

Our notice will state the effective date of cancellation, which will be the later of the following:

**(1)** 10 days from the date of mailing or delivering our notice; or

**(2)** The effective date of cancellation stated in the first Named Insured's notice to us.

**B.** Paragraph **A.5.** of the **Cancellation** Common Policy Condition is replaced by the following:

**5. Premium Refund**

**a.** If this policy is cancelled, we will send the first Named Insured any premium refund due.

**b.** If we cancel, the refund will be pro rata, except as provided in **c.** below.

**c.** If the cancellation results from failure of the first Named Insured to pay, when due, any premium to us or any amount, when due, under a premium finance agreement, then the refund may be less than pro rata. Calculation of the return premium at less than pro rata represents a penalty charged on unearned premium.

**d.** If the first Named Insured cancels, the refund may be less than pro rata.

**e.** The cancellation will be effective even if we have not made or offered a refund.

© Insurance Services Office, Inc., 2014

**C.** The following is added to the **Cancellation** Common Policy Condition and supersedes any other provisions to the contrary:

If we decide to:

**1.** Cancel or nonrenew this policy; or

**2.** Increase current policy premium by more than 15% (other than any increase due to change in risk, exposure or experience modification or resulting from an audit of auditable coverages); or

**3.** Change any policy provision which would limit or restrict coverage;

then:

We will mail or deliver notice of our action (including the dollar amount of any increase in renewal premium of more than 15%) to the first Named Insured and lienholder, if any, at the last mailing address known to us. Except as applicable as described in Paragraph **D.** or **E.** below, we will mail or deliver notice at least:

    **a.** 10 days before the effective date of cancellation if this policy has been in effect less than 60 days or if we cancel for nonpayment of premium; or

    **b.** 45 days before the effective date of cancellation if this policy has been in effect 60 or more days and we cancel for a reason other than nonpayment of premium; or

    **c.** 45 days before the expiration date of this policy if we decide to nonrenew, increase the premium or limit or restrict coverage.

**D.** The following provisions apply to insurance covering residential real property only provided under the:

Capital Assets Program (Output Policy) Coverage Part;

Commercial Property Coverage Part;

Farm Coverage Part;

if the named insured is a natural person.

With respect to such insurance, the following is added to the **Cancellation** Common Policy Condition and supersedes any provisions to the contrary except as applicable as described in Paragraph **E.:**

**1.** When this policy has been in effect for 60 days or less and is not a renewal with us, we may cancel for any reason by notifying the first Named Insured at least 10 days before the date cancellation takes effect.

**2.** When this policy has been in effect for more than 60 days, or at any time if it is a renewal with us, we may cancel for one or more of the following reasons:

    **a.** Nonpayment of premium, whether payable to us or to our agent;

    **b.** Upon discovery of fraud, concealment of a material fact, or material misrepresentation made by or with the knowledge of any person insured under this policy in obtaining this policy, continuing this policy or presenting a claim under this policy;

    **c.** Upon the occurrence of a change in the risk which substantially increases any hazard insured against; or

    **d.** Upon the violation of any of the material terms or conditions of this policy by any person insured under this policy.

We may cancel by providing notice to the first Named Insured at least:

    **(1)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

    **(2)** 45 days before the effective date of cancellation if we cancel for any of the reasons listed in **b., c.** or **d.** above.

**E.** With respect to a policy that is written to permit an audit, the following is added to the **Cancellation** Common Policy Condition:

If you fail to submit to or allow an audit for the current or most recently expired term, we may cancel this policy subject to the following:

**1.** We will make two documented efforts to send you and your agent notification of potential cancellation. After the second notice has been sent, we have the right to cancel this policy by mailing or delivering a written notice of cancellation to the first Named Insured at least 10 days before the effective date of cancellation, but not within 20 days of the first documented effort.

**2.** If we cancel this policy based on your failure to submit to or allow an audit, we will send the written notice of cancellation to the first Named Insured at the last known mailing address by certified mail or statutory overnight delivery with return receipt requested.

 © Insurance Services Office, Inc., 2014 IL 02 62 02 15

IL 09 35 07 02

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTAIN COMPUTER-RELATED LOSSES

This endorsement modifies insurance provided under the following:

COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
STANDARD PROPERTY POLICY

**A.** We will not pay for loss ("loss") or damage caused directly or indirectly by the following. Such loss ("loss") or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss ("loss") or damage.

  **1.** The failure, malfunction or inadequacy of:

    **a.** Any of the following, whether belonging to any insured or to others:

      **(1)** Computer hardware, including microprocessors;

      **(2)** Computer application software;

      **(3)** Computer operating systems and related software;

      **(4)** Computer networks;

      **(5)** Microprocessors (computer chips) not part of any computer system; or

      **(6)** Any other computerized or electronic equipment or components; or

    **b.** Any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph **A.1.a.** of this endorsement;

    due to the inability to correctly recognize, process, distinguish, interpret or accept one or more dates or times. An example is the inability of computer software to recognize the year 2000.

  **2.** Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify or test for, any potential or actual problems described in Paragraph **A.1.** of this endorsement.

**B.** If an excluded Cause of Loss as described in Paragraph **A.** of this endorsement results:

  **1.** In a Covered Cause of Loss under the Crime and Fidelity Coverage Part, the Commercial Inland Marine Coverage Part or the Standard Property Policy; or

  **2.** Under the Commercial Property Coverage Part:

    **a.** In a "Specified Cause of Loss", or in elevator collision resulting from mechanical breakdown, under the Causes of Loss – Special Form; or

    **b.** In a Covered Cause of Loss under the Causes Of Loss – Basic Form or the Causes Of Loss – Broad Form;

  we will pay only for the loss ("loss") or damage caused by such "Specified Cause of Loss", elevator collision, or Covered Cause of Loss.

**C.** We will not pay for repair, replacement or modification of any items in Paragraphs **A.1.a.** and **A.1.b.** of this endorsement to correct any deficiencies or change any features.

© ISO Properties, Inc., 2001

This page intentionally left blank

POLICY NUMBER: WPP1839065 00                                              IL 09 53 01 15

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

    BOILER AND MACHINERY COVERAGE PART
    COMMERCIAL INLAND MARINE COVERAGE PART
    COMMERCIAL PROPERTY COVERAGE PART
    CRIME AND FIDELITY COVERAGE PART
    EQUIPMENT BREAKDOWN COVERAGE PART
    FARM COVERAGE PART
    STANDARD PROPERTY POLICY

### SCHEDULE

The **Exception Covering Certain Fire Losses** (Paragraph **C**) applies to property located in the following state(s), if covered under the indicated Coverage Form, Coverage Part or Policy:

| State(s) | Coverage Form, Coverage Part Or Policy |
|---|---|
| GA | COMMERCIAL PROPERTY COVERAGE PART |
|  |  |
|  |  |
|  |  |
|  |  |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A.** The following definition is added with respect to the provisions of this endorsement:

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**B.** The following exclusion is added:

**CERTIFIED ACT OF TERRORISM EXCLUSION**

We will not pay for loss or damage caused directly or indirectly by a "certified act of terrorism". Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

**C. Exception Covering Certain Fire Losses**

The following exception to the exclusion in Paragraph **B.** applies only if indicated and as indicated in the Schedule of this endorsement.

If a "certified act of terrorism" results in fire, we will pay for the loss or damage caused by that fire. Such coverage for fire applies only to direct loss or damage by fire to Covered Property. Therefore, for example, the coverage does not apply to insurance provided under Business Income and/or Extra Expense coverage forms or endorsements which apply to those forms, or to the Legal Liability Coverage Form or the Leasehold Interest Coverage Form.

IL 09 53 01 15                    © Insurance Services Office, Inc., 2015                    Page 1 of 2

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**D. Application Of Other Exclusions**

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this Coverage Part or Policy, such as losses excluded by the Nuclear Hazard Exclusion or the War And Military Action Exclusion.

POLICY NUMBER: WPP1839065 00

IL 09 85 01 15

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

**SCHEDULE**

| SCHEDULE – PART I |
|---|
| **Terrorism Premium (Certified Acts)**   $ CERTIFIED ACT OF TERRORISM EXCLUSION (Exception covering certain fire losses) <br> **This premium is the total Certified Acts premium attributable to the following Coverage Part(s), Coverage Form(s) and/or Policy(ies):** <br><br> Commercial Property <br> Covering Certain Fire Losses <br><br><br><br><br> **Additional information, if any, concerning the terrorism premium:** <br> Certified Acts of Terrorism is not covered, exception covering certain fire following a Certified Act of Terrorism |

| SCHEDULE – PART II | |
|---|---|
| **Federal share of terrorism losses** <br> (Refer to Paragraph **B.** in this endorsement.) | 81% Year: 20 19 |
| **Federal share of terrorism losses** <br> (Refer to Paragraph **B.** in this endorsement.) | 80% Year: 20 20 |

| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |
|---|

**A. Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

  © Insurance Services Office, Inc., 2015

**B. Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals a percentage (as shown in Part **II** of the Schedule of this endorsement or in the policy Declarations) of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

**C. Cap On Insurer Participation In Payment Of Terrorism Losses**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

   © Insurance Services Office, Inc., 2015   IL 09 85 01 15

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# IDENTITY RECOVERY COVERAGE

## IDENTITY THEFT CASE MANAGEMENT SERVICE AND EXPENSE REIMBURSEMENT

The following is added as an Additional Coverage.  If this is being endorsed onto a multi-section form, it is added to the Property section:

### IDENTITY RECOVERY COVERAGE

We will provide the Case Management Service and Expense Reimbursement Coverage indicated below if all of the following requirements are met:

1. There has been an "identity theft" involving the personal identity of an "identity recovery insured" under this policy; and

2. Such "identity theft" is first discovered by the "identity recovery insured" during the policy period for which this Identity Recovery coverage is applicable; and

3. Such "identity theft" is reported to us within 60 days after it is first discovered by the "identity recovery insured."

If all three of the requirements listed above have been met, then we will provide the following to the "identity recovery insured":

1. **Case Management Service**
   Services of an "identity recovery case manager" as needed to respond to the "identity theft"; and

2. **Expense Reimbursement**
   Reimbursement of necessary and reasonable "identity recovery expenses" incurred as a direct result of the "identity theft."

This coverage is additional insurance.

### EXCLUSIONS

The following additional exclusions apply to this coverage:

We do not cover loss or expense arising from any of the following.

1. The theft of a professional or business identity.

2. Any fraudulent, dishonest or criminal act by an "identity recovery insured" or any person aiding or abetting an "identity recovery insured", or by any authorized representative of an "identity recovery insured", whether acting alone or in collusion with others. However, this exclusion shall not apply to the interests of an "identity recovery insured" who has no knowledge of or involvement in such fraud, dishonesty or criminal act.

3. An "identity theft" that is not reported in writing to the police.

### LIMITS

Case Management Service is available as needed for any one "identity theft" for up to 12 consecutive months from the inception of the service. Expenses we incur to provide Case Management Service do not reduce the amount of limit available for Expense Reimbursement coverage.

Expense Reimbursement coverage is subject to a limit of $15,000 annual aggregate per "identity recovery insured." Regardless of the number of claims, this limit is the most we will pay for the total of all loss or expense arising out of all "identity thefts" to any one "identity recovery insured" which are first discovered by the "identity recovery insured" during a 12-month period starting with the beginning of the present annual policy period. If an "identity theft" is first discovered in one policy period and continues into other policy periods, all loss and expense arising from such "identity theft" will be subject to the aggregate limit applicable to the policy period when the "identity theft" was first discovered.

Legal costs as provided under item d. of the definition of "identity recovery expenses" are part of, and not in addition to, the Expense Reimbursement coverage limit.

Item e. (Lost Wages) and item f. (Child and Elder Care Expenses) of the definition of "identity recovery expenses" are jointly subject to a sublimit of $5,000. This sublimit is part of, and not in addition to, the Expense Reimbursement coverage limit. Coverage is limited to wages lost and expenses incurred within 12 months after the first discovery of the "identity theft" by the "identity recovery insured."

Item g. (Mental Health Counseling) of the definition of "identity recovery expenses" is subject to a sublimit of $1,000. This sublimit is part of, and not in addition to, the Expense Reimbursement coverage limit. Coverage is limited to counseling that takes place within 12 months after the first discovery of the "identity theft" by the "identity recovery insured."

Item h. (Miscellaneous Unnamed Costs) of the definition of "identity recovery expenses" is subject to a sublimit of $1,000. This sublimit is part of, and not in addition to, the Expenses Reimbursement coverage limit. Coverage is limited to costs incurred within 12 months after the first discovery of the "identity theft" by the "identity recovery insured."

## DEDUCTIBLE

Case Management Service is not subject to a deductible.

Expense Reimbursement coverage is subject to a deductible of $100. Any one "identity recovery insured" shall be responsible for only one deductible under this Identity Recovery Coverage during any one policy period.

## CONDITIONS

The following additional conditions apply to this coverage:

**A. Help Line**

For assistance, the "identity recovery insured" should call the **Identity Recovery Help Line** at **1-877-645-7434**.

The **Identity Recovery Help Line** can provide the "identity recovery insured" with:

1. Information and advice for how to respond to a possible "identity theft"; and

2. Instructions for how to submit a service request for Case Management Service and/or a claim form for Expense Reimbursement Coverage.

In some cases, we may provide Case Management services at our expense to an "identity recovery insured" prior to a determination that a covered "identity theft" has occurred. Our provision of such services is not an admission of liability under the policy. We reserve the right to deny further coverage or service if, after investigation, we determine that a covered "identity theft" has not occurred.

As respects Expense Reimbursement Coverage, the "identity recovery insured" must send to us, within 60 days after our request, receipts, bills or other records that support his or her claim for "identity recovery expenses."

**B. Services**

The following conditions apply as respects any services provided by us or our designees to any "identity recovery insured" under this endorsement:

1. Our ability to provide helpful services in the event of an "identity theft" depends on the cooperation, permission and assistance of the "identity recovery insured."

2. All services may not be available or applicable to all individuals. For example, "identity recovery insureds" who are minors or foreign nationals may not have credit records that can be provided or monitored. Service in Canada will be different from service in the United States and Puerto Rico in accordance with local conditions.

3. We do not warrant or guarantee that our services will end or eliminate all problems associated with an "identity theft" or prevent future "identity thefts."

## DEFINITIONS

With respect to the provisions of this endorsement only, the following definitions are added:

1. **"Identity Recovery Case Manager"** means one or more individuals assigned by us to assist an "identity recovery insured" with communications we deem necessary for re-establishing the integrity of the personal identity of the "identity recovery insured." This includes, with the permission and cooperation of the "identity recovery insured," written and telephone communications with law enforcement authorities, governmental agencies, credit agencies and individual creditors and businesses.

2. **"Identity Recovery Expenses"** means the following when they are reasonable and necessary expenses that are incurred as a direct result of an "identity theft":

   a. Costs for re-filing applications for loans, grants or other credit instruments that are rejected solely as a result of an "identity theft."

   b. Costs for notarizing affidavits or other similar documents, long distance telephone calls and postage solely as a result of your efforts to report an "identity theft" or amend or rectify records as to your true name or identity as a result of an "identity theft."

   c. Costs for credit reports from established credit bureaus.

   d. Fees and expenses for an attorney approved by us for the following:

      (1) The defense of any civil suit brought against an "identity recovery insured."

      (2) The removal of any civil judgment wrongfully entered against an "identity recovery insured."

      (3) Legal assistance for an "identity recovery insured" at an audit or hearing by a governmental agency.

      (4) Legal assistance in challenging the accuracy of the "identity recovery insured's" consumer credit report.

      (5) The defense of any criminal charges brought against an "identity recovery insured" arising from the actions of a third party using the personal identity of the "identity recovery insured."

   e. Actual lost wages of the "identity recovery insured" for time reasonably and necessarily taken away from work and away from the work premises. Time away from work includes partial or whole work days. Actual lost wages may include payment for vacation days, discretionary days, floating holidays and paid personal days. Actual lost wages does not include sick days or any loss arising from time taken away from self employment. Necessary time off does not include time off to do tasks that could reasonably have been done during non-working hours.

   f. Actual costs for supervision of children or elderly or infirm relatives or dependants of the "identity recovery insured" during time reasonably and necessarily taken away from such supervision. Such care must be provided by a professional care provider who is not a relative of the "identity recovery insured."

   g. Actual costs for counseling from a licensed mental health professional. Such care must be provided by a professional care provider who is not a relative of the "identity recovery insured."

   h. Any other reasonable costs necessarily incurred by an "identity recovery insured" as a direct result of the "identity theft."

      (1) Such costs include:

         (A) Costs by the "identity recovery insured" to recover control over his or her personal identity.

         (B) Deductibles or service fees from financial institutions.

      (2) Such costs do not include:

         (A) Costs to avoid, prevent or detect "identity theft" or other loss.

         (B) Money lost or stolen.

         (C) Costs that are restricted or excluded elsewhere in this endorsement or policy.

3. **"Identity Recovery Insured"** means the following:

   a. When the business insured under this policy is a sole proprietorship, the "identity recovery insured" is the individual person who is the sole proprietor of the insured business and their spouse or domestic partner.

   b. When the entity insured under this policy is a partnership, the "identity recovery insureds" are the current partners.

    c.  When the entity insured under this policy is a corporation or other organization, the "identity recovery insureds" are all individuals having an ownership position of 20% or more of the insured entity. However, if and only if there is no one who has such an ownership position, then the "identity recovery insured" shall be:

        (1)  The chief executive of the insured entity; or

        (2)  As respects a religious institution, the senior ministerial employee.

An "identity recovery insured" must always be an individual person. The entity insured under this policy is not an "identity recovery insured."

4.  **"Identity Theft"** means the fraudulent use of the social security number or other method of identifying an "identity recovery insured." This includes fraudulently using the personal identity of an "identity recovery insured" to establish credit accounts, secure loans, enter into contracts or commit crimes.

"Identity theft" does not include the fraudulent use of a business name, d/b/a or any other method of identifying a business activity.

All other provisions of this policy apply.

**POLICY NUMBER:** WPP1839065 00

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION - ASBESTOS

The Exclusion Section of the Liability Coverage provided under this policy is amended to add the following:

**Asbestos**

A.  This insurance does not apply to any loss of, "bodily injury," "property damage," or "personal and advertising injury"" arising out of the actual, alleged or suspected:

   1.  Ingestion, inhalation, absorption, presence or exposure or threat of exposure to asbestos in any form, or goods, products containing any form of asbestos;

   2.  Use of any form of asbestos in constructing or manufacturing any good, product or structure;

   3.  Removal of any form of asbestos from any good, product or structure; or

   4.  The manufacture, intellectual development, sale, transportation, storage, or disposal of asbestos or goods or products containing any form of asbestos.

B.  We will not pay:

   1.  Loss, cost or expense, including but not limited to defense costs, claim expenses, bonds or fees arising out of any request, demand, or order that any insured or others identify, abate, test for, sample, monitor, clean up, remove, cover, contain, treat, detoxify, decontaminate, neutralize, or mitigate; or in any way respond to or assess the effects of asbestos; or repair, replace or improve any property as a result of such effects; or

   2.  Loss, cost or expense arising out of any claim or "suit" by or on behalf of a government authority for damages because of identification of, abatement of, testing for, sampling, monitoring, cleaning up, removing, covering, containing, treating, detoxifying, decontaminating, neutralizing, or mitigating; or in any way responding to or assessing the effects of asbestos; or repairing, replacing or improving any property as a result of such effects.

C.  This exclusion applies whether or not:

   1.  Such loss, cost or expense was caused by the instigation of, or with the direct or indirect involvement of any Named Insured, the Named Insured's employees, Additional Insureds or other persons on the Named Insured's premises or worksite at any time.

   2.  Such loss, cost or expense was caused by or arising out of the failure at any time of any Named Insured, the Named Insured's employees, Additional Insureds, or other persons on any Named Insured's premises or worksite to supervise or keep the premise or worksite in a safe condition.

This page intentionally left blank

**POLICY NUMBER:** WPP1839065 00

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – LEAD

The Exclusion Section of the Liability Coverage provided under this policy is amended to add the following:

**Lead**

A.   Any injury or damage arising out of the actual, alleged, threatened, or suspected:

1.   Ingestion, inhalation, absorption, presence, or threat of exposure to lead in any form, or goods or, products containing lead in any form;

2.   Use of lead in any form in constructing or manufacturing any good, product or structure;

3.   Removal of lead in any form from any good, product or structure;

4.   Discharge, dispersal, seepage, migration, release or escape of lead in any form; or

5.   Manufacture, intellectual development, sale, transportation, storage or disposal of lead in any form, or goods or products containing lead in any form.

B.   Any loss, cost or expense arising out of any:

1.   Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, lead in any form;

2.   Claim or suit by or on behalf of a government authority for damages because of identification of, abatement of, testing for, sampling, monitoring, cleaning up, removing, covering, containing, treating, detoxifying, decontaminating, neutralizing, or mitigating, or in any way responding to, or assessing the effects of lead in any form, or the repair, replacement or improvement of any property as a result of such effects;

C.   Paragraph B. applies whether or not such loss, cost or expense:

1.   Was caused by the instigation of, or with the direct or indirect involvement of, any Named Insured, the Named Insured's employees, additional insureds or other persons on the insured's premises or worksite at any time; or

2.   Arises out of the failure at any time of any Named Insured, the Named Insured's employees, additional insureds or other persons on any Named Insured's premises or worksite to supervise or keep the premise or worksite in a safe condition.

D.   Fines or penalties imposed by a governmental authority because of or in connection with any activity, event, condition or circumstance contained or described in A., B., or C. above.

This page intentionally left blank

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CERTIFICATE HOLDER –
# NOTICE OF CANCELLATION

The person(s) or organization(s) listed or described in the Schedule below have requested that they receive written notice of cancellation (for any reason other than non-payment of premium) when this policy is cancelled by us.  If possible, we will mail or deliver to the Person(s) or Organization(s) listed in the Schedule below a copy of the written notice of cancellation that we send to you.

This endorsement does not entitle the person(s) or organization(s) listed above to any benefit, rights or protection under this policy.  Furthermore, failure to provide such notification will not extend any policy cancellation date, impact or negate any cancellation of the policy, nor impose any obligation or liability of any kind upon the company, its agent or representatives.

Notice of cancellation (for other than nonpayment of premium) may be mailed or delivered not less than [ 30 ] days prior to the effective date of cancellation.

## Schedule

Person(s) or Organization(s) including mailing address:

KANSAS CITY, MO 64114-8528

Notice of cancellation is only provided to the Person(s) or Organization(s) listed in the Schedule above where notice of the cancellation of this policy is required by written contract, permit or agreement with the Named Insured.

This page intentionally left blank

# This Page Intentionally Left Blank to Separate Documents

IN THE STATE COURT OF DEKALB COUNTY
STATE OF GEORGIA

ANOSHVI HOSPITALITY, LLC D/B/A FAIRFIELD INN &
SUITES ATLANTA STONECREST
Plaintiff,

VS.                                                                CIVIL ACTION FILE NO. 22A00200

WESCO INSURANCE COMPANY
Defendant.

## AFFIDAVIT OF SERVICE UPON WESCO INSURANCE COMPANY

Personally appeared before me, an officer duly authorized by law to administer oaths, the person of FRANK L. SWINDLE - PROCESS SERVER, who after first being duly sworn, and states:

1.   My name is FRANK L. SWINDLE - PROCESS SERVER, and I am competent in all respects to testify regarding the matter set forth herein. I have personal knowledge of the facts stated herein and know them to be true. I have no interest in the outcome of the above action and I am not related to any of the parties.

2.   I am a resident of the State of Georgia and a citizen of the United States of America and am over age twenty-one (21). I have been appointed as Process Server in the STATE COURT OF DEKALB COUNTY and I have been assigned in the above styled case to perfect service of process of the pending Summons and Complaint upon WESCO INSURANCE COMPANY.

3.   On Feb 7, 2022 at approx. 11:41 am at the 2 SUN CT SUITE 400, PEACHTREE CORNERS, GA 30092 address, I served the pending SUMMONS AND COMPLAINT & DEMAND FOR JURY TRIAL, EXHIBITS A-D upon WESCO INSURANCE COMPANY, by leaving said service documents with Alicia Smith, an Employee at Thompson/O'Brian, who is a designated representative of Corporation Service Company, the Registered Agent for STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, and who is authorized to accept service of process on behalf of STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY.

This 09th of February, 2022.

FRANK L. SWINDLE - PROCESS SERVER

Sworn to and subscribe before me
This 09th of February, 2022

Notary Public,
My commission expires on   OCT - 22, 2022

Hakimah Hudson
NOTARY PUBLIC
DeKalb County, GEORGIA

# This Page Intentionally Left Blank to Separate Documents

## IN THE STATE COURT OF DEKALB COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| **ANOSHVI HOSPITALITY, LLC,** | ) | |
| **D/B/A FAIRFIELD INN & SUITES** | ) | |
| **ATLANTA STONCREST** | ) | |
| | ) | **CAFN: 22A00200** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **WESCO INSURANCE COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## ENTRY OF APPEARANCE

    **COMES NOW**, Ellaretha Coleman, Esq. and Property Claims Litigation Group, LLC., and hereby files this ***Entry of Appearance*** as Co-Counsel on behalf of the Plaintiff in the above-styled case. Attorney Coleman hereby requests that all orders, notices, pleadings, or other correspondence pertaining to the above referenced case be sent to him at the following address:

<div align="center">

**PROPERTY CLAIMS LITIGATION GROUP, LLC**
**101 Marietta Street NW**
**Suite 3650**
**Atlanta, GA 30303**
**Tel: 404-937-3176**
**Fax: 404-478-8458**

</div>

    Respectfully submitted on this 10th day of February 2022.


                                                      */s/ Ellaretha Coleman__*
                                                     Ellaretha Coleman, Esq.
                                                     Georgia Bar No. 404051

**Property Claims Litigation Group, LLC**
**Attorney for the** Plaintiff
101 Marietta St., NW
Suite 3650
Atlanta, GA  30303
Phone: (404) 937-3176
Fax: (404) 478-8458
ecoleman@insurancetrialgroup.com

# This Page Intentionally Left Blank to Separate Documents

**IN THE STATE COURT OF DEKALB COUNTY**
**STATE OF GEORGIA**

| | |
|---|---|
| ANOSHVI HOSPITALITY, LLC d/b/a FAIRFIELD INN & SUITES ATLANTA STONECREST, | ) ) ) |
| | ) CIVIL ACTION |
| Plaintiff, | ) FILE NO.:  22A00200 |
| | ) |
| v. | ) |
| | ) |
| WESCO INSURANCE COMPANY, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**DEFENDANT WESCO INSURANCE COMPANY'S**
**ANSWER AND AFFIRMATIVE DEFENSES**

COMES NOW, Defendant Wesco Insurance Company ("**Wesco**"), by and through undersigned counsel, hereby files its Answer and Affirmative Defenses in response to Plaintiff Anoshvi Hospitality, LLC d/b/a Fairfield Inn & Suites Atlanta Stonecrest's ("**Plaintiff**") Complaint ("**Complaint**"), and states as follows:

### AFFIRMATIVE DEFENSES

#### FIRST AFFIRMATIVE DEFENSE

Plaintiff's Complaint fails to state a claim against Wesco upon which relief can be granted.

#### SECOND AFFIRMATIVE DEFENSE

Plaintiff fails to state a claim against Wesco under the policy of insurance bearing Policy No. WPP1839065-00 ("**Policy**"), which is the subject of the Complaint.

#### THIRD AFFIRMATIVE DEFENSE

Defendant asserts the defenses of insufficient service and insufficient service of process.

#### FOURTH AFFIRMATIVE DEFENSE

- 1 -

To the extent Plaintiff seeks to assert a breach of contract against Wesco, Plaintiff may not maintain such an action because Wesco did not breach any contract with Plaintiff.

### FIFTH AFFIRMATIVE DEFENSE

To the extent Plaintiff seeks to assert a bad faith claim against Wesco pursuant to O.C.G.A. § 33-4-6, Plaintiff may not recover because its claim is legally and factually insufficient as Wesco did not breach any contract with Plaintiff and Wesco has, at all times, acted in good faith and with fair dealing with respect to Plaintiff's Claim.

### SIXTH AFFIRMATIVE DEFENSE

To the extent Plaintiff seeks to assert a bad faith claim against Wesco pursuant to O.C.G.A. § 33-4-6, Plaintiff may not recover because it failed to satisfy the statutory requirements for pursuing a bad faith claim under O.C.G.A. § 33-4-6 including but not limited to submission of a proper and timely bad faith demand.

### SEVENTH AFFIRMATIVE DEFENSE

Plaintiff is unable to recover the damages sought and set forth in the Complaint or previously submitted in the Claim because this amount does not reflect the reasonable and necessary cost to repair any covered property damage by a covered cause of loss with equivalent construction for equivalent use and to return Plaintiff to its pre-loss condition.

### EIGHTH AFFIRMATIVE DEFENSE

Plaintiff may not maintain this action against Wesco related to the Claim because Plaintiff failed to satisfy its duties under the Policy.  The Policy provides:

**BUILDING AND PERSONAL PROPERTY**
**COVERAGE FORM**
. . .
**E.  Loss Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:

. . .

**3. Duties In The Event Of Loss Or Damage**

    **c.** You must see that the following are done in the event of loss or damage to Covered Property:

      (1) Notify the police if a law may have been broken.

      (2) Give us prompt notice of the loss or damage. Include a description of the property involved.

      (3) As soon as possible, give us a description of how, when and where the loss or damage occurred.

      (4) Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

      (5) At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

      (6) As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

      Also, permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies of your books and records.

      (7) Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

(8) Cooperate with us in the investigation or settlement
of the claim.

Plaintiff failed to satisfy its duties including but not limited to submission of documents supporting

its Claim and reporting the Claim in a timely manner.  Defendant Wesco reserves the right to add

additional factual basis for this defense.

## NINTH AFFIRMATIVE DEFENSE

Plaintiff may not maintain this action against Wesco as Plaintiff failed to satisfy the

conditions precedent to brining suit set forth in the insurance Policy.  The Policy provides:

### COMMERCIAL PROPERTY CONDITIONS

This Coverage Part is subject to the following conditions, the
Common Policy Conditions and applicable Loss Conditions and
Additional Conditions in the Commercial Property Coverage Forms
. . .

### D.  LEGAL ACTION AGAINST US

No one may bring a legal action against us under this Coverage
Part unless:

**1.** There has been full compliance with all of the terms of this
Coverage Part; and

**2.** The action is brought within 2 years after the date on which
the direct physical loss or damage occurred.

Plaintiff failed to satisfy the condition precedent by failing perform its duties under this Policy and

by failing to bring this action within the prescribed time periods.  Defendant reserves the right to

supplement its response.

## TENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrines of laches, waiver and

estoppel.

## ELEVENTH AFFIRMATIVE DEFENSE

To the extent Plaintiff seeks payment of damages related to a loss which occurred <u>after</u> the asserted loss date, Plaintiff failed to assert a separate claim for these damages and thus they are not recoverable in this action.

## TWELFTH AFFIRMATIVE DEFENSE

Plaintiff's alleged damages, if any, are barred, in whole or in part, by Plaintiff's failure to mitigate damages, as required by Georgia law.

## THIRTEENTH AFFIRMATIVE DEFENSE

To the extent Plaintiff seeks to assert a claim for attorneys' fees or extra contractual damages against Wesco pursuant to any other statute or law aside from O.C.G.A. § 33-4-6, Plaintiff may not recover because O.C.G.A. § 33-4-6 is the exclusive remedy for extra-contractual damages, including bad faith penalties or attorneys' fees, recoverable by an insured against its insurer based on a failure to pay policy benefits.

## FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiff is unable to recover for the allege damages because the amount of covered damages falls below the deductible.  The Policy provides:

### BUILDING AND PERSONAL PROPERTY
### COVERAGE FORM

. . .

### D.  Deductible

In any one occurrence of loss or damage (hereinafter referred to as loss), we will first reduce the amount of loss by the Coinsurance Condition or the Agreed Value Option coverage.  If the adjusted amount of loss is less than or equal to the Deductible, we will not pay for that loss. If the adjusted amount of loss exceeds the Deductible we will then subtract the Deductible from the adjusted amount of loss and will pay the resulting amount or the Limit of Insurance, whichever is less.

- 5 -

## FIFTEENTH AFFIRMATIVE DEFENSE

Plaintiff is unable to recover for the alleged damages, if any, for repair and/or replacement costs to the extent Plaintiff has not incurred those costs.  See Marchman v. Grange Mut. Ins. Co., 232 Ga. App. 481, 500 S.E.2d 659 (1998); see also, Sixteenth Affirmative Defense, below.

## SIXTEENTH AFFIRMATIVE DEFENSE

Plaintiff is unable to recover for the alleged damages set forth in the Complaint because the amount of said damages do not reflect the reasonable costs to replace and/or repair the damages and covered property with equivalent construction for equivalent use and to return Plaintiff to its pre-loss condition. The damages sought in Plaintiff's Complaint are for repairs that are not in accordance with the standard and custom of the industry.  Specifically, the Policy states:

### BUILDING AND PERSONAL PROPERTY COVERAGE FORM

. . .

**E. Loss Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions:

. . .

**4. Loss Payment**

**a.** In the event of loss or damage covered by this Coverage Form, at our option, we will either:

(1) Pay the value of lost or damaged property;

(2) Pay the cost or repairing or replacing the lost or damaged property, subject to **b.** below;

(3) Take all or any part of the property an agreed or appraised value; or

(4) Repair, rebuild or replace the property with other property of like kid and quality, subject to **b.** below.

**b.** The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of or

compliance with any ordinance or law regulating the construction, use or repair of any property.

**c.** We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

**d.** We will not pay you more than your financial interest in the Covered Property.

. . .

**g.** We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part, and:

(5) We have reached agreement with you on the amount of loss; or

(6) An appraisal award has been made.

## SEVENTEENTH AFFIRMATIVE DEFENSE

Plaintiff is not entitled to recover for all of the damage to the Property asserted in this Complaint because not all of the damage to the Property resulted from a covered peril and the cause of the diminished condition of the Property was the result of excluded losses under the Policy. For example, without limitation, damages as a result of improper and defective installation and/or construction, wear and tear, age, deterioration, negligent workmanship, and/or lack of proper maintenance are not covered under the Policy.  The Policy provides:

### BUILDING AND PERSONAL PROPERTY COVERAGE FORM

**A. Coverage**

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

. . .

**3. Covered Causes Of Loss**

See applicable Causes of Loss form as shown in the declarations.

. . .

## CAUSES OF LOSS – SPECIAL FORM

**A. Covered Causes Of Loss**

When Special is shown in the Declarations, Covered Causes of Loss means direct physical loss unless the loss is excluded or limited in this Policy.

**B. Exclusions**

**1.** We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

. . .

**2.** We will not pay for loss or damage caused by or resulting from any of the following:

. . .

d.  (1) Wear and tear;

(2) Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

(3) Smog;

(4) Settling, cracking, shrinking or expansion;

. . .

m.  Neglect of an insured to use all reasonable means to save and preserve the property from further damage at and after the time of loss.

**3.** We will not pay for loss or damage caused by or resulting from any of the following, **3.a.** through **3.c.** But if an excluded cause of loss that is listed in **3.a.** through **3.c.** results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

. . .

c.  Faulty, inadequate or defective:

(1) Planning, zoning, development, surveying, siting;

(2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

- 8 -

(3) Materials used in repair, construction, renovation or remodeling; or

(4) Maintenance;

of part or all of any property on or off the described premises.

## EIGHTEENTH AFFIRMATIVE DEFENSE

Plaintiff may not recover for any additional damages alleged in the Complaint because these damages are not the result of a covered cause of loss and because any loss alleged was not the result of a direct and accidental physical loss to the Property.

## NINETEENTH AFFIRMATIVE DEFENSE

To the extent Plaintiff seeks to recover replacement cost benefits, Plaintiff has not satisfied the contractual requirements to recover these benefits pursuant to the terms and conditions of the Policy and the repairs have not been completed.  The Policy provides:

### BUILDING AND PERSONAL PROPERTY
### COVERAGE FORM
. . .

**G.  Optional Coverages**

If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item.
. . .

**3.  Replacement Cost**

**a.**  Replacement Cost (without deduction for appreciation) replaces Actual Cash Value in the Valuation Loss condition of this Coverage Form.
. . .

**c.**  You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim for the additional coverage this Optional Coverage provides if you notify us of your intent to do so within 180 days after the loss or damage.

    **d.** We will not pay on a replacement cost basis for any loss or damage:

        (1) Until the lost or damaged property is actually repaired or replaced; and

        (2) Unless the repair or replacement is made as soon as reasonably possible after the loss or damage.

        . . .

    **e.** We will not pay more for loss or damage on a replacement cost basis than the least of **(1)**, **(2)**, or **(3)**, subject to **f.** below:

        (1) The Limit of Insurance applicable to the lost or damaged property;

        (2) The cost to replace the lost or damaged property with other property:

            (a) Of comparable material and quality; and

            (b) Used for the same purpose; or

        (3) The amount actually spent that is necessary to repair or replace the lost or damaged property.

        . . .

    **f.** The cost of repair or replacement does not include the increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property.

## TWENTIETH AFFIRMATIVE DEFENSE

Plaintiff is unable to recover for any alleged damage to the Property to the extent those damages did not result from a fortuitous loss and/or directly physical loss to covered property as required by the insurance Policy.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

Plaintiff may not recover for any damages occurring outside the subject policy period. The Policy provides:

## COMMERCIAL PROPERTY CONDITIONS

- 10 -

This Coverage Part is subject to the following conditions, the Common Policy Conditions and applicable Loss Conditions and Additional Conditions in the Commercial Property Coverage Forms

. . .

## H.  POLICY PERIOD, COVERAGE TERRITORY

Under this Coverage Part:

1.  We cover loss or damage commencing:

a.  During the policy period shown in the Declarations; and

b.  Within the coverage territory.

### TWENTY-SECOND AFFIRMATIVE DEFENSE

Plaintiff may not recover for damages that occurred more than two (2) years prior to January 18, 2020, the date Plaintiff's Complaint was filed.

### TWENTY-THIRD AFFIRMATIVE DEFENSE

To the extent Plaintiff seeks damages related to coverage afforded in the Policy, any amount Plaintiff may recover is circumscribed by the terms and provisions of the Policy.

### TWENTY-FOURTH AFFIRMATIVE DEFENSE

To the extent Plaintiff seeks to recover for alleged violations of O.C.G.A. § 33-6-34, Plaintiff is unable to recover as these provisions do not create or imply a private cause of action. O.C.G.A. § 33-6-37.

### TWENTY-FIFTH AFFIRMATIVE DEFENSE

To the extent Plaintiff contends that it is entitled to receive a full roof replacement due to the enforcement of any applicable building ordinance, code or law, the Policy only provides limited coverage for such damages and Plaintiff's damages do not fall within the limited ordinance and law coverage afforded by the Policy.  Even if the damages did fall within the ordinance and law coverage afforded by the Policy, Plaintiff would be limited to the policy limits for the

ordinance and law coverage afforded by the Policy. See, COMMERCIAL PROPERTY EXPANDED COVERAGE; Section I – Expanded Property Coverage (A)(4)(n) (Ordinance Or Law Coverage).

## TWENTY-SIXTH AFFIRMATIVE DEFENSE

Defendant Wesco expressly reserves the right to assert all affirmative defenses and matter(s) in avoidance as may be disclosed during additional investigation and discovery.  Subject to, and without waiving any of its other respective rights, jurisdictional or legal defenses, or objections, Wesco responds to the specific averments contained in the individual and enumerated paragraphs of the Complaint as follows:

## FACTUAL ALLEGATIONS

### PARTIES

1.

Upon information and belief, Defendant Wesco admits that Plaintiff is a Georgia limited liability company registered to transact business in the State of Georgia.

2.

In response to the allegations contained in Paragraph 2 of Plaintiff's Complaint, Defendant Wesco admits only that it is a foreign insurance company that is registered to transact business in the State of Georgia and is in the business of insuring risks and properties located throughout the United States, including Georgia.  Except as otherwise herein admitted, all remaining allegations contained in Paragraph 2 of Plaintiff's Complaint are denied, including but not limited to the allegation that Corporate Service Company at 2 Sun Court, Ste. 400, Peachtree Corners is Defendant's registered agent or that it can be served with process at this location.

**JURISDICTION AND VENUE**

3.

In response to the allegations contained in Paragraph 3 of Plaintiff's Complaint, Defendant Wesco admits only that this Court has subject matter jurisdiction over this action and that the Court has personal jurisdiction over Defendant Wesco.  Except as otherwise herein admitted, all remaining allegations contained in Paragraph 3 are denied, including any implication that this Court is the only court to have both subject matter and/or personal jurisdiction over this action and its involved parties.

4.

In response to the allegations contained in Paragraph 4 of Plaintiff's Complaint, Defendant Wesco admits that venue is proper. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 4 are denied, including any implication that this Court is the only proper venue for this lawsuit.

5.

In response to the allegations contained in Paragraph 5 of Plaintiff's Complaint, Defendant Wesco states only that the Policy speaks for itself and denies any and all allegations in direct contravention to the plain language of the Policy. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 5 of Plaintiff's Complaint are denied, including but not limited to any implication that Wesco owed Plaintiff any duties beyond those set forth in the plain language of the Policy.

**THE POLICY**

6.

In response to the allegations contained in Paragraph 6 of Plaintiff's Complaint, Defendant

- 13 -

Wesco states only that Wesco issued Plaintiff an insurance policy for the property located at 7850 Stonecrest Sq., Lithonia, Georgia 30038 ("Property"). Defendant Wesco admits that the Policy provides insurance coverage to the Property subject to its terms and conditions and applicable Georgia law. Defendant Wesco further states that the Policy speaks for itself and denies any and all allegations in direct contravention to the plain language of the Policy. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 6 of Plaintiff's Complaint are denied, including but not limited to any implication that Wesco owed Plaintiff any duties beyond those set forth in the plain language of the Policy.

7.

Defendant Wesco denies all allegations contained in Paragraph 7 of Plaintiff's Complaint.

**STORM DAMAGE TO THE INSURED PROPERTY**

8.

In response to the allegations contained in Paragraph 8 of Plaintiff's Complaint, Defendant Wesco admits only that on or about May 28, 2020, Plaintiff's Property sustained minor direct physical loss due to wind. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 8 of Plaintiff's Complaint are denied, including but not limited to, any allegation that the storm caused direct physical loss of, or damage to, Plaintiff's Property

9.

In response to the allegations contained in Paragraph 9 of Plaintiff's Complaint, Defendant Wesco admits only that the Policy was in effect as of May 28, 2020. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 9 of Plaintiff's Complaint are denied, including but not limited to, any allegation that the storm caused direct physical loss of, or damage to, Plaintiff's Property in the manner alleged by Plaintiff in its Complaint.

10.

In response to the allegations contained in Paragraph 10 of Plaintiff's Complaint, Defendant Wesco admits only that Plaintiff submitted an insurance claim under the applicable insurance Policy which was assigned claim number 3241685-1 ("Claim"). Except as otherwise herein admitted, all remaining allegations contained in Paragraph 10 of Plaintiff's Complaint are denied, including but not limited to, any allegation that Plaintiff's notice of the alleged loss was prompt or timely, and any allegation that Plaintiff satisfied its duties under the Policy.

11.

In response to the allegations contained in Paragraph 11 of Plaintiff's Complaint, Defendant Wesco admits only that Plaintiff eventually permitted Defendant Wesco to inspect the Property. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 11 of Plaintiff's Complaint are denied including but not limited to any allegation that Plaintiff satisfied its duties or otherwise cooperated during the adjustment of the Claim.

12.

In response to the allegations contained in Paragraph 12 of Plaintiff's Complaint, Defendant Wesco admits only that it performed a site inspection of Plaintiff's Property. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 12 of Plaintiff's Complaint are denied.

13.

In response to the allegations contained in Paragraph 13 of Plaintiff's Complaint, Defendant Wesco admits that it adjusted Plaintiff's Claim for Property damage in accordance with the terms and provisions of the Policy and applicable Georgia law. By way of further response, Defendant Wesco states that the Policy speaks for itself and denies all allegations in direct

contravention to the plain language of the Policy.  Except as otherwise herein admitted, all remaining allegations contained in Paragraph 13 are denied, including any implication that Defendant Wesco owed Plaintiff duties beyond those set forth in the plain language of the Policy

14.

In response to the allegations contained in Paragraph 14 of Plaintiff's Complaint, Defendant Wesco states only that it issued a letter to Plaintiff dated October 23, 2020 setting forth its coverage decision related to the Claim.  By way of further response, Defendant Wesco states that the October 23, 2020 correspondence speaks for itself and denies all allegations in direct contravention to the plain language of the letter.  Except as otherwise herein admitted, all remaining allegations contained in Paragraph 14 are denied, including but not limited to any allegation that Defendant Wesco owed Plaintiff duties beyond those set forth by the Policy.

15.

Defendant Wesco denies all allegations contained in Paragraph 15 of Plaintiff's Complaint.

16.

In response to the allegations contained in Paragraph 16 of Plaintiff's Complaint, Defendant Wesco admits only that Plaintiff's attorneys submitted written correspondence dated April 8, 2021 seeking payment under the Claim.  Except as otherwise herein admitted, all remaining allegations contained in Paragraph 16 are denied, including but not limited to, any allegations that this written correspondence constituted a proper and timely bad faith demand and/or any allegations that Defendant Wesco frivolously or baselessly denied Plaintiff's Claim.

17.

In response to the allegations contained in Paragraph 17 of Plaintiff's Complaint, Defendant Wesco admits only that Plaintiff's attorneys submitted written correspondence dated

April 8, 2021 seeking payment under the Claim. By way of further response, Defendant Wesco admits that it issued a letter in response dated April 19, 2021. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 17 are denied, including but not limited to, any allegations that Plaintiff's written correspondence constituted a proper and timely bad faith demand, and any allegations that Defendant Wesco frivolously or baselessly denied Plaintiff's Claim.

18.

Defendant Wesco denies all allegations contained in Paragraph 18 of Plaintiff's Complaint.

19.

Defendant Wesco denies all allegations contained in Paragraph 19 of Plaintiff's Complaint.

20.

Defendant Wesco denies all allegations contained in Paragraph 20 of Plaintiff's Complaint.

21.

Defendant Wesco denies all allegations contained in Paragraph 21 of Plaintiff's Complaint.

**COUNT I – BREACH OF CONTRACT**

22.

To the extent a response was required to the allegations set forth in Paragraph 22, Defendant Wesco incorporates herein by reference its responses to the allegations contained in Paragraphs 1-21 of Plaintiff's Complaint.

23.

Defendant Wesco denies all allegations contained in Paragraph 23 of Plaintiff's Complaint.

24.

In response to the allegations contained in Paragraph 6 of Plaintiff's Complaint, Defendant

- 17 -

Wesco states only that the Policy speaks for itself and denies any and all allegations in direct contravention to the plain language of the Policy. Except as otherwise herein admitted, all remaining allegations contained in Paragraph 24 of Plaintiff's Complaint are denied, including but not limited to any implication that Wesco owed Plaintiff any duties beyond those set forth in the plain language of the Policy.

25.

Defendant Wesco denies all allegations contained in Paragraph 25 of Plaintiff's Complaint.

26.

Defendant Wesco denies all allegations contained in Paragraph 26 of Plaintiff's Complaint.

27.

Defendant Wesco denies all allegations contained in Paragraph 27 of Plaintiff's Complaint.

28.

Defendant Wesco denies all allegations contained in Paragraph 28 of Plaintiff's Complaint.

29.

Defendant Wesco denies all allegations contained in Paragraph 29 of Plaintiff's Complaint.

30.

Defendant Wesco denies all allegations contained in Paragraph 30 of Plaintiff's Complaint.

31.

To the extent a response was required to the allegations set forth in Paragraph 31, Defendant denies all allegations contained in Paragraph 31 of Plaintiff's Complaint.

### COUNT II – BAD FAITH

32.

To the extent a response was required to the allegations set forth in Paragraph 32,

Defendant Wesco incorporates herein by reference its responses to the allegations contained in Paragraphs 1-31 of Plaintiff's Complaint.

33.

Defendant Wesco denies all allegations contained in Paragraph 33 of Plaintiff's Complaint.

34.

Defendant Wesco denies all allegations contained in Paragraph 34 of Plaintiff's Complaint, including denial of subsections (1) through (8) of Paragraph 34.

35.

Defendant Wesco denies all allegations contained in Paragraph 35 of Plaintiff's Complaint

36.

Defendant Wesco denies all allegations contained in Paragraph 36 of Plaintiff's Complaint.

37.

Defendant Wesco denies all allegations contained in Paragraph 37 of Plaintiff's Complaint.

38.

Defendant Wesco denies all allegations contained in Paragraph 38 of Plaintiff's Complaint.

39.

Defendant Wesco denies all allegations contained in Paragraph 39 of Plaintiff's Complaint.

40.

Defendant Wesco denies all allegations contained in Paragraph 40 of Plaintiff's Complaint.

41.

Defendant Wesco denies all allegations contained in Paragraph 41 of Plaintiff's Complaint.

42.

Defendant Wesco denies all allegations contained in Paragraph 42 of Plaintiff's Complaint.

## COUNT III – ATTORNEY'S FEES

43.

To the extent a response was required to the allegations set forth in Paragraph 43, Defendant Wesco incorporates herein by reference its responses to the allegations contained in Paragraphs 1-32 of Plaintiff's Complaint.

44.

Defendant Wesco denies all allegations contained in Paragraph 44 of Plaintiff's Complaint.

45.

Defendant Wesco denies all allegations contained in Paragraph 45 of Plaintiff's Complaint.

## DEMAND FOR JURY TRIAL

46.

To the extent a response was required to the allegations set forth in Paragraph 46, Defendant Wesco denies all allegations contained in Paragraph 46 of Plaintiff's Complaint.

## PRAYER FOR RELIEF

47.

To the extent a response was required to the allegations set forth in Paragraph 47, Defendant Wesco denies all allegations contained in Paragraph 47 of Plaintiff's Complaint.

48.

Defendant Wesco hereby denies each and every remaining allegation of Plaintiff's Complaint not specifically and expressly admitted herein, including but not limited to all allegations in Plaintiff's Prayer for Relief.

WHEREFORE, having answered fully, Defendant Wesco Insurance company respectfully requests that the following be granted:

(a) That Plaintiff's Complaint be dismissed with prejudice;

(b) That this matter be tried by a jury;

(c) That Defendant Wesco Insurance Company be awarded its reasonable attorneys' fees and costs incurred in asserting its rights through this action; and

(d) That Defendant Wesco Insurance Company be awarded such other and further relief as this Court deems just and proper.

This 8th day of March, 2022.

Respectfully Submitted,

SWIFT, CURRIE, MCGHEE & HIERS, LLP

/s/ Jessica M. Phillips

Jessica M. Phillips, Esq.
Georgia Bar No. 922902
Erik L. Johnson
Georgia Bar No. 139597
*Attorney for Wesco Insurance Company*

The Peachtree – Suite 300
1355 Peachtree Street, NE
Atlanta, Georgia 30309
Office: (404) 874-8800
Fax: (404) 888-6199
Jessica.Phillips@swiftcurrie.com
Erik.Johnson@swiftcurrie.com

STATE COURT OF
DEKALB COUNTY, GA.
3/8/2022 8:12 AM
E-FILED
BY: Kelly Johnson

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that I have electronically filed and served the foregoing *DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES* with the Clerk of Court using the Odyssey e-filing system which will automatically send e-mail notification and service of such filing to counsel of record as follows:

William L. Flournoy, Esq.
THE BUSH LAW GROUP, P.A.
6622 Southpoint Dr S – Suite 190
Jacksonville, Florida 32216
Wlflournoy@bushlawgroup.net
Krdupries@bushlawgroup.net
Justin@bushlawgroup.net

This 8th day of March, 2022.

Respectfully Submitted,

**SWIFT, CURRIE, MCGHEE & HIERS, LLP**

*/s/ Jessica M. Phillips*
Jessica M. Phillips, Esq.
Georgia Bar No. 922902
Erik L. Johnson
Georgia Bar No. 139597
*Attorney for Wesco Insurance Company*

The Peachtree – Suite 300
1355 Peachtree Street, NE
Atlanta, Georgia 30309
OFFICE: (404) 874-8800
FAX: (404) 888-6199
Jessica.Phillips@swiftcurrie.com
Erik.Johnson@swiftcurrie.com